UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TYLER MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 1:20-cv-4849-GBD-JLC |
| | ) | |
| BRIGHTSTAR ASIA, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Kristina A. Reliford
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
P: (615) 252-3573
F: (615) 252-6380
kreliford@bradley.com

Peter C. Sales (*Admitted Pro Hac Vice*)
Frankie N. Spero (*Admitted Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
P: (615) 252-2365
F: (615) 252-6365
psales@bradley.com
fspero@bradley.com

*Attorneys for Brightstar Asia, Ltd.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

I.     INTRODUCTION ....................................................................................................... 1

II.    BACKGROUND ......................................................................................................... 2

      A.    Formation and Prior Operations of Harvestar. ............................................... 2

      B.    Brightstar Asia Acquires Majority Stake in Harvestar. .................................. 2

      C.    Brightstar Asia's Alleged Mismanagement of Harvestar. ............................... 3

III.    ARGUMENT .............................................................................................................. 5

      A.    Plaintiff's Complaint Must be Dismissed under Fed. R. Civ. P. 12(b)(1)
           for Lack of Subject Matter Jurisdiction. ........................................................ 5

           1.    Plaintiff Lacks Standing to Assert his Causes of Action in the
                Complaint. ............................................................................................ 5

                a.    Plaintiff's Causes of Action are Derivative Claims, Not
                      Direct Claims. ............................................................................ 7

                b.    Plaintiff has Not Alleged an Injury in Fact, and His Claims
                      are Based upon the Legal Rights and Interests of Third-
                      Parties. ........................................................................................ 11

           2.    Alternatively, Plaintiff's Causes of Action are Not Ripe. ...................... 12

      B.    Alternatively, Plaintiff's Complaint Must be Dismissed under Fed. R. Civ.
           P. 12(b)(6) for Failure to State a Claim. ......................................................... 14

           1.    Common Grounds for Dismissal of Both Counts as a Matter of
                Law. ..................................................................................................... 15

                a.    Plaintiff has Not Suffered Any Legally Cognizable
                      Damages. .................................................................................... 15

                b.    Plaintiff's Causes of Action Fail as a Matter of Law under
                      the Parol Evidence Rule. ........................................................... 15

2.      Additional Grounds for Dismissal of Count I for Failure to State a Claim..................................................................................................... 17

        a.     Plaintiff's Breach of Fiduciary Duty Claim Must be Dismissed as a Matter of Delaware Law Because it Arises From the Same Facts and Underlying Conduct as Plaintiff's Claim for Breach of Contract/Implied Covenant. ....................... 17

        b.     Pursuant to Section 29 of the Shareholders Agreement, Brightstar Asia, as Majority Shareholder, Does Not Owe Any Fiduciary Duties to Plaintiff, as Minority Shareholder. ....... 20

3.      Additional Grounds for Dismissal of Count II for Failure to State a Claim..................................................................................................... 21

CONCLUSION............................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostino v. Hicks*,
   845 A.2d 1110 (Del. Ch. 2004)................................................................8

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)................................................................5, 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................14

*Blaustein v. Lord Baltimore Capital Corp.*,
   84 A.3d 954 (Del. 2014)...................................................................22, 24

*Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*,
   906 A.2d 827 (Del. Ch. 2006)..............................................................18

*Bowers v. Wilmington Delivery Serv., Inc.*,
   No. CIV.A. 84-673, 1986 WL 7514 (D. Del. June 23, 1986)................................16

*BP1, LLC v. Coventry Real Estate Fund II, LLC*,
   Nos. 312579, 314876, 2014 WL 4723146 (Mich. Ct. App. Sept. 23, 2014)....................9

*Carter v. HealthPort Tech., LLC*,
   822 F.3d 47 (2d Cir. 2016)................................................................5, 6

*Chevron Corp. v. Donziger*,
   833 F.3d 74 (2d Cir. 2016)..................................................................6

*Cohen v. Formula Plus, Inc.*,
   750 F.Supp.2d 495 (D. Del. 2010)..........................................................16

*Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.A.R.L.*,
   790 F.3d 411 (2d Cir. 2015)..................................................................6

*Davis v. Fed. Election Commission*,
   554 U.S. 724 (2008)..........................................................................6

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)..........................................................5, 6, 11

*Drimal v. Tai*,
   786 F.3d 219 (2d Cir. 2015)..................................................................14

*FS Parallel Fund L.P. v. Ergen*,
No. 19853, 2004 WL 3048751 (Del. Ch. Nov. 3, 2004) ...................................9

*Gale v. Bershad*,
No. CIV. A. 15714, 1998 WL 118022 (Del. Ch. Mar. 4, 1998)........................18

*Holloway v. King*,
161 F.App'x 122 (2d Cir. 2005) .....................................................................16

*Houbigant, Inc. v. Dev. Specialists, Inc.*,
229 F.Supp.2d 208 (S.D.N.Y. 2002)...............................................................10

*Kramer v. Nat'l. Fire Ins. Co. of Hartford*,
No. 18-cv-4848, 2019 WL 3966166 (S.D.N.Y. Aug. 22, 2019).........................10

*Kramer v. Western Pacific Indus., Inc.*,
546 A.2d 348 (Del. 1988) ........................................................................7, 8, 9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..........................................................................................6

*Madison Realty Partners 7, LLC v. Ag ISA, LLC*,
No. CIV.A. 18094, 2001 WL 406268 (Del. Ch. Apr. 17, 2001) ...........................19

*In re Massey Energy Co. Derivative and Class Litigation*,
160 A.3d 484 (Del. Ch. 2017).......................................................................7, 9

*MHS Capital LLC v. Goggin*,
No. 2017-0449, 2018 WL 2149718 (Del. Ch. May 10, 2018)...................18, 19, 21

*Nat'l Org. for Marriage, Inc. v. Walsh*,
714 F.3d 682 (2d Cir. 2013).....................................................................12, 13

*Nat'l Park Hospitality Ass'n v. Dept. of Interior*,
538 U.S. 803 (2003)........................................................................................12

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ...............................................................18, 21, 22, 24

*Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*,
202 A.3d 482 (Del. 2019) .........................................................................22, 24

*Parker Madison Partners v. Airbnb, Inc.*,
283 F.Supp.3d 174 (S.D.N.Y. 2017)................................................................14

*Pearson Capital Partners LLC v. James River Ins. Co.*,
151 F.Supp.3d 392 (S.D.N.Y. 2015)..................................................................2

*Rajamin v. Deutsche Bank Nat. Trust Co.*,
    757 F.3d 79 (2d Cir. 2014) ....................................................................................6, 11

*Ross v. Inst. Longevity Assets, LLC*,
    No. 2017-0186, 2019 WL 960212 (Del. Ch. Feb. 26, 2019) ....................................19

*Schron v. Troutman Sanders LLP*,
    20 N.Y.3d 430 (N.Y. 2013) .....................................................................................16

*SM Kids, LLC v. Google LLC*,
    963 F.3d 206 (2d Cir. 2020)........................................................................................6

*Stewart v. BF Bolthouse Holdco, LLC*,
    No. 8119-VCP, 2013 WL 5210220 (Del. Ch. Aug. 30, 2013) ...............................18

*Thor 680 Madison Ave. LLC v. Qatar Luxury Group S.P.C.*,
    No. 17-civ-8528, 2020 WL 2748496 (S.D.N.Y. May 27, 2020) ...........................16

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) .........................................................................................7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..............................................................................................5, 6

*Wheeler v. Twenty-First Century Fox*,
    322 F.Supp.3d 445 (S.D.N.Y. 2018) .......................................................................14

**Statutes**

Hong Kong Companies Ordinance ..........................................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................... *passim*

Defendant, Brightstar Asia, Ltd. ("Brightstar Asia"), hereby submits this memorandum of law in support of its motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and states as follows:

## I.  **INTRODUCTION**

In the Complaint, Plaintiff, a minority shareholder of Harvestar Solutions Limited ("Harvestar"), asserts two purported causes of action against Brightstar Asia, the majority shareholder of Harvestar, for breach of fiduciary duty (Count I) and breach of contract/implied covenant of good faith and fair dealing (Count II).  Plaintiff's Complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or, alternatively, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

This Court lacks subject matter jurisdiction for two primary reasons.  First, Plaintiff does not have standing to assert his purported causes of action because: (1) Plaintiff's claims are derivative claims, not direct claims; and (2) Plaintiff has not alleged an injury in fact and his claims are based upon the legal rights and interests of third-parties.  Second, even if Plaintiff somehow has standing to bring these causes of action, the claims are not ripe for adjudication.

Alternatively, the Complaint fails to state a claim.  Plaintiff's causes of action must be dismissed as a matter of law on the common grounds that (1) Plaintiff has not suffered any legally cognizable damages; and (2) his claims fail under the parol evidence rule. Next, Plaintiff's claim in Count I for breach of fiduciary duty fails because: (1) the claim is duplicative of Plaintiff's claim for breach of contract/implied covenant; and (2) pursuant to Section 29 of the Shareholders Agreement, Brightstar Asia does not owe any fiduciary duties to Plaintiff.  Finally, Plaintiff's claim in Count II for breach of the implied covenant fails under the express terms of the Shareholders Agreement and under Delaware law on the implied covenant.

## II.    BACKGROUND

### A.    Formation and Prior Operations of Harvestar.

In August 2016, Plaintiff and Omar Elmi formed and incorporated Harvestar as a private company limited by shares under the Hong Kong Companies Ordinance.  (Compl., ¶¶ 4, 9.) Harvestar's principal operations are located in the Philippines.  (*Id.*, ¶ 10.)  Harvestar's business principally consisted of purchasing from various sources used mobile phones traded-in by consumers, refurbishing the used phones to "like new" condition at Harvestar's facility in the Philippines, and then wholesaling the refurbished phones to distributors and retailers that sell used mobile phones to consumers.  (*Id.*, ¶ 10.)  Brightstar Corp., based in Miami, Florida, is one of the largest distributors of mobile phones in the world and was a significant customer of Harvestar.  (*Id.*, ¶¶ 11, 12.)

### B.    Brightstar Asia Acquires Majority Stake in Harvestar.

On April 9, 2018, Brightstar Asia, a private company limited by shares incorporated under the Hong Kong Companies Ordinance, purchased a 51% controlling stock interest in Harvestar from Plaintiff and Mr. Elmi pursuant to the terms of a Share Purchase Agreement. (Compl., ¶¶ 2, 15.)  (A copy of the Share Purchase Agreement is attached to the Declaration of Jack A. Negro as Exhibit A.[1])    In connection with the stock purchase transaction, Brightstar Asia, Plaintiff, and Mr. Elmi also executed the Shareholders Agreement, dated April 9, 2018, defining the rights, duties, and obligations of the parties thereunder.  (Compl., ¶ 17 & Ex. 1.)

---

[1] Because Plaintiff explicitly references and relies upon the terms of the Share Purchase Agreement in the Complaint, that Agreement is deemed to be included in the Complaint and may be considered by this Court (along with the exhibits to Plaintiff's Complaint) in ruling on Brightstar Asia's Rule 12(b)(6) motion to dismiss.  "[A]ny written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference, as well as any matters of which judicial notice may be taken, are deemed included in the complaint and may be considered without converting the motion to dismiss into a motion for summary judgment."  *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F.Supp.3d 392, 400 (S.D.N.Y. 2015).  "Additionally, even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Id.*

Plaintiff alleges that the "agreements" executed by the parties in connection with Brightstar Asia's purchase of the controlling stake in Harvestar "contemplated that Harvestar would repair . . . 500,000 mobile telephones per year for Brightstar Corp.[2] at a price of cost plus $10 per phone." (*Id.*, ¶ 19.)  Plaintiff further alleges that "[t]his arrangement was the basis for, and an integral part of, the buy-sell transaction executed April 9, 2018." (*Id.*)

However, neither the Shareholders Agreement nor the Share Purchase Agreement specifies or requires any volume of mobile devices or price per device to Harvestar.  Moreover, neither Agreement obligates Brightstar Asia to provide or ensure a certain volume of mobile devices or price per device to Harvestar.  In addition, both Agreements contain integration clauses providing that the respective Agreements contain and constitute the entire agreement and understanding of the parties and supersede all prior understandings and agreements of the parties relating to the subject matter of the respective Agreements.  (*See* Shareholders Agreement, § 21; Share Purchase Agreement, § 8.4, Ex. 1 to Compl.)

### C.    Brightstar Asia's Alleged Mismanagement of Harvestar.

Plaintiff alleges that, upon Brightstar Asia acquiring its majority stake in Harvestar, it mismanaged the company.  (Compl., ¶ 20.)  Rather than allowing Plaintiff and Mr. Elmi to continue managing Harvestar's operations, Brightstar Asia appointed a new slate of directors and officers to manage Harvestar.  (*Id.*)  Plaintiff alleges that Brightstar Asia and its directors mismanaged Harvestar in several respects.  First, Plaintiff alleges that the monthly forecasts that Brightstar Asia provided to Harvestar of the number of used mobile devices that would be supplied to Harvestar for repair and refurbishment proved to be inaccurate.  (*Id.*, ¶ 21.)  Thus, Harvestar allegedly did not receive an adequate supply of used mobile devices to Harvestar.  (*Id.*,

---

[2] Brightstar Corp. is not a party to this action.

¶¶ 21, 19, 30, 38.)  As a result, Harvestar purchased parts and labor to repair mobile devices that never arrived, causing financial losses to Harvestar.  (*Id.*, ¶ 21.)

Plaintiff further alleges that Brightstar Asia placed millions of dollars of intercompany loans on Harvestar's balance sheet destroying Harvestar's value.  (*Id.*, ¶ 22.)  In addition, Brightstar Asia allegedly caused Harvestar to purchase computer systems and equipment that Harvestar did not need and could not use efficiently.  (*Id.*, ¶ 23.)  Finally, Plaintiff alleges that Brightstar Asia is currently using Harvestar to repair and refurbish only 8,000 to 10,000 used mobile devices per month for its affiliate, Brightstar Device Protection, LLC ("Brightstar Device"), at a below market rate.  (*Id.*, ¶¶ 24, 30, 38.)

Plaintiff alleges that, as a result of Brightstar Asia's "mismanagement," Brightstar Asia harmed Harvestar by causing Harvestar's EBIT (*i.e.*, earnings before interest and taxes) for the trailing twelve months to decrease to a negative number.  (Compl., ¶¶ 32, 40.)  This, in turn, allegedly harmed the value of Plaintiff's minority interest in Harvestar and his purported "put" and "call" rights (*i.e.*, right to sell and buy shares of Harvestar under certain terms and conditions) under Sections 10 and 11 of the Shareholders Agreement.  (*Id.*, ¶¶ 24, 31–33, 39–41.)  Plaintiff seeks to recover a judgment in this action for the alleged value of his "put" right under the Shareholders Agreement.  (*Id.*, ¶¶ 32, 40 & p. 10.)

However, Plaintiff does not have individual "put" and "call" rights under the Shareholders Agreement.  Rather, the Agreement explicitly provides that the "put" and "call" rights must be exercised by the "Executives" "**_acting jointly only_**".  (Shareholders Agreement, §§ 10, 11.)  Plaintiff has not alleged that the Executives jointly exercised the "put" right.

Based upon these allegations, Plaintiff asserts two purported causes of action against Brightstar Asia in the Complaint:  breach of fiduciary duty (Count I); and breach of

contract/implied covenant of good faith and fair dealing (Count II). For the reasons set forth below, both Counts must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or, alternatively, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## III.   ARGUMENT

### A.   Plaintiff's Complaint Must be Dismissed under Fed. R. Civ. P. 12(b)(1) for Lack of Subject Matter Jurisdiction.

This Court lacks subject matter jurisdiction over Plaintiff's causes of action in the Complaint for two primary reasons: (1) no standing, and (2) not ripe. First, Plaintiff lacks standing to assert his purported causes of action because (a) Plaintiff's claims are derivative claims, not direct claims; and (b) Plaintiff has not alleged an injury in fact and his claims are based on the legal rights and interests of third-parties. Second, even if Plaintiff has standing to bring these causes of action, his claims are not ripe for adjudication.

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading"), the plaintiff has no evidentiary burden," and "[t]he task of the district court is to determine whether the Pleading 'alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). Brightstar Asia's Motion presents a facial attack to this Court's subject matter jurisdiction over the Complaint.

### 1.   Plaintiff Lacks Standing to Assert his Causes of Action in the Complaint.

Standing "'is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)). When a complaint is dismissed for lack of

standing, "[s]uch a dismissal is one for lack of subject matter jurisdiction." *Carter*, 822 F.3d at 55 (collecting cases). Accordingly, "'[t]he proper procedural route for standing challenges at the pleadings stage is a motion under Rule 12(b)(1).'" *Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted); *accord SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

 "To meet the Article III standing requirement, a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Denney*, 443 F.3d at 263 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff bears the burden of 'alleging facts that affirmatively and plausibly suggest that it has standing to sue.'" *Cortlandt Street Recovery Corp.*, 790 F.3d at 417 (quoting *Amidax Trading*, 671 F.3d at 145). Standing is determined based upon the plaintiff's position at the time he filed the complaint. *Chevron Corp. v. Donziger*, 833 F.3d 74, 122 (2d Cir. 2016) (citing *Davis v. Fed. Election Commission*, 554 U.S. 724, 734 (2008)).

In addition to the constitutional requirements for standing, a plaintiff must also establish prudential standing. "The 'prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (quoting *Warth*, 420 U.S. at 509). To satisfy the prudential standing requirement, "'[t]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth*, 420 U.S. at 499).

Here, Plaintiff lacks standing to assert the causes of action in his Complaint for two reasons: First, Plaintiff's causes of action against Brightstar Asia are derivative claims, not

6

direct claims, under Delaware law.  Second, even if Plaintiff's causes of action are somehow direct claims, Plaintiff has not alleged an injury in fact, and his claims are based upon the legal rights and interests of third parties.

<strong>a.      <em>Plaintiff's Causes of Action are Derivative Claims, Not Direct Claims.</em></strong>

Plaintiff lacks standing to individually assert the two causes of action in the Complaint (*i.e.*, breach of fiduciary duty and breach of contract) because both of those causes of action are derivative claims under Delaware law.  In the landmark decision of *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004)[3], the Delaware Supreme Court adopted the test for determining whether a claim is derivative or direct under Delaware law.  The inquiry "'must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually).'" *In re Massey Energy Co. Derivative and Class Litigation*, 160 A.3d 484, 502 (Del. Ch. 2017) (quoting *Tooley*, 845 A.2d at 1033). "[T]he stockholder's 'claimed direct injury must be independent of any alleged injury to the corporation,' and . . . the stockholder 'must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.'"  *Id.* (quoting *Tooley*, 845 A.2d at 1039).

"Delaware courts have long recognized that actions charging 'mismanagement which depress the value of stock allege a wrong to the corporation; *i.e.*, stockholders collectively, to be enforced by a derivative action.'" *Kramer v. Western Pacific Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988); *see In re Massey Energy*, 160 A.3d at 503 (holding that "[t]he depressive effect that [the defendants'] mismanagement may have caused to the [c]ompany's stock prices . . . would be

---

[3] Section 26 of the Shareholders Agreement contains a Delaware choice of law provision.

derivative of the harm caused to the corporation" and dismissing the plaintiff's "direct" claim for failure to state a claim); *Agostino v. Hicks*, 845 A.2d 1110, 1123 (Del. Ch. 2004) (holding that the nature of the plaintiff's claim was "nothing more than a claim of mismanagement that, 'if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders,'" and, thus, "'the wrong alleged is entirely derivative in nature'"). Therefore, "where a plaintiff shareholder claims that the value of his stock will deteriorate and that the value of his proportionate share of the stock will be decreased as a result of the alleged director mismanagement, his cause of action is derivative in nature." *Kramer*, 546 A.2d at 353.

Here, the harm that Plaintiff alleges in the Complaint (which is verbatim the same for both counts) is clearly derivative in nature under Delaware law. Specifically, Plaintiff alleges that Brightstar Asia, through its alleged "mismanagement" of Harvestar, caused Harvestar not to receive for repair and refurbishment used mobile devices in the volumes and at the prices that were allegedly "contemplated" in the "agreements" that were executed in Brightstar Asia's April 9, 2018 purchase of the majority stake in Harvestar. (Compl., ¶¶ 18–20, 23, 30, 38.) In addition, with respect to the mobile devices that were provided to Harvestar for repair, Brightstar Asia allegedly caused Harvestar to repair those devices at a below market rate. (*Id.*, ¶¶ 30, 38.)

As a result of these alleged actions by Brightstar Asia in the management of Harvestar, Brightstar Asia allegedly caused Harvestar's EBIT (*i.e.*, earnings before interest and taxes) for the trailing twelve months to decrease to a negative number. (*Id.*, ¶¶ 32, 40.) This, in turn, allegedly harmed the value of Plaintiff's minority interest and his purported "put" and "call" rights under Sections 10 and 11 of the Shareholders Agreement. (*Id.*, ¶¶ 24, 31–32, 39–40.) Specifically, Plaintiff alleges that, had Brightstar Asia not committed the "mismanagement," the

price at which he would be able to "put" the purchase price of his shares to Brightstar Asia would be $6,125,000, and he requests a judgment for that amount.  (*Id.*, ¶¶ 32, 40.)

As discussed above, these allegations by Plaintiff—that Brightstar Asia "mismanaged" Harvestar which depressed the value of Harvestar and its shares—have been "long recognized" by Delaware courts to allege a wrong against the corporation that is derivative in nature. *Kramer*, 546 A.2d at 353; *see FS Parallel Fund L.P. v. Ergen*, No. 19853, 2004 WL 3048751, at *3 (Del. Ch. Nov. 3, 2004) (shareholders' allegations that the controlling shareholders/directors mismanaged and failed to further develop the company, which caused the company's value and prospects to decline resulting in the company's bankruptcy and the cancellation of the shareholders' common stock, were derivative in nature, not direct).  The harm alleged by Plaintiff in both counts of the Complaint (*i.e.*, harm to the value of Plaintiff's minority interest and purported "put" right) is not independent of the alleged harm to Harvestar (*i.e.*, Brightstar Asia's "mismanagement" of Harvestar causing Harvestar's EBIT to decrease to a negative number).  *See In re Massey Energy*, 160 A.3d at 502 ("the stockholder's 'claimed direct injury must be independent of any alleged injury to the corporation'").  In fact, Plaintiff explicitly alleges in the Complaint that Brightstar Asia's conduct, which is the basis for Plaintiff's two causes of action, "caused harm to both [Harvestar and Plaintiff]."  (Compl., ¶ 25.)

Rather, that harm is derivative of the alleged harm to Harvestar.  Thus, Plaintiff cannot prove his purported causes of action in the Complaint without first establishing an injury to Harvestar.  *Id.* ("stockholder 'must demonstrate that . . . he or she can prevail without showing an injury to the corporation"); *see also BP1, LLC v. Coventry Real Estate Fund II, LLC*, Nos. 312579, 314876, 2014 WL 4723146, at *9 (Mich. Ct. App. Sept. 23, 2014) (applying Delaware law; holding that, where the managing member's alleged mismanagement of the company

caused the minority member to be unable to exercise his "put option" to sell his membership interests, the harm was to the company, and the alleged damage to the "put option" was derivative of that harm, and thus the minority member was precluded suing directly or individually on that claim).

Finally, the harm that Plaintiff alleges to his purported "put" and "call" rights is not legally cognizable. Sections 10 and 11 of the Shareholders Agreement expressly provide that the "Executives" (*i.e.*, Plaintiff and the other minority shareholder, Omar Elmi, collectively) must exercise the "Put Right" and "Executive Call Right" "**acting jointly only**." (Shareholders Agreement, §§ 10, 11.) Thus, Plaintiff does not have any individual "put" right under the Shareholders Agreement. Moreover, he has not alleged that the "Executives" jointly exercised the "Put Right". Plaintiff is not entitled to individually recover the value of a "put" right that he does not have, and which has not been exercised. Overall, the only potential cognizable harm that Plaintiff has alleged in the Complaint is that Brightstar Asia allegedly "mismanaged" Harvestar causing Harvestar's EBIT to decrease to a negative number. Such alleged harm to Harvestar is clearly derivative in nature.

For these reasons, Plaintiff's two causes of action in the Complaint are derivative. Thus, Plaintiff lacks standing to bring these causes of action as direct claims against Brightstar Asia, and the Court must dismiss Plaintiff's Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. *See, e.g., Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F.Supp.2d 208, 215 (S.D.N.Y. 2002) (holding that the plaintiff lacked standing to assert a direct claim and dismissing the claim for lack of subject matter jurisdiction under Rule 12(b)(1)); *Kramer v. Nat'l. Fire Ins. Co. of Hartford*, No. 18-cv-4848, 2019 WL 3966166, at *7 (S.D.N.Y. Aug. 22, 2019) (same).

Alternatively, for the same reasons, the Court should dismiss Plaintiff's purported direct claims under Rule 12(b)(6) for failure to state a claim.

> **b.**   ***Plaintiff has Not Alleged an Injury in Fact, and His Claims are Based upon the Legal Rights and Interests of Third-Parties.***

Plaintiff alleges the same injury for both causes of action in the Complaint: that Brightstar Asia's actions caused Harvestar's EBIT for the trailing twelve months to be a negative number, which, in turn, harmed Plaintiff's purported "put" and "call" rights under the Shareholders Agreement. (Compl., ¶¶ 30–33, 38–41.)   Plaintiff requests a judgment for the alleged value of his purported "put" right. (*See id.*, ¶¶ 32, 40 & p. 10.)   However, Plaintiff does not have individual "put" and "call" rights under the Shareholders Agreement.   Rather, the Shareholders Agreement explicitly provides that the "Put Right" and "Executive Call Right" must be exercised by the "Executives" "**_acting jointly only_**".   Plaintiff has not alleged that the Executives have jointly exercised the "Put Right".

Because Plaintiff does not have individual "put" and "call" rights under the Shareholders Agreement, he has not suffered an injury to any individual right or interest.   Thus, Plaintiff has not alleged an "injury in fact" as required to establish Article III standing.  *Denney*, 443 F.3d at 263.   Moreover, under the prudential standing rule, Plaintiff "cannot rest his claim on the legal rights or interests of third parties" (*i.e.*, the Executives), which is what Plaintiff is attempting to do in this case. *Rajamin*, 757 F.3d at 86.   Overall, Plaintiff is not entitled to individually recover a judgment for the value of a "put" right that he has no individual right to exercise and which has not been exercised by the Executives jointly.   Accordingly, Plaintiff lacks standing to bring the causes of action in the Complaint, and this action must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

## 2.     **Alternatively, Plaintiff's Causes of Action are Not Ripe.**

Even if Plaintiff somehow has standing to assert his causes of action (which he does not), his claims are not ripe and must be dismissed under Rule 12(b)(1).  "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 808 (2003) (citation and internal quotation marks omitted). The U.S. Second Circuit Court of Appeals has summarized the ripeness doctrine as follows:

> To be justiciable, a cause of action must be ripe—it must present a real, substantial controversy, not a mere hypothetical question. Ripeness is peculiarly a question of timing.  A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all.  The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication,        from        entangling        themselves in abstract disagreements.

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal citations and quotation marks omitted).

The remedy requested by Plaintiff in this action is a judgment for the alleged value of his purported "put" right under Section 10 of the Shareholders Agreement.  By virtue of that, however, Plaintiff's claims are not ripe for two clear reasons.  First, the "Executives" have not exercised the "Put Right" right under Section 10 of the Shareholders Agreement.  As discussed above, Section 10 provides that the "Put Right" must be exercised by the "Executives" "**acting jointly only**".  Plaintiff does not allege in the Complaint (nor could he) that the Executives exercised the "Put Right" or that they intend to do so in the future.  Thus, Plaintiff seeks to recover the value of a "Put Right" that has not been, and may never be, exercised.  Such a claim is not ripe for adjudication.  *See Nat'l Org. for Marriage*, 714 F.3d at 687 ("A claim is not ripe if

it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all.")

Second, the Executives do not currently have the right to exercise the "Put Right" under Section 10 of the Shareholders Agreement.  Rather, Section 10 makes clear that, commencing on the second anniversary of the date of the Shareholders Agreement, "[t]he Executives may, acting jointly only, elect to sell the Put Shares by delivering written notice (the 'Put Notice') to Brightstar . . . **by no later than 60 days after the applicable anniversary date of this Agreement** . . ." (Shareholders Agreement, § 10(a), (b)) (emphasis added).[4]  The second anniversary date of the Shareholders Agreement was April 9, 2020, and 60 days after April 9, 2020 was June 8, 2020.

Accordingly, because the Executives' 60-day period to exercise the "Put Right" has now expired, they are not legally entitled to exercise the "Put Right" until the third anniversary date of the Shareholders Agreement on April 9, 2021.  Plaintiff does not allege that the Executives intend to exercise the "Put Right" after the third anniversary date or at any point in time. Regardless, however, Plaintiff's claims and the requested judgment do not present a "real" controversy, but rather present the very type of "hypothetical question" and "abstract disagreement" that this Court should avoid adjudicating prematurely under the ripeness doctrine. *Nat'l Org. for Marriage*, 714 F.3d at 687.  These claims must be dismissed under Rule 12(b)(1).

---

[4] Section 10 further provides that, "[i]f the Executives fail to deliver a Put Notice by such date," then Brightstar Asia shall have the right, "on only one occasion per calendar year," to exercise a "Call Right" to purchase the shares from the Executives. (Shareholders Agreement, § 10(c).)  However, if Brightstar Asia fails to exercise the "Call Right" within the specified timeframe, then Brightstar Asia "shall not be permitted to deliver another Call Notice until after the expiration of the next succeeding period for delivery of a Put Notice [by the Executives]." (*Id.*, § 10(d).)

**B.      Alternatively, Plaintiff's Complaint Must be Dismissed under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim.**

Plaintiff's causes of action in the Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim.  "A Rule 12(b)(6) motion challenges the legal sufficiency of the claims asserted in a complaint."  *Wheeler v. Twenty-First Century Fox*, 322 F.Supp.3d 445, 452 (S.D.N.Y. 2018) (citation omitted). "To survive a motion to dismiss under [Rule 12(b)(6)], 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Parker Madison Partners v. Airbnb, Inc.*, 283 F.Supp.3d 174, 178 (S.D.N.Y. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A complaint need not make 'detailed factual allegations,' but it must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* at 179.  Further, "[c]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

To begin with, Plaintiff's two causes of action must be dismissed as a matter of law on at least two common grounds: (a) Plaintiff has not suffered any legally cognizable damages; and (b) Plaintiff's claims fail under the parol evidence rule.  Next, each cause of action individually fails for several additional reasons.  Specifically, Plaintiff's claim for breach of fiduciary duty in Count I fails because: (a) it arises from the same facts and underlying conduct, and is duplicative of, Plaintiff's claim for breach of contract/implied covenant; and (b) pursuant to Section 29 of the Shareholders Agreement, Brightstar Asia, as majority shareholder of Harvestar, does not owe any fiduciary duties to Plaintiff, as minority shareholder.  Plaintiff's claim in Count II for breach of the implied covenant of good faith and fair dealing fails under the express terms of the Shareholders Agreement and Delaware law on the implied covenant.

1.      **Common Grounds for Dismissal of Both Counts as a Matter of Law.**

         a.      ***Plaintiff has Not Suffered Any Legally Cognizable Damages.***

Both causes of action fail to state a claim because Plaintiff has not alleged or suffered any legally cognizable damages arising from Brightstar Asia's alleged breach of fiduciary duty or breach of contract/implied covenant. Again, Plaintiff does not have an individual "put" right under Section 10 of the Shareholders Agreement, and Plaintiff has not alleged in the Complaint that the Executives jointly exercised the "Put Right". Therefore, Plaintiff has no right to individually recover a judgment for the value of a "put" right that he has no individual right to exercise and which has not been (and presently cannot be) exercised by the Executives jointly. Accordingly, both causes must be dismissed as a matter of law under Rule 12(b)(6).

         b.      ***Plaintiff's Causes of Action Fail as a Matter of Law under the Parol Evidence Rule.***

Plaintiff's causes of action in the Complaint are both premised upon the same allegation: that Harvestar has not received for repair and refurbishment used mobile devices in the volumes and at the prices that were allegedly "contemplated" in and the "basis for" the "agreements" executed by the parties in connection with Brightstar Asia's April 9, 2018 purchase of the majority stake in Harvestar. (*See* Compl., ¶¶ 17–19, 30, 38.) As a result, Plaintiff asserts that Brightstar Asia breached its alleged fiduciary duties to Plaintiff and breached the implied covenant of good faith and fair dealing under the Shareholders Agreement.

However, neither the Shareholders Agreement nor the Share Purchase Agreement specifies or requires any volume of mobile devices or price per device to Harvestar (annually, monthly, or otherwise). Moreover, neither Agreement obligates Brightstar Asia to provide or ensure a certain volume of mobile devices or price per device to Harvestar. Finally, both Agreements contain integration clauses providing that the respective Agreements contain and

constitute the entire agreement and understanding of the parties and supersede all prior understandings and agreements of the parties relating to the subject matter of the respective Agreements.  (*See* Shareholders Agreement, § 21; Share Purchase Agreement, § 8.4.)

It is well-settled under both New York and Delaware law that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *Thor 680 Madison Ave. LLC v. Qatar Luxury Group S.P.C.*, No. 17-civ-8528, 2020 WL 2748496, at *6 (S.D.N.Y. May 27, 2020); *see Cohen v. Formula Plus, Inc.*, 750 F.Supp.2d 495, 502–503 (D. Del. 2010).  "Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." *Thor 680 Madison Ave.*, 2020 WL 278496, at *6; *see also Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (N.Y. 2013) ("As a general rule, extrinsic evidence is inadmissible to alter or add a provision to a written agreement."); *Cohen*, 750 F.Supp.2d at 502 ("In Delaware, if a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity.")

Furthermore, where a contract contains a merger or integration clause, a court is obliged "to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing." *Holloway v. King*, 161 F.App'x 122, 124 (2d Cir. 2005); *see also Thor 680 Madison Ave.*, 2020 WL 278496, at *6 ("An integration clause establishes the parties' intent that the agreement in question is to be considered a completely integrated writing … and a completely integrated contract precludes extrinsic proof to add or vary its terms."); *Bowers v. Wilmington Delivery Serv., Inc.*, No. CIV.A. 84-673, 1986 WL 7514, at *3 (D. Del. June 23, 1986) ("The parties inclusion of an 'integration clause' in their written

agreement shows that the written document is intended as the final and complete expression of the agreement, absent fraud or mistake.").

Here, Plaintiff's two causes of action in the Complaint are based upon parol/extrinsic evidence to the Shareholder Agreement and Share Purchase Agreement; specifically, that the respective Agreements contemplated or intended that Harvestar would be provided with a certain volume of mobile devices for repair and refurbishment (which Plaintiff allege was 500,000 per year or 40,000 per month) at certain price per device. That extrinsic evidence varies and adds provisions to those fully-integrated Agreements and, thus, is clearly barred by the parol evidence rule under both Delaware and New York law. Accordingly, because the alleged evidence upon which Plaintiff's two causes of action are based is inadmissible in this action, those causes of action fail as a matter of law and must be dismissed under Rule 12(b)(6).

2.   **Additional Grounds for Dismissal of Count I for Failure to State a Claim.**

In addition to the common grounds stated above for the dismissal of both Counts I and II, Plaintiff's claim for breach of fiduciary duty in Count I must also be dismissed as a matter of law on at least two additional grounds: (a) Plaintiff's breach of fiduciary duty claim is duplicative of and arises from the same facts and underlying conduct as Plaintiff's claim for breach of contract/implied covenant; and (b) pursuant to Section 29 of the Shareholders Agreement, Brightstar Asia does not owe any fiduciary duties to Plaintiff.

a.   ***Plaintiff's Breach of Fiduciary Duty Claim Must be Dismissed as a Matter of Delaware Law Because it Arises From the Same Facts and Underlying Conduct as Plaintiff's Claim for Breach of Contract/Implied Covenant.***

It is well-settled under Delaware law that, "where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim," and "any fiduciary duty claims arising out of the same facts that underlie the contract obligations

would be foreclosed as superfluous." *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). Based upon this rule, a claim for breach of fiduciary duty that arises from the same alleged facts and underlying conduct as the breach of contract claim must be dismissed. *See, e.g.*, *Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 833 (Del. Ch. 2006) (dismissing fiduciary duty claim because it arose from the same facts and underlying conduct as the breach of contract/implied covenant claim); *MHS Capital LLC v. Goggin*, No. 2017-0449, 2018 WL 2149718, at *8 (Del. Ch. May 10, 2018) (holding that the plaintiff's "breach of fiduciary duty claim is duplicative of its breach of contract claim and must be dismissed"); *Stewart v. BF Bolthouse Holdco, LLC*, No. 8119-VCP, 2013 WL 5210220, at *13–15 (Del. Ch. Aug. 30, 2013) (dismissing breach of fiduciary duty claims as "duplicative of, and foreclosed by" the breach of contract claims); *Gale v. Bershad*, No. CIV. A. 15714, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998) (holding that "because the contract claim addresses the alleged wrongdoing by the [b]oard, any fiduciary claim arising out of the same conduct is superfluous" and dismissing claim for breach of fiduciary duty). "This rule stems from 'the primacy of contract law over fiduciary law' in [Delaware]." *MHS Capital*, 2018 WL 2149718, at *8.

This rule is equally applicable where the fiduciary duty claims arises from the same facts and underlying conduct as a claim for breach of the implied covenant of good faith and fair dealing. *Blue Chip*, 906 A.2d at 833. As the Delaware Chancery Court held in the oft-cited *Gale* opinion: "To allow a fiduciary claim to coexist in parallel with an implied contractual claim, would undermine the primacy of contract law over fiduciary law in matters involving the essentially contractual rights and obligations of . . . shareholders." *Gale*, 1998 WL 118022, at *5 (finding that the plaintiff's fiduciary duty claim arose from the same facts and conduct as her claim for breach of the implied covenant and dismissing the "superfluous" fiduciary duty claim);

*accord Ross v. Inst. Longevity Assets, LLC*, No. 2017-0186, 2019 WL 960212, at * (Del. Ch. Feb. 26, 2019) (dismissing fiduciary duty claim because it was based upon the same facts and "identical" to the plaintiff's claim for breach of the implied covenant).

Here, Plaintiff's claims for breach of fiduciary duty (Count I) and breach of contract/implied covenant (Count II) are based upon the same, verbatim facts and conduct. (*See* Compl., ¶¶ 30–33 & 38–41.) Specifically, Plaintiff alleges that Brightstar Asia breached its alleged fiduciary duty and breached the contract/implied covenant to Plaintiff by "caus[ing] Harvestar not to receive for repair and refurbishment the 40,000 mobile devices per month that had been the basis for the April 9, 2018 stock purchase," as allegedly "contemplated" in the "agreements" executed by the parties in connection with that transaction. (*Id.*, ¶¶ 19, 30, 38.) Plaintiff further alleges that Brightstar Asia has caused Harvestar to cease repair of any mobile devices other than the 8,000 to 10,000 devices per month provided to Harvestar by Brightstar Device. (*Id.*, ¶¶ 30, 38); *see Madison Realty Partners 7, LLC v. Ag ISA, LLC*, No. CIV.A. 18094, 2001 WL 406268, at *6 (Del. Ch. Apr. 17, 2001) (finding that "the contract and fiduciary claims overlap completely since they are based upon the same underlying conduct" and that "the complaint uses identical conduct as the basis for both legal claims" and dismissing the fiduciary duty claim for failure to state a claim).

As discussed above, Plaintiff then alleges the same injury for both Counts: that Brightstar Asia's actions caused Harvestar's EBIT for the trailing twelve months to be a negative number, which, in turn, harmed the value of Plaintiff's purported "put" and "call" rights under Section 10 and 11 of the Shareholders Agreement. (Compl., ¶¶ 30–33 & 38–41.) Finally, Plaintiff requests the same remedy for both Counts: a judgment for the alleged value of his purported "put" right under Section 10 of the Shareholders Agreement. (*Id.*, ¶¶ 32, 40, and p. 10); *see MHS Capital*,

2018 WL 2149718, at *8 (dismissing fiduciary duty claim because it was duplicative of contract claim, including that plaintiff sought "identical remedies" with respect to both claims).

For the foregoing reasons, this dispute arises from the parties' alleged contractual rights and obligations under the Shareholders Agreement, and Plaintiff's claims for breach of fiduciary duty and breach of contract/implied covenant overlap completely and arise from the same, verbatim facts and conduct.  Plaintiff's fiduciary duty claim is clearly duplicative of his breach of contract/implied covenant claim.  Accordingly, the fiduciary duty claim is "foreclosed as superfluous" and must be dismissed as a matter of Delaware law.

> **b.**     ***Pursuant to Section 29 of the Shareholders Agreement, Brightstar Asia, as Majority Shareholder, Does Not Owe Any Fiduciary Duties to Plaintiff, as Minority Shareholder.***

In Count I, Plaintiff, as minority shareholder in Harvestar, purports to assert a claim for breach of fiduciary duty against Brightstar Asia, as majority shareholder of Harvestar.  However, that claims fails as a matter of law because Section 29(a) of the Shareholders Agreement expressly disclaims all duties, including fiduciary duties, between shareholders.  Section 29(a) provides, in relevant part:

> To the maximum extent permitted by applicable law, **no Shareholder** (solely in its capacity as such), any of their respective Affiliates or officers or employees **shall owe any duty (including any fiduciary duty) to the Company or to any other Shareholder** other than a duty to act in accordance with the implied contractual covenant of good faith and fair dealing. . . . The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Shareholder otherwise existing at law or in equity in respect of the Company, are agreed by all parties hereto to replace fully and completely such other duties and liabilities.

(emphasis added).  Thus, Plaintiff expressly agreed in Section 29(a) that Brightstar Asia does not owe any fiduciary duties to him.  Accordingly, Plaintiff's cause of action in Count I for breach of fiduciary duty fails as a matter of law and must be dismissed.

**3.      Additional Grounds for Dismissal of Count II for Failure to State a Claim.**

Count II of the Complaint is entitled "Breach of Contract," but, in fact, it is a claim for breach of the implied covenant of good faith and fair dealing under the Shareholders Agreement. In addition to the grounds set forth above, Count II fails to state a claim for at least two additional reasons.

First, Plaintiff's claim for breach of the implied covenant fails under the express terms of the Shareholders Agreement.   As noted above, under Section 29(a) of the Shareholders Agreement, while the shareholders do not owe any fiduciary duties to one another, they are required to act in accordance with the implied contractual covenant of good faith and fair dealing.  (Shareholders Agreement, § 29(a).)  The Agreement then specifies as follows:

> The parties hereto acknowledge and agree that any Shareholder acting in accordance with this Agreement shall (a) be deemed to be acting in compliance with such implied contractual covenant, and (b) not be liable to the Company, to any other Shareholder . . . for its reliance on the provisions of this Agreement.

(*Id.*)  In the Complaint, Plaintiff does not allege that Brightstar Asia breached or otherwise failed to act in accordance with any term or condition of the Shareholders Agreement.  As discussed above, Plaintiff's claims are premised solely upon extrinsic evidence that is clearly barred by the parol evidence rule.  Therefore, pursuant to Section 29(a), Brightstar Asia is "deemed" to have "act[ed] in compliance with" the implied contractual covenant of good faith and fair dealing. Accordingly, Count II should be dismissed for failure to state a claim.

Second, Plaintiff's implied covenant claims fails as a matter of Delaware law.   "The implied covenant of good faith and fair dealing involves a 'cautious enterprise,' inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated."  *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010).  It is a "limited

and extraordinary legal remedy." *Id.* at 1128. "The implied covenant of good faith and fair dealing cannot be employed to impose new contract terms that could have been bargained for but were not." *Blaustein v. Lord Baltimore Capital Corp.*, 84 A.3d 954, 959 (Del. 2014); *see also Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) (the implied covenant "is not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract"); *Nemec*, 991 A.2d at 1126 (noting that "[t]he implied covenant only applies to developments that could not be anticipated, not developments that the parties simply failed to consider"). Moreover, "the implied covenant does not give parties the right to renegotiate their contracts." *Blaustein*, 84 A.3d at 959.

A court analyzing a claim for breach of the implied covenant "must assess the parties' reasonable expectations at the time of contracting and not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal." *Nemec*, 991 A.2d at 1126. "Parties have a right to enter into good and bad contracts, the law enforces both." *Id.* The court "'should be most chary about implying a contractual protection [under the implied covenant] when the contract could easily have been drafted to expressly provide for it.'" *Oxbow Carbon & Minerals*, 202 A.3d at 507 (citation omitted).

Count II presents a great example of a plaintiff attempting to renegotiate and rewrite its fully-integrated contract under the guise of a breach of the implied covenant. Plaintiff alleges that Brightstar Asia breached the implied covenant by causing Harvestar not to receive for repair and refurbishment used mobile devices in the volumes (*i.e.*, 500,000 per year or 40,000 per month) and at the prices that were "contemplated" under the "agreements" executed by the parties in connection with in Brightstar Asia's April 9, 2018 purchase of the majority stake in

Harvestar. (Compl., ¶¶ 19, 30, 38.)  Plaintiff further alleges that Brightstar Asia has caused Harvestar to cease repair of any devices other than the 8,000–10,000 devices per month provided to Harvestar by Brightstar Device at a below market rate.  (*Id.*, ¶¶ 30, 38.)

However, the Shareholders Agreement does not require Brightstar Asia to provide or secure used mobile devices for Harvestar, much less provide or ensure a certain volume of used mobile devices to Harvestar at a certain price.  Thus, Plaintiff is apparently asking the Court to imply provisions into the Shareholders Agreement that require Brightstar Asia not only to provide used mobile devices to Harvestar, but also to provide and ensure a certain volume of used mobile devices per month/year to Harvestar at a certain price.  This request to imply such terms must be denied as a matter of law.

Plaintiff explicitly alleges in the Complaint that the alleged volume and price requirements were "contemplated" in the "agreements" executed by the parties in connection with Brightstar's purchase of the majority stake in Harvestar and was the "basis for" that transaction.  Specifically, Plaintiff alleges:

> 17.    Harvestar, Brightstar Asia, plaintiff and Mr. Elmi also executed a Shareholders Agreement dated April 9, 2018, **defining the rights, duties and obligation of the parties**. . . .

> 18.    **At the time of the [April 9, 2018] transaction**, Brightstar Corp. forecast that, beginning on the first anniversary of the transaction, it would provide a minimum of 500,000 mobile telephones per year to Harvestar to repair and refurbish.

> 19.    **The agreements the parties executed *contemplated* that** Harvestar would repair such **500,000 mobile telephones per year** for Brightstar Corp. **at a price of cost plus $10 per phone**.  **This arrangement was the *basis for, and an integral part of*, the buy-sell transaction executed April 9, 2018**.

(Compl., ¶¶ 17–19) (emphasis added).  Later in the Complaint, Plaintiff again alleges that these alleged volume and price requirements were "the basis for the April 9, 2018, stock purchase." (*Id.*, ¶¶ 30, 38.)

As noted above, "[t]he implied covenant only applies to developments that could not be anticipated" at the time of contracting, *Nemec*, 991 A.2d at 1126, and "cannot be employed to impose new contract terms that could have been bargained for but were not." *Blaustein*, 84 A.3d at 959.  Here, based upon Plaintiff's express allegations in the Complaint (quoted above), the alleged volume and price requirements were not only "anticipated" and specifically "contemplated" at the time of contracting, but they were allegedly the "basis for" the April 9, 2018 transaction.  Therefore, if those requirements were agreed upon, as Plaintiff alleges, then "the [Shareholders Agreement] could easily have been drafted to expressly provide for it." *Oxbow Carbon & Minerals*, 202 A.3d at 507.  Plaintiff is not entitled to invoke the implied covenant "to rewrite a contract he now believes to have been a bad deal." *Nemec*, 991 A.2d at 1126.  Accordingly, Count II must be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Brightstar Asia respectfully requests that the Court grant its Motion and enter an Order dismissing Plaintiff's Complaint in its entirety.

Dated: September 11, 2020

Respectfully submitted,

/s/ *Kristina A. Reliford*
Kristina A. Reliford
Peter C. Sales (*Admitted Pro Hac Vice*)
Frankie N. Spero (*Admitted Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
P: (615) 252-3573
F: (615) 252-6380
kreliford@bradley.com
psales@bradley.com
fspero@bradley.com

*Attorneys for Brightstar Asia, Ltd.*