IN THE UNITES STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

TYLER MILLER,

    Plaintiff,

v.

BRIGHTSTAR ASIA, LTD,

    Defendant.

Case No. 20-cv-4849-GBD-JLC

## FIRST AMENDED COMPLAINT

The plaintiff, Tyler Miller, for cause of action against the defendant, Brightstar Asia, Ltd., states:

### PARTIES AND JURISDICTION

1. The plaintiff, Tyler Miller, is a citizen and resident of Brentwood, Williamson County, Tennessee.

2. The defendant, Brightstar Asia Ltd. ("Brightstar Asia") is a private company limited by shares incorporated under the Companies Ordinance (the "Companies Ordinance") of the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong") and has its principal place of business in Hong Kong.

3. For purposes of 28 U. S. C. § 1332, Brightstar Asia is a citizen of China. *See*, e.g., *Anderson & Anderson LLP Guangzhou v. North American-Foreign Trading Corp.*, No. 19-CV-3369, 2020 WL 1285450, *7 (S. D. N. Y. March 18, 2020)

4. Plaintiff brings this action against Brightstar Asia, the majority shareholder of Harvestar Solutions Limited ("Harvestar"), a private company limited

by shares incorporated under the Companies Ordinance, for having breached a Shareholders Agreement effective April 9, 2018, attached hereto as Exhibit 1, and for having breached duties it owes to plaintiff, a minority shareholder of Harvestar, under Delaware law.

5. The amount in controversy exceeds $75,000, exclusive of interest, costs and attorney's fees.

6. This Court has subject matter jurisdiction of this action pursuant to 28 U. S. C. § 1332.

7. Venue is proper pursuant to 28 U. S. C. § 1391 *et seq.* because the parties selected New York as the exclusive jurisdiction within which to resolve any disputes arising under the Shareholders Agreement.[1]

## BACKGROUND

8. On April 9, 2018, plaintiff and Brightstar Asia entered into a Shareholders Agreement (the "Agreement"). A true and accurate copy of the Agreement is attached as Exhibit 1 hereto. The parties executed the Agreement in connection with plaintiff's sale, and Brightstar Asia's purchase, of a controlling interest in Harvestar.

---

[1] Paragraph 27 of the Shareholder Agreement provides:

> **Venue.** Any legal action arising out of or based upon this agreement or the transactions contemplated hereby may be instituted in a court situated in the state of New York, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such action. The parties irrevocably and unconditionally waive any objection to the laying of venue of any action in such courts and irrevocably waive and agree not to plead or claim in any such court that any such action brought in any such court has been brought in an inconvenient forum.

9. Plaintiff and Omar Elmi formed Harvestar as a private company limited by shares in Hong Kong on August 1, 2016. Plaintiff and Mr. Elmi jointly ran the company. They were the only stockholders, members, officers and directors.

10. Harvestar's business principally consisted of purchasing from various sources used mobile telephones that consumers across the globe traded in when they purchased a new telephone. Harvestar would then have its laboratories in the Philippines refurbish the used telephones to "like new" condition and wholesale the refurbished telephones to distributors and retailers to resell the phones to consumers interested in the purchase of a used telephone. Harvestar's business model and services are more particularly described in Exhibit 2.

11. Harvestar's business model was very successful and soon attracted the attention of Miami-based Brightstar Corp.

12. Brightstar Corp. is one of the largest distributors of mobile telephones in the world and, at the time it entered into the Agreement, was a significant customer of Harvestar. Through its "Buy Back & Trade-in" program, Brightstar Corp. purchases millions of used mobile devices that consumers trade-in at Apple and Softbank retail stores when purchasing a new device. Brightstar Corp. then "flips," that is quickly resells, many of these used devices in the Asian market. It also uses third party vendors, such as Harvestar, to repair, refurbish and return to "like new" condition used devices that meet certain "grades." Brightstar Corp. then wholesales these refurbished devices for re-entry into the consumer market

13. Through its wholly owned subsidiary Brightstar Device Protection, LLC, a Delaware limited liability company based in Alpharetta, Georgia, Brightstar Corp. also acquires thousands of damaged mobile devices directly from consumers who purchased one or more of Brightstar Corp's device protection programs. Brightstar Corp., through third party vendors, such as Harvestar, then returns the damaged equipment to "like new" condition and redeploys the devices to its customers in accordance with the terms of the device protection plans.

14. As a customer of Harvestar, Brightstar Corp. became familiar with the quality, professionalism and efficiency of Harvestar and its experienced team of technicians.

15. On April 9, 2018, Brightstar Asia, an affiliate of Brightstar Corp., purchased from plaintiff and Mr. Elmi a 51% controlling stock interest in Harvestar for $4,000,000 pursuant to the terms of a Stock Purchase Agreement dated April 6, 2018. The transaction implicitly valued 100% of the company at approximately $8,000,000 and left plaintiff and Mr. Elmi each owning a 24.5%minority stock interest in Harvestar.

16. In connection with the transaction, the parties executed numerous other documents that outlined the relationship of the parties moving forward. For example, Brightstar Corp. and Harvestar Technologies, Inc., a wholly owned subsidiary of Harvestar, executed a Master Services Agreement and a Statement of Work #1 that together detailed the services Harvestar was to provide to Brightstar Corp.

17. Harvestar, Brightstar Asia, plaintiff and Mr. Elmi also executed a Shareholders Agreement dated April 9, 2018, defining the rights, duties and obligations of the parties. The Shareholders Agreement, *inter alia*, provided plaintiff with valuable "put" and "call" rights giving him the right to sell his remaining minority interest in Harvestar to Brightstar Asia for a defined amount or, alternatively, to repurchase for a defined amount the securities sold to Brightstar Asia.

18. The Shareholders Agreement also required that any transaction between Brightstar Asia or its affiliates, on the one hand, and Harvestar or its subsidiaries, including Harvestar Technologies, Inc., on the other hand, be on terms "no less favorable to the Company [Harvestar] or the Subsidiaries thereof than would be obtainable in a comparable arm's-length transaction."

19. At the time of the transaction, Brightstar Corp. forecast that, beginning on the first anniversary of the transaction, it would provide a minimum of 500,000 mobile telephones per year to Harvestar to repair and refurbish.

20. The agreements the parties executed contemplated that Harvestar would repair such 500,000 mobile telephones per year for Brightstar Corp. at a price of cost plus $10 per phone. For example, Paragraph 11(b) of the Shareholders Agreement provided plaintiff with a valuable "Executive Call Right" if the "Harvestar Volume" (the number of handsets Harvestar processes) is less than 500,000 for the 12 months immediately preceding plaintiff's exercise of the Executive Call Right. This

arrangement was the basis for, and an integral part of, the buy-sell transaction executed April 9, 2018.

21. Almost immediately upon obtaining majority control of Harvestar, however, Brightstar Asia mismanaged the company and caused it to engage in conflict transactions that the Shareholders Agreement prohibits.

22. For example, rather than allow plaintiff and Mr. Elmi to continue to manage Harvestar's operations as they had done so successfully for the immediately preceding twenty (20) months, taking the company from a start-up in August 2016 to a revenue producing concern worth $8,000,000 in April 2018, Brightstar Asia installed a new slate of directors and officers, led by Andy Zeinfeld, the president of Brightstar Corp. who reported to Brightstar's chief executive officer, Jayman Patel, to manage Harvestar's operations.

23. The monthly forecasts Brightstar Asia and its hand-picked directors and officers provided to Harvestar of the number of mobile devices Brightstar would provide Harvestar to be repaired proved to be wildly inaccurate. As a result, Harvestar purchased millions of dollars in parts and labor to repair mobile devices that never arrived, causing Harvestar to incur substantial financial losses. Defendants' initial management team proved unable to source, sort, grade or resell the used mobile devices Harvestar needed to operate its business.

24. In addition to all of this, Brightstar Asia placed millions of dollars in intercompany loans and other obligations on Harvestar's balance sheet, destroying the value plaintiff and Mr. Elmi had created in the previous 20 months.

25. In the Fall of 2018, Brightstar Asia fired its initial managers, Andy Zeinfeld and Jayman Patel, and replaced them with new managers, who continued to mismanage Harvestar. Brightstar Asia's new managers continued to provide inaccurate forecasts to Harvestar. When these new managers caused Harvestar to purchase expensive computer systems and equipment that Harvestar did not need and could not use efficiently, defendant fired them and replaced them with the current chief executive officer of Brightstar Corp., Rod Millar.

26. Mr. Millar has now cancelled all repair services Harvestar was formed to provide to its customers, except the repair work that Harvestar provides to Brightstar Asia's insurance affiliate, Brightstar Device Protection, LLC.

27. Brightstar Asia is currently using Harvestar to repair and refurbish up to 8,000 to 10,000 mobile devices per month for its affiliate on terms less favorable to Harvestar than Brightstar Asia could obtain in a comparable arm's-length transaction. Indeed, Brightstar Asia has caused, and continues to cause, Harvestar to repair handsets for its insurance affiliate at a cost $50 per device less than that company was paying to an unrelated, third party vendor prior to entering into the conflict transaction with Harvestar.

28. In this manner, Brightstar Asia is using Harvestar to create a profit for itself and its affiliates of up to $5,000,000 per year while at the same time destroying the value of plaintiff's minority interest in Harvestar and the value of his "put" and "call" rights under the Shareholders Agreement.

29. Brightstar Asia, through the conduct outlined above, has breached the Shareholders Agreement, violated the implied covenant of good faith and fair dealing, and violated fiduciary duties owed to plaintiff, causing the damage to plaintiff set out herein.

## LEGAL CLAIMS

### COUNT I
**(Breach of Contract: Conflict Transactions)**

30. The allegations contained in Paragraphs 1 through 29 are incorporated herein by reference.

31. In Paragraph 14 of the Shareholders Agreement, Brightstar Asia expressly agreed that any transaction in which it, or any affiliate of it, entered into with Harvestar "will be on terms no less favorable to the Company [Harvestar] of the Subsidiaries thereof than be obtainable in a comparable arm's-length transaction.

32. Brightstar Asia violated Paragraph 14 of the Shareholders Agreement.

33. Brightstar Asia, or one of its affiliates, entered into numerous transactions with Harvestar on terms less favorable to Harvestar than Brightstar Asia could obtain in a comparable arm's-length transaction.

34. Specifically, Harvestar has already repaired more than 200,000 devices for an insurance affiliate of Brightstar Asia, Brightstar Device Protection, LLC, at a price that was $50 lower per phone than Brightstar Asia could have obtained in comparable arm's-length transactions.

35. Harvestar continues to repair devises for Brightstar Device Protection, LLC, at a price that is $50 lower per phone than Brightstar Asia can obtain in a comparable arm's-length transaction.

36. As a direct and proximate result of Brightstar Asia violation of Paragraph 14 of the Shareholders Agreement, plaintiff has been damaged in at least two respects.

37. First, because Brightstar Asia has in violation of the Shareholders Agreement caused Harvestar's revenues to be $10,000,000 less than they otherwise would have been had Brightstar Asia complied with Paragraph 14, the value of plaintiff's 24.5% interest in Harvestar is at least $2,450,000 less than it would be had Brightstar Asia complied with Paragraph 14.  Because Brightstar Asia's violation of Paragraph 14 of the Shareholders Agreement continues, the damage Brightstar Asia has inflicted, and continues to inflict, upon plaintiff continues unabated.

38. Second, as a result of Brightstar Asia's violation of Paragraph 14 of the Shareholders Agreement, plaintiff's "put" rights pursuant to Paragraph 10 of the Shareholders Agreement have been rendered worthless.

## COUNT II
**(Breach of Contract: Specific Performance, Reformation and Disgorgement)**

39. The allegations contained in Paragraphs 1 through 38 are incorporated herein by reference.

40. Paragraph 24 of the Shareholders Agreement provides:

**Specific Performance**. The Shareholders each acknowledge that the rights of each party hereunder are special, unique and of extraordinary character and that, in the event that any Shareholder violates or fails or refuses to perform

any covenant or agreement made by it in this Agreement, the non-breaching parties may be without an adequate remedy at Law. The Shareholders agree, therefore, that in the event that any Shareholder violates or fails or refuses to perform any covenant or agreement made by such Shareholder in this Agreement, the nonbreaching parties may, subject to the terms of this Agreement and in addition to any remedies at Law for damages or other relief, institute and prosecute an action in any court of competent jurisdiction to enforce specific performance of such covenant or agreement or seek any other equitable relief.

41. Brightstar Asia has violated, and continues to violate, Paragraph 14 of the Shareholders Agreement, which expressly prohibits Brightstar Asia, and any of its affiliates, from entering into any transaction with Harvestar except on terms no less favorable to Harvestar than Brightstar Asia could obtain in a comparable arm's-length transaction.

42. Brightstar Asia has caused Harvestar to enter into transactions with an affiliate of Brightstar Asia, Brightstar Device Protection, LLC, on terms less favorable to than Brightstar Asia could obtain in a comparable arm's-length transaction. In particular, Brightstar Asia caused Harvestar to repair devices for Brightstar Device Protection, LLC, at a price that was $50 lower per device than Brightstar Asia could have obtained in a comparable arm's-length transaction.

43. Brightstar Asia agreed in Paragraph 24 of the Shareholders Agreement that plaintiff is entitled to specific performance of its obligations set out in the Agreement, including Brightstar Asia's obligations in Paragraph 14 of the Agreement not to enter into transactions with Harvestar on terms less favorable to Harvestar than Brightstar Asia could obtain in a comparable arm's-length transaction.

44. Brightstar Asia also agreed in Paragraph 24 of the Shareholders Agreement that plaintiff may seek other equitable relief to enforce Brightstar Asia's covenants under the Agreement.

45. In accordance with the provisions of the Shareholders Agreement, this Court should specifically enforce Paragraph 14 of the Shareholders Agreement. This Court should (a) temporarily and permanently enjoin Brightstar Asia from causing Harvestar to enter into transactions with Brightstar Asia and its affiliates on terms less favorable to Harvestar than Brightstar Asia could obtain in a comparable arm's-length transaction; (b) reform the agreement between Harvestar and Brightstar Device Protection, LLC, to reflect an arm's-length price for the repair of mobile devices; and (c) order Brightstar Asia to disgorge the difference between the contract price and an arm's length price, which plaintiff estimates to be $10,000,000.

## COUNT III
**(Breach of Contract: Implied Duty of Good Faith and Fair Dealing)**

46. The allegations contained in Paragraphs 1 through 45 are incorporated herein by reference.

47. The Shareholders Agreement into which Brightstar Asia entered with plaintiff contains an implied covenant of good faith and fair dealing.

48. Such implied covenant required, *inter alia*, that Brightstar Asia refrain from engaging in, or causing Harvestar to engage in, conflict transactions to the detriment of Harvestar or plaintiff.

49. Brightstar Asia violated this implied covenant in two respects.

50. First, as detailed in paragraphs 31 through 38, Brightstar Asia has caused Harvestar to repair devices for Brightstar Asia's insurance affiliate, Brightstar Device Protection, LLC, on terms less favorable to Harvestar than Brightstar Asia could obtain in a comparable arm's-length transaction.

51. Second, Brightstar Asia caused Harvestar not to receive for repair and refurbishment the 40,000 mobile devices per month that had been the basis for the April 9, 2018, stock purchase. In addition, Brightstar Asia has caused Harvestar to cease the repair of any mobile devices other than the up to 8,000 to 10,000 devices per month that its affiliate, Brightstar Device Protection, LLC, provides to Harvestar to refurbish at a below market rate.

52. As a direct and proximate result of Brightstar Asia's breach of the implied covenant of good faith and fair dealing, Brightstar Asia has damaged the value of plaintiff's 24.5% interest in Harvestar in an amount of more than $2,450,000.

53. In addition, Brightstar Asia has caused plaintiff's "put" rights pursuant to Paragraph 10 of the Shareholders Agreement and plaintiff's "call" rights pursuant to Paragraph 11 of the Shareholders Agreement to be rendered worthless.

54. Through the violations discussed su*pra*, Brightstar Asia has caused Harvestar's EBIT for the trailing twelve months to be a negative number. Under the formula set out in the Shareholders Agreement, the price at which plaintiff has the right to "put" the purchase of his shares to Brightstar Asia is currently $0. Had Brightstar Asia acted in good faith and dealt fairly with plaintiff, the price at which

plaintiff would be able to "put" the purchase of his shares to Brightstar Asia would be $6,125,000.

55. Further, through Brightstar Asia's conflicted and bad faith dealings discussed *supra*, the price at which plaintiff has the right to "call" the purchase of Brightstar Asia's majority interest in Harvestar is currently more than $10,000,000, a prohibitively expensive and unreasonable amount for a company Brightstar Asia has rendered worthless.

## COUNT IV
### (Breach of Fiduciary Duty)

56. The allegations contained in Paragraphs 1 through 55 are incorporated herein by reference.

57. In addition to the foregoing claims for breach of contract, or in the alternative, plaintiff sues Brightstar Asia for breach of fiduciary duty.

58. As the majority shareholder of Harvestar, Brightstar Asia owed plaintiff a duty not to violate the reasonable expectations of Harvestar's minority shareholders.

59. Brightstar Asia also owed plaintiff a duty of good faith and fair dealing.

60. Brightstar Asia further owed plaintiff a duty not to cause Harvestar to engage in conflict transactions to the detriment of Harvestar and its minority shareholders.

61. Brightstar Asia violated each of the foregoing duties. Specifically, as detailed in paragraphs 31 through 38, Brightstar Asia caused Harvestar to repair devices for Brightstar Asia's affiliate, Brightstar Device Protection, LLC, on terms

less favorable to Harvestar than Brightstar Asia could obtain in a comparable arm's-length transaction.

62.   In addition, Brightstar Asia caused Harvestar not to receive for repair and refurbishment the 40,000 mobile devices per month that had been the basis for the April 9, 2018, stock purchase. Further, Brightstar Asia has caused Harvestar to cease the repair of any mobile devices other than the up to 8,000 to 10,000 devices per month that its affiliate, Brightstar Device Protection, LLC, provides to Harvestar to refurbish at a below market rate.

63.   As a direct and proximate result of Brightstar Asia's breach of the duties it owes to plaintiff, Brightstar Asia has damaged the value of plaintiff's 24.5% interest in Harvestar and has rendered worthless both the "put" rights plaintiff owns pursuant to Paragraph 10 of the Shareholders Agreement and the "call" rights plaintiff owns pursuant to Paragraph 11 of the Shareholders Agreement.

**WHEREFORE,** Plaintiff prays as follows**:**

A.   That this Court award a judgment of compensatory damages in favor of the plaintiff, Tyler Miller, against defendant Brightstar Asia Ltd. in an amount in excess of $8,500,000;

B.   That this Court specifically enforce Paragraph 14 of the Shareholders Agreement and (a) temporarily and permanently enjoin Brightstar Asia from causing Harvestar to enter into transactions with Brightstar Asia and its affiliates on terms less favorable to Harvestar than Brightstar Asia could obtain in a comparable arm's-length transaction; (b) reform the agreement between Harvestar and  Brightstar

Device Protection, LLC, to reflect an arm's-length price for the repair of mobile devices; and (c) order Brightstar Asia to disgorge the difference between the contract price and an arm's length price, which plaintiff estimates to be $10,000,000;

    C.    That this Court award a judgment of pre-judgment interest against Brightstar Asia;

    D.    That this Court award a judgment of attorneys' fees, costs and expenses against Brightstar Asia; and

    E.    That this Court award such other and further relief as this Court deems just and equitable.

Respectfully submitted,

s/ Eugene N. Bulso, Jr
Eugene N. Bulso, Jr. (BPR No. 12005)
LEADER & BULSO, PLC
414 Union Street, Suite 1740
Nashville, Tennessee 37219
Tel. (615) 780-4100
Fax. (615) 780-4101
gbulso@leaderbulso.com


s/ Sam Della Fera, Jr.
Sam Della Fera, Jr.,
McManimon, Scotland & Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, NJ 07068
Tel. 973-721-5019
sdellafera@msbnj.com

*Attorneys for Tyler Miller*

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing has been served via the Court's ECF system on the following:

 Peter C. Sales
 Frankie N. Spero
 Kristina A. Reliford
 BRADLEY ARANT BOULT CUMMINGS, LLP
 1600 Division Street, Suite 700
 Nashville, TN 37203
 Tel. (615) 252-2365
 Fax (615) 252-6365
 psales@bradley.com
 fspero@bradley.com
 kreliford@bradley.com

 *Attorneys for Brightstar Asia, Ltd.*

on this 30th day of September 2020.

                 <u>s/ Eugene N. Bulso, Jr.</u>
                 Eugene N. Bulso, Jr.