## IN THE UNITES STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**TYLER MILLER,**

  **Plaintiff,**

v.

**BRIGHTSTAR ASIA, LTD,**

  **Defendant.**

**Case No. 20-cv-4849-GBD-JLC**

---

## RESPONSE TO MOTION TO DISMISS

---

Eugene N. Bulso, Jr. (BPR No. 12005)
LEADER & BULSO, PLC
414 Union Street, Suite 1740
Nashville, Tennessee 37219
Tel. (615) 780-4100
Fax. (615) 780-4101
gbulso@leaderbulso.com


Sam Della Fera, Jr.,
MCMANIMON, SCOTLAND & BAUMANN, LLC
75 Livingston Avenue, Suite 201
Roseland, NJ 07068
Tel. 973-721-5019
sdellafera@msbnj.com

*Attorneys for Tyler Miller*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION ............................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 4

   1.   Formation and Acquisition of Harvestar. ........................................... 4

   2.   The Plaintiff's "Put" and "Call" Rights.............................................. 5

   3.   Brightstar Asia Exploits Harvestar at the Expense of the Minority
       Shareholders. ................................................................................ 6

ARGUMENT ................................................................................................. 8

   1.   Brightstar Asia's Motion to Dismiss is Moot. ..................................... 8

   2.   This Court Should Deny Brightstar's Rule 12(b)(1) Motion. ............... 8

       2.1.   Plaintiff Has Standing. ......................................................... 8

           2.1.1.  Motion to Dismiss for Lack of Standing Standard. ............ 9

           2.1.2.  Plaintiff's Claims Are Direct Claims, Not Derivative Claims.......... 9

           2.1.3.  The Plaintiff Has Alleged an Actual and Concrete Injury. ............. 11

       2.2.   Plaintiff's Claims Are Ripe. ................................................. 13

   3.   This Court Should Deny Brightstar Asia's Rule 12(b)(6) Motion. ................... 16

       3.1.   Rule 12(b)(6) Standard.......................................................... 16

       3.2.   The "Common Grounds" Brightstar Asia Asserts Do Not Bar
           Plaintiff's Claims. ................................................................ 17

           3.2.1.  Brighstar Asia's Destruction of the Value of Plaintiff's "Put"
                and "Call" Rights Constitutes Legally Actionable Damages.......... 17

           3.2.2.  The Parol Evidence Rule Does Not Bar the Plaintiff's Claims. ...... 17

       3.3.   The Plaintiff Has Stated a Claim for Breach of Fiduciary Duty.......... 18

           3.3.1.  The Plaintiff's Breach of Fiduciary Claim Is Not Duplicative. ....... 18

3.3.2.  Section 29 of the Shareholders Agreement Does Not Lawfully
Disclaim Brightstar's Fiduciary Duties. .........................................21

3.4.  Plaintiff Has Stated a Claim for Breach of the Implied Covenant
of Good Faith and Fair Dealing. .............................................................23

3.4.1.  Section 29(a) Does Not Make a Breach of the Express Terms
of the Shareholders Agreement a Prerequisite to a Claim for
Breach of the Implied Covenant. .......................................................23

3.4.2.  Even If Brightstar Asia's Interpretation of Section 29(a) Were
Correct, Brightstar Asia Breached the Express Terms of the
Shareholders Agreement. .................................................................23

3.4.3.  The Plaintiff Properly Asserted His Claim for Brightstar Asia's
Breach of the Implied Covenant. ......................................................24

CONCLUSION...........................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
910 A.2d 1020 (Del. Ch. 2006) ................................................................. 24

*Allied Chem. & Dye Corp. v. Steel & Tube Co. of Am.*,
14 Del. Ch. 1, 120 A. 486 (1923) .............................................................. 22

*Alltrista Plastics, LLC v. Rockline Indus., Inc.*,
No. CV N12C-09-094 JTV, 2013 WL 5210255 (Del. Super. Ct. Sept. 4, 2013) ...... 17

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........................................... 16

*Auriga Capital Corp. v. Gatz Properties*,
40 A.3d 839 (Del. Ch.) ................................................................. 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................... 16

*Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*,
906 A.2d 827 (Del. Ch. 2006) ................................................................. 19

*Cantor Fitzgerald, L.P. v. Cantor*,
724 A.2d 571 (Del. Ch. 1998) ................................................................. 19

*Citigroup Inc. v. AHW Inv. P'ship*,
140 A.3d 1125 (Del. 2016) ................................................................. 11

*Dunlap v. State Farm Fire & Cas. Co.*,
878 A.2d 434 (Del. 2005) ................................................................. 18

*eBay Domestic Holdings, Inc. v. Newmark*,
16 A.3d 1 (Del. Ch. 2010) ................................................................. 21

*Feeley v. NHAOCG, LLC*,
62 A.3d 649 (Del. Ch. 2012) ................................................................. 22

*Fitzgerald v. Cantor*,
No. C.A. 16297-NC, 1998 WL 842316 (Del. Ch. Nov. 10, 1998) ............................. 17

*Flores v. Forster & Garbus, LLP*,
No. 19-CV-4494 (VSB), 2020 WL 5603486 (S.D.N.Y. Sept. 17, 2020) ..................... 9

*Fredericks v. City of New York*,
No. 12 CIV. 3734, 2012 WL 3667448 (S.D.N.Y. Aug. 27, 2012) .......................... 1, 8

*Gale v. Bershad* ,
No. CIV. A. 15714, 1998 WL 118022 (Del. Ch. Mar. 4, 1998) ................................ 19

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016).................................................................................... 16

*Ivanhoe Partners v. Newmont Min. Corp.*,
535 A.2d 1334 (Del. 1987) ............................................................................... 20, 21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014) ...................................... 12

*Lowell v. Lyft, Inc.*,
352 F. Supp. 3d 248 (S.D.N.Y. 2018) ...................................................................... 9

*Lujan v. Defs. of Wildlife*
504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ................................... 8, 12

*Make the Rd. New York v. Pompeo*,
No. 19 CIV. 11633 (GBD), 2020 WL 4350731 (S.D.N.Y. July 29, 2020) ................. 9

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
118 A.3d 175 (Del. 2015) ............................................................................ 2, 10, 11

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
772 F.3d 740 (2d Cir. 2014).................................................................................. 2, 10

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) .................................................................................... 18

*Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*,
No. CV 7668-VCN, 2015 WL 394011 (Del. Ch. Jan. 29, 2015) ............................. 25

*RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'ship, HPA, Inc.*,
No. 16873, 1999 WL 550350 (Del. Ch. July 16, 1999) .......................................... 19

*Ross v. Bank of Am., N.A. (USA)*,
524 F.3d 217 (2d Cir.2008)............................................................................... 13, 14

*Simmonds v. I.N.S.*,
326 F.3d 351 (2d Cir. 2003)................................................................................... 14

*Solow v. Aspect Res., LLC*,
No. CIV.A. 20397, 2004 WL 2694916 (Del. Ch. Oct. 19, 2004)............................. 19

***Thomas v. Union Carbide Agric. Prods. Co.***,
  473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) ............................................. 14

***Tooley v. Donaldson, Lufkin & Jenrette, Inc.***,
  845 A.2d 1031 (Del. 2004) ........................................................................... 2, 9, 10

***United States v. Vazquez***,
  145 F.3d 74 (2d Cir. 1998) ..................................................................................... 9

***Universal Attractions, Inc. v. Live Nation Entm't, Inc.***,
  No. 17CIV3782GBDRLE, 2018 WL 1089747 (S.D.N.Y. Feb. 12, 2018) .............. 1, 8

***Universal Studios Inc. v. Viacom Inc.***,
  705 A.2d 579 (Del. Ch. 1997) .............................................................................. 20

***Unocal Corp. v. Mesa Petroleum Co.***,
  493 A.2d 946 (Del. 1985) ............................................................................. 20, 21

***Whitmore v. Arkansas***,
  495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ........................................ 8

## Statutes

6 *Del. C.* § 17-1101(d) ........................................................................................ 22

6 *Del. C.* § 18-1101(c) ........................................................................................ 22

8 *Del. C.* § 102(b)(7) ........................................................................................... 22

## Rules

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 1, 9

Fed. R. Civ. P. 12(b)(6) .............................................................................. 2, 3, 16

Fed. R. Civ. P. 15(a)(1) ......................................................................................... 8

Fed. R. Civ. P. 8(d)(2) ........................................................................................ 20

## Constitutional Provisions

U.S. Const. art. III, § 2, cl. 1 ............................................................................... 8

## INTRODUCTION

This case arises out of defendant Brightstar Asia, Ltd.'s ("Brightstar") breach of a Shareholders Agreement executed April 6, 2018, and its breach of fiduciary duties owed to Plaintiff, a minority shareholder, under Delaware law. Plaintiff commenced this action on June 24, 2020, through the filing of a *pro se* Complaint (Dkt. 1.) The *pro se* Complaint asserted two claims: a claim for breach of fiduciary duty (Count I) and a claim for breach of contract (Count II). (*Id.* at 7, 9.) Plaintiff thereafter retained counsel, who on September 30, 2020, filed a First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1). (*See* Dkt. Nos. 7, 8 and 24.) The First Amended Complaint asserts four claims: breach of contract: conflict transactions (Count I), breach of contract: specific performance, reformation and disgorgement (Count II), breach of contract: implied covenant of good faith and fair dealing (Count III), and breach of fiduciary duty (Count IV). (Dkt. 24 at 8–14.) This case is currently before the Court upon defendant's motion to dismiss the initial *pro se* Complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Dkt. 21.)

This Court should deny defendant's motion for the simple reason that the filing of the First Amended Complaint has mooted the motion. *See e.g., Fredericks v. City of New York*, No. 12 CIV. 3734, 2012 WL 3667448 at *1 (S.D.N.Y. Aug. 27, 2012); and *Universal Attractions, Inc. v. Live Nation Entm't, Inc.*, No. 17CIV3782GBDRLE, 2018 WL 1089747 at *1 n.1 (S.D.N.Y. Feb. 12, 2018). But even were Defendant's motion not moot, the Court should deny it in all respects.

Brightstar seeks dismissal under Rule 12(b)(1) on two grounds: (1) Plaintiff's alleged lack of standing; and (2) lack of ripeness of Plaintiff's claims. Brightstar,

relying on ***Tooley v. Donaldson, Lufkin & Jenrette, Inc.***, 845 A.2d 1031, 1039 (Del. 2004), argues that Plaintiff lacks standing because the claims he asserts are derivative claims, not direct claims. (Dkt. 22 at 7.) Brightstar, however, fails to cite or discuss the Second Circuit's controlling decision in ***NAF Holdings, LLC v. Li & Fung (Trading) Ltd.***, 772 F.3d 740, 743 (2d Cir. 2014), which is fatal to Brightstar's position. Under ***NAF***, and the Supreme Court of Delaware's answer to the certified question ***NAF*** presented to that court, *see* ***NAF Holdings, LLC v. Li & Fung (Trading) Ltd.***, 118 A.3d 175, 176 (Del. 2015), ***Tooley*** has no bearing on cases where, as here, a party seeks to enforce his own rights as a signatory to a commercial contract. Brightstar's ripeness defense fails because, as discussed *infra*, Plaintiff plainly seeks to recover damages and injunctive relief for injuries already sustained.

Brightstar's motion under Rule 12(b)(6) fares no better. Brightstar claims that Plaintiff has suffered no cognizable damages, but Plaintiff has plainly alleged that (a) Brightstar has violated—and continues to violate—the prohibition in Paragraph 14 of the Shareholders Agreement concerning conflict transactions on terms less favorable than arm's-length terms (Dkt. 24 at 9, 10), entitling Plaintiff to obtain specific performance and other equitable relief under Paragraph 24 of the Agreement; (b) Brightstar's breach of Paragraph 14 has damaged the value of Plaintiff's 24.5% minority ownership interest in Harvestar (*Id*. at 9); and (c) Brightstar's breach has damaged the otherwise valuable "put" and "call" rights Plaintiff owns pursuant to Paragraphs 10 and 11 of the Shareholders Agreement. (*Id*.) Plaintiff has more than adequately pled an actual, cognizable injury resulting from Brightstar's conduct.

Brightstar also curiously relies upon the parol evidence rule as a basis for its Rule 12(b)(6) motion. According to Brightstar, "because the alleged evidence upon which Plaintiff's two causes of action are based is inadmissible in this action, those causes of action fail as a matter of law and must be dismissed under Rule 12(b)(6)." (Dkt. 22 at 17) A Rule 12(b)(6) motion, of course, is necessarily directed to the allegations of the complaint. A plaintiff is not required to provide evidence of his claims at the pleadings stage, and a court is not called upon to decide whether plaintiff's "evidence" is admissible or inadmissible at the pleadings stage. Further, as discussed *infra*, Plaintiff has not even asserted the claim that Brightstar invokes the parol evidence rule to bar.

Brightstar's argument that Paragraph 29 of the Shareholders Agreement lawfully disclaims any fiduciary duty Brightstar owes Plaintiff under Delaware law is likewise legally deficient. Delaware does not allow a majority shareholder, like Brightstar, to disclaim via contract the fiduciary duties the law imposes upon it. *See* discussion *infra* at Section 3.3.2.

In the final analysis, none of the myriad arguments Brightstar advanced to dismiss the *pro se* Complaint had merit. Brightstar's motion was therefore due to be denied on its merits. Now that that Complaint has been superseded by the First Amended Complaint, Brightstar's motion should be denied for the additional reason that it is moot.

## FACTUAL BACKGROUND

### 1. Formation and Acquisition of Harvestar.

The Plaintiff, Tyler Miller, and his business partner, Omar Elmi formed Harvestar Solutions Limited ("Harvestar") on August 1, 2016. (Dkt. 24, ¶ 9.) Harvestar's business consisted of purchasing used mobile telephones from across the globe and then refurbishing those telephones to "like new" condition before wholesaling the refurbished units to distributors and retailers. (*Id.*, ¶ 10.) Harvestar processed up to 500,000 devices a month, 200,000 of which it refurbished. (Dkt. 24-2.)

Harvestar's success soon attracted the attention of Miami-based Brightstar Corp., one of the largest distributors of mobile telephones in the world. (Dkt. 24, ¶ 11.) Through its "Buy Back & Trade-in" program, Brightstar Corp. purchases millions of used mobile devices that consumers trade-in at Apple and Softbank retail stores when purchasing a new device. (*Id.* ¶ 12.) Brightstar Corp. then "flips," that is quickly resells, many of these used devices in the Asian market. It also uses third party vendors, such as Harvestar, to repair, refurbish and return to "like new" condition used devices that meet certain "grades." (*Id.*) Brightstar Corp. then wholesales these refurbished devices for re-entry into the consumer market. (*Id.*)

On April 9, 2018, Brightstar Asia, an affiliate of Brightstar Corp., purchased from Plaintiff and Mr. Elmi a 51% controlling stock interest in Harvestar pursuant to the terms of a Stock Purchase Agreement dated April 6, 2018. (*Id.*, ¶ 15.) In connection with the transaction, Harvestar, Brightstar Asia, the Plaintiff, and Mr. Elmi executed a Shareholders Agreement dated April 9, 2018, defining the rights,

duties, and obligations of the parties. (*Id.*, ¶ 17.) The Shareholders Agreement specifically prohibited Brightstar from entering into any transaction with Harvestar on terms that were "less favorable to the Company [Harvestar] or the Subsidiaries thereof than would be obtainable in a comparable arm's-length transaction." (Dkt. 24-1, ¶ 14.) This provision, quite obviously, protected the minority shareholders from any self-dealing transactions between Brightstar and Harvestar, which Brightstar now controlled.

## 2.  The Plaintiff's "Put" and "Call" Rights.

Section 10 of the Shareholders Agreement gave the Plaintiff certain "put" rights, that is, the right to transfer to Brightstar Asia in a forced sale certain shares controlled by the Plaintiff. (Dkt. 1-2, § 10(a).) Section 10 further fixed the sale price of the "Put Shares" should the "Executives" (the Plaintiff and Mr. Elmi) exercise their "Put Rights" by way of a multi-variable formula. (*Id.*, § 10(f).) The sale price of the "Put Shares" would be five (5) multiplied by the quotient of Harvestar's earnings before interest and taxes (EBIT) divided by the "Harvestar Volume" (the number of handset units processed by Harvestar) (this quotient not to exceed $10), multiplied by the "Harvestar Volume," multiplied by the Ownership Percentage represented by the "Put Shares," from which product Harvestar's indebtedness multiplied by the Ownership Percentage would be subtracted. (*Id.*) Expressed visually, this formula is:

$$"Put\ Share"\ Sales\ Price = \left(5\ x\ \frac{EBIT}{HV}\ x\ HV\ x\ OP\right) - (Debt\ x\ OP)$$

Thus, the value of the "Put Shares" evaporates as Harvestar's EBIT decreases, the volume of devices provided to Harvestar dwindles, and Harvestar's indebtedness increases.

Section 11 of the Shareholders Agreement gave the Plaintiff certain "call" rights, that is, the right to purchase from Brightstar Asia in a forced sale certain shares controlled by Brightstar Asia. (*Id.*, § 11(a).) The "Executives" could only invoke this right if the "Harvestar Volume" for the preceding twelve months was less than 500,000 devices. (*Id.*, § 11(b).) Like Section 10, Section 11 also fixes the purchase price of the "Executive Call Shares," calculated as the greater of (1) the fair market value of Harvestar multiplied by the "Ownership Percentage" and (2) the total amount of cash and other property invested in Harvestar by Brightstar Asia less $2,000,000. (*Id.*, § 11(c).) Thus, the value of the "Executive Call Shares" increases even as Brightstar Asia's mismanagement reduces Harvestar's fair market value.

### 3. Brightstar Asia Exploits Harvestar at the Expense of the Minority Shareholders.

Upon obtaining majority control of Harvestar, Brightstar Asia engaged in self-dealing transactions to the detriment of the minority shareholders, including Plaintiff. (Dkt. 24, ¶¶ 21-29.) Brightstar, for example, is currently using Harvestar to repair and refurbish up to 8,000 to 10,000 mobile devices per month for its insurance affiliate on terms less favorable to Harvestar than Brightstar could obtain in a comparable arm's-length transaction. (*Id.* ¶ 27) Brightstar has caused, and continues to cause, Harvestar to repair handsets for its insurance affiliate at a cost $50 per

device less than that company was paying to an unrelated, third party vendor prior to entering into the conflict transaction with Harvestar. (*Id.*)

Brightstar has also mismanaged Harvestar for its own benefit. (Dkt. 24, ¶¶ 22-26.) The monthly forecasts Brightstar Asia and its hand-picked directors and officers provided to Harvestar of the number of mobile devices Brightstar would provide Harvestar to be repaired proved to be wildly inaccurate. (*Id.,* ¶ 23) On the basis of those errant forecasts, Brightstar Asia caused Harvestar purchased millions of dollars in parts and labor to repair mobile devices that never arrived, causing Harvestar to incur substantial financial losses. (*Id.*) Brightstar Asia also caused Harvestar to purchase expensive computer systems and equipment that Harvestar did not need and could not use efficiently. (*Id.,* ¶ 25.) Finally, Brightstar Asia placed millions of dollars in intercompany loans and other obligations on Harvestar's balance sheet, destroying Harvestar's value. (*Id.,* ¶ 24.)

Brightstar Asia's self-dealing conduct and self-serving management violated the Shareholders Agreement and destroyed the value of Plaintiff's minority interest and his "put" and "call" rights.

## ARGUMENT

### 1. Brightstar Asia's Motion to Dismiss is Moot.

Federal Rule of Civil Procedure 15 permits a party to amend its pleadings once as a matter of course twenty-one days after the filing of a Rule 12(b) motion. *See* Fed. R. Civ. P. 15(a)(1). The filing of an amended complaint pursuant to Rule 15 ordinarily supersedes the original complaint, renders it of no legal effect, and consequently moots any motion to dismiss the original complaint. *See **Fredericks v. City of New York**,* No. 12 CIV. 3734, 2012 WL 3667448 at *1 (S.D.N.Y. Aug. 27, 2012); ***Universal Attractions, Inc. v. Live Nation Entm't, Inc.***, No. 17CIV3782GBDRLE, 2018 WL 1089747 (S.D.N.Y. Feb. 12, 2018).

The Plaintiff filed his First Amended Complaint on September 30, 2020. (*See* Dkt. 24). The First Amended Complaint supersedes the Complaint (Dkt. 1) and moots Brightstar Asia's Motion to Dismiss (Dkt. 19). Consequently, Brightstar Asia's Motion to Dismiss should be denied as moot.

### 2. This Court Should Deny Brightstar's Rule 12(b)(1) Motion.

#### 2.1. Plaintiff Has Standing.

Article III of the Constitution of the United States limits the judicial power of federal courts to "Cases" and "Controversies." *See* U.S. Const. art. III, § 2, cl. 1. To implement this limitation, federal courts use the doctrine of standing as a "landmark" to "identify those disputes which are appropriately resolved through the judicial process." *See **Lujan v. Defs. of Wildlife**,* 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (quoting ***Whitmore v. Arkansas***, 495 U.S. 149, 155, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990).

### 2.1.1.  Motion to Dismiss for Lack of Standing Standard.

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." ***Flores v. Forster & Garbus, LLP***, No. 19-CV-4494 (VSB), 2020 WL 5603486, at *2 (S.D.N.Y. Sept. 17, 2020) (citation omitted). When a defendant brings a facial challenge—a challenge based solely on the allegations of the complaint and the exhibits thereto—to the plaintiff's standing at the pleadings state, the court "accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *See **Lowell v. Lyft, Inc.***, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (citing ***United States v. Vazquez***, 145 F.3d 74, 81 (2d Cir. 1998); ***Make the Rd. New York v. Pompeo***, No. 19 CIV. 11633 (GBD), 2020 WL 4350731 at *6 (S.D.N.Y. July 29, 2020). The pleadings, which need not be crafted with precise detail, must only allege facts that affirmatively and plausibly suggest the plaintiff has standing to survive a motion to dismiss. *See **Lowell***, 352 F. Supp. 3d at 255 (citations omitted).

### 2.1.2.  Plaintiff's Claims Are Direct Claims, Not Derivative Claims.

Brightstar Asia argues that the Plaintiff asserts derivative claims, such that the Plaintiff lacks standing to assert those claims and the Court lacks subject matter jurisdiction to entertain them. For the proposition that the Plaintiff's claims are derivative claims, Brightstar Asia relies on ***Tooley v. Donaldson, Lufkin & Jenrette, Inc.***, 845 A.2d 1031, 1039 (Del. 2004). The Delaware Supreme Court, however, unambiguously held in ***NAF Holdings, LLC v. Li & Fung (Trading)***

*Ltd.*, 118 A.3d 175, 176 (Del. 2015) that *Tooley* does not apply to the type of claims the Plaintiff asserts.

In *Tooley*, the Delaware Supreme Court established a two-part analysis to separate individual claims from derivative claims. *See* 845 A.2d at 1035. That analysis proceeds by asking first who suffered the alleged harm, and second who would receive the benefit of the recovery or remedy. *Id.* The Delaware Supreme Court explained that "[t]he stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *See id.* at 1039.

Brightstar Asia seizes on this language and argues that because the evidence the Plaintiff will adduce in support of his enumerated claims would also support a claim of harm to Harvestar, the Plaintiff's claims must be derivative per *Tooley*. Brightstar Asia's argument is wrongheaded.

The United States Court of Appeals for the Second Circuit previously certified a question to the Delaware Supreme Court concerning the application of *Tooley* to certain claims. *See* **NAF Holdings, LLC v. Li & Fung (Trading) Ltd.**, 772 F.3d 740, 743 (2d Cir. 2014), *certified question answered*, 118 A.3d 175 (Del. 2015). The Delaware Supreme Court responded by clarifying that

> [*Tooley]* and its progeny deal with the distinct question of when a cause of action for breach of fiduciary duty or to enforce the rights belonging to the corporation itself must be asserted derivatively. That body of law has no bearing on whether a party with its own rights as a signatory to a commercial contract may sue directly to enforce those rights.

*See NAF Holdings, LLC*, 118 A.3d at 176. The Delaware Supreme Court further clarified that "a party to a commercial contract may sue to enforce its contractual rights directly, without proceeding by way of a derivative action." *Id.* at 179.

Accordingly, *Tooley*'s two-part analysis must be preceded by an important question: "does the plaintiff seek to bring a claim belonging to [him] personally or one belonging to the corporation itself?" *See Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1126–27 (Del. 2016). Because the Plaintiff brings claims based on Brightstar Asia's breach of the Shareholders Agreement and breach of fiduciary duties owed by Brightstar Asia to the Plaintiff, the Plaintiff must assert those claims directly.

### 2.1.3.   The Plaintiff Has Alleged an Actual and Concrete Injury.

Brightstar Asia further asserts that the Plaintiff lacks standing because he has not alleged an injury-in-fact and because he asserts the legal rights of third parties. (Dkt. 22 at 11.) Brightstar Asia's arguments center on two points: (1) the Shareholders Agreement contemplates the "Executives" (a term defined as the Plaintiff and Omar Elmi) exercising their "put" and "call" rights jointly; and (2) the Executives did not invoke their "put" and "call" rights. (*Id.* at 11) In making this argument, Brightstar simply ignores Plaintiff's allegations.

The Plaintiff, both in the initial *pro se* Complaint and in the First Amended Complaint, has alleged at least three distinct actual injuries. Plaintiff has alleged that (a) Brightstar has violated—and continues to violate—the prohibition in Paragraph 14 of the Shareholders Agreement concerning conflict transactions. (Dkt. 24 at 9, 10.), entitling Plaintiff to obtain specific performance and other equitable

relief under Paragraph 24 of the Agreement; (b) Brightstar's breach of Paragraph 14 has damaged the value of Plaintiff's 24.5% minority ownership interest in Harvestar (*Id*. at 9.); and (c) Brightstar's breach has damaged the otherwise valuable "put" and "call" rights Plaintiff owns pursuant to Paragraphs 10 and 11 of the Shareholders Agreement. (*Id*.) Brightstar ignores Plaintiff's allegations concerning injuries (a) and (b), both of which undeniably allege actual injury, and focuses exclusively upon injury (c), damage to Plaintiff's "put" and "call" rights.  But even as to this third category of damages Brightstar's arguments are baseless.

A plaintiff has standing when (1) he has suffered an injury in fact, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; and (2) there is a causal connection between the plaintiff's injury and the defendant's conduct such that the injury is fairly traceable to the challenged action of the defendant and not the result of the independent action of a third party not before the court. *See **Lujan***, 504 U.S. at 560–61, 112 S. Ct. at 2136 (citations omitted); ***Lexmark Int'l, Inc. v. Static Control Components, Inc.***, 572 U.S. 118, 125, 134 S. Ct. 1377, 1386, 188 L. Ed. 2d 392 (2014) ("A plaintiff has standing when he has suffered or is imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.")

As alleged in the Complaint, Brightstar Asia caused Harvestar to purchase millions of dollars in unnecessary parts, labor, and equipment while both restricting the volume of mobile devices provided to Harvester and while placing millions of

dollars in intercompany loans and other obligations on Harvestar's balance sheet. (*See* Dkt. 1, ¶¶ 21–24.) Brightstar Asia's calculated actions destroyed the Plaintiff's minority interest and rendered the Plaintiff's "put" and "call" rights—his means of escape from Brightstar Asia's deleterious behavior—worthless.

The harm to the Plaintiff, and his resulting causes of action, therefore, is not hypothetical, contingent, or abstract. His causes of action seek redress for a harm Brightstar Asia already inflicted on him. Brightstar Asia's taunting that the Plaintiff must first "put" his minority share to Brightstar Asia for zero dollars ($0) before asserting his causes of actions misses the mark. The Plaintiff has suffered real harm and, accordingly, has standing.

### 2.2.    Plaintiff's Claims Are Ripe.

Brightstar Asia argues that even if the Plaintiff has standing, his claims are not ripe. This, of course, puts the cart before the horse. *See **Ross v. Bank of Am., N.A. (USA)***, 524 F.3d 217, 226 (2d Cir.2008) (a plaintiff's claims are ripe when he has standing). Nevertheless, Brightstar Asia offers that the Plaintiff's claims are contingent because the Executives must exercise their put rights jointly, which they have not done, and because even if the Executives chose to exercise their "put" and "call" rights jointly, they could not do so now. Brightstar Asia's argument betrays a misunderstanding—or a misrepresentation—of the Plaintiff's claim and the law that governs it.

To be constitutionally ripe and therefore justiciable, a cause of action must present "a real, substantial controversy, not a mere hypothetical question" or a claim dependent on "contingent future events that may not occur as anticipated, or indeed

may not occur at all." *Id.* (quoting ***Thomas v. Union Carbide Agric. Prods. Co.***, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Constitutional ripeness, therefore, overlaps with the standing requirement. Indeed, the ripeness test is the application of the first *Lujan* factor requiring the plaintiff's injury in fact to be actual or imminent rather than conjectural or hypothetical. *See id.* at 688. Thus, where a plaintiff has standing, his claims are ripe. [1] *See **Ross***, 524 F.3d 217, 226 (2d Cir.2008).

Here, the Plaintiff does not seek to recover in advance the damages he will sustain upon the exercise of his "put" or "call" rights. He seeks to recover the damage *already done* to his "put" and "call" rights by Brightstar Asia's conduct. Section 10 of the Shareholders Agreement established the Plaintiff's "put" right. Section 10(f) provided the formula the parties would use to determine the sale price of Plaintiff's "put" shares. That sale price increased—or more importantly decreased—based on Harvestar's EBIT, the volume of mobile devices provided to Harvestar, and Harvestar's indebtedness. (*See* Dkt. 1-1.) Section 11 of the Shareholders Agreement established the Plaintiff's call right. Section 11(c) provided the formula the parties would use to determine the sale price of Brightstar Asia's "call" shares. That price

---

[1] In addition to constitutional ripeness, courts follow certain standards of prudential ripeness. When the court determines that a case will be better decided later and that the parties' rights will not be undermined by the delay, the court may decline to entertain the case as not yet prudentially ripe. ***Simmonds v. I.N.S.***, 326 F.3d 351, 357 (2d Cir. 2003). Such a determination does not mean that the case is not a real or concrete dispute affecting cognizable current concerns of the parties, but only that the delay will enhance the accuracy of the court's decision and prevent the court from becoming embroiled in adjudications that may later turn out to be unnecessary. *See id.* Courts proceed with a two-step inquiry before invoking prudential ripeness to delay adjudication of a case: (1) are the issues fit for judicial decision and not contingent on future events; and (2) will the withholding of court consideration impose some hardship on the parties. *See **Nat'l Org. for Marriage, Inc.***, 714 F.3d at 691.

would be the greater of Harvestar's fair market value or the total amount of cash and other property invested by Brightstar Asia in Harvestar less a fixed sum. (*Id.*) Because of Brightstar Asia's conduct, Plaintiff's "Put Shares" have (not will have or might have) no value and Brightstar's "Executive Call Shares" have (not will have or might have) a price greatly exceeding their value.

Moreover, the Plaintiff's causes of action do not raise prudential ripeness concerns. Brightstar Asia's conduct and the Plaintiff's resulting harm are matters of historical fact. Any delay will not enhance the accuracy of the Court's decision, but that delay would sentence the Plaintiff to a longer term as Brightstar Asia's oppressed minority shareholder. The Plaintiff's claims are ripe, and there are no prudential reasons to postpone the adjudication of his claims.

The Plaintiff's satisfaction of the ripeness test translates to a satisfaction of the first *Lujan* factor. *See **Nat'l Org. for Marriage, Inc.**,* 714 F.3d at 688. The Plaintiff has suffered an injury in fact—the destruction of both the value of his minority interest and the value of his "put" and "call" rights—that is actual and concrete. The Plaintiff satisfies the second *Lujan* factor because his injury is traceable to Brightstar Asia's actions. Additionally, no concern of prudential standing bars the Plaintiff's claims. Though Brightstar Asia endeavors to obscure the Plaintiff's status as one of the Executives, that obfuscation is of little import. The Plaintiff indisputably possessed "put" and "call" rights pursuant to the Shareholder's Agreement, and Brightstar Asia's actions indisputably destroyed the value of those rights prior to the Plaintiff's exercise of the same.

### 3.  This Court Should Deny Brightstar Asia's Rule 12(b)(6) Motion.

Brightstar Asia asserts a conglomeration of arguments that the Complaint fails to state a claim for which relief can be granted. As stated *supra*, Section 1, these arguments are now moot. Nonetheless, the Plaintiff addresses them in turn.

### 3.1. Rule 12(b)(6) Standard.

A Rule 12(b)(6) motion challenges the "legal feasibility" of a complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Plaintiff must plead a facially plausible claim that enables the reasonable inference that the defendant is liable for the misconduct alleged—not merely the "sheer possibility that a defendant has acted unlawfully"—and that raises the plaintiff's right to relief above the speculative level. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1959.

The court, after rejecting conclusory allegations not entitled to the assumption of truth, considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950. In deciding a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the non-moving party's favor. *See id.*

### 3.2. The "Common Grounds" Brightstar Asia Asserts Do Not Bar Plaintiff's Claims.

#### 3.2.1. Brighstar Asia's Destruction of the Value of Plaintiff's "Put" and "Call" Rights Constitutes Legally Actionable Damages.

Brightstar Asia recasts its standing arguments to argue the Plaintiff has not suffered any damages because he has no individual "put" and "call" rights and because he has not exercised those rights. Brightstar Asia's arguments fail here for the same reasons explained *supra*, Section 2.1.3.

#### 3.2.2. The Parol Evidence Rule Does Not Bar the Plaintiff's Claims.

Brightstar Asia contends that the parol evidence rule prohibits the Plaintiff from inserting a new contractual term requiring Brightstar Asia to provide a specific number of mobile devices to Harvestar and then declaring a breach of that new term. The Plaintiff, of course, does not contend that such a term exists in the Shareholders Agreement (though Section 11 explicitly references the 500,000 number). Rather, the Plaintiff contends Brightstar Asia breached its implied covenant of good faith and fair dealing by, *inter alia*, deliberately restricting the flow of mobile devices to Harvestar.

As Delaware courts have noted, the covenant of good faith and fair dealing is implied into every contract in Delaware, such that the presence of an integration clause does not preempt a claim based on the implied covenant. *See Alltrista Plastics, LLC v. Rockline Indus., Inc.*, No. CV N12C-09-094 JTV, 2013 WL 5210255 at *7 n.33 (Del. Super. Ct. Sept. 4, 2013); *Fitzgerald v. Cantor*, No. C.A. 16297-NC, 1998 WL 842316 at *1 n.5 (Del. Ch. Nov. 10, 1998). Rather, the Court must engage in the fact-intensive determination of whether a party acted arbitrarily

and unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected. *See **Nemec v. Shrader***, 991 A.2d 1120, 1126 (Del. 2010); ***Dunlap v. State Farm Fire & Cas. Co.***, 878 A.2d 434, 442 (Del. 2005) ("[P]arties are liable for breaching the covenant when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms.")

The parol evidence rule, therefore, prevents the breach of contract claim invented by Brightstar Asia and attributed to the Plaintiff. It does not prevent the claim for breach of the implied covenant of good faith and fair dealing that the Plaintiff actually makes.

### 3.3. The Plaintiff Has Stated a Claim for Breach of Fiduciary Duty.

Brightstar Asia argues Plaintiff's breach of fiduciary duty claim is duplicative of his claim for breach of the implied covenant of good faith and fair dealing and that Section 29 of the Shareholders Agreement disclaims Brightstar Asia's fiduciary duties as the majority shareholder of Harvestar. However, the Plaintiff's breach of fiduciary claim is independently viable, and Delaware law does not permit Brightstar Asia to disclaim its fiduciary duties to the Plaintiff.

### 3.3.1.  The Plaintiff's Breach of Fiduciary Claim Is Not Duplicative.

On the heels of arguing that the Plaintiff has no claim for breach of the implied covenant of good faith and fair dealing, Brightstar Asia argues the Plaintiff's breach of fiduciary duty claim must be dismissed because the Plaintiff has a claim for breach of the implied covenant of good faith and fair dealing. Brightstar is wrong because the Plaintiff's claims arise from different sources.

As identified by the court in **Gale v. Bershad**, "[t]he issue is whether the duty sought to be enforced arises out of the parties' contractual, as opposed to their fiduciary, relationship." *See* No. CIV. A. 15714, 1998 WL 118022 at *5 (Del. Ch. Mar. 4, 1998); *see also* **Blue Chip Capital Fund II Ltd. P'ship v. Tubergen**, 906 A.2d 827, 833 (Del. Ch. 2006) (if the dispute relates to rights and obligations expressly provided by contract, fiduciary duty claims are superfluous); **Solow v. Aspect Res., LLC**, No. CIV.A. 20397, 2004 WL 2694916 at *4 (Del. Ch. Oct. 19, 2004) ("[I]f the duty sought to be enforced arises from the parties' contractual relationship, a contractual claim will preclude a fiduciary claim.")

Thus, where a defendant's fiduciary obligations arise from an extra-contractual source, the plaintiff can assert claims both for breach of the implied covenant of good faith and fair dealing and for breach of fiduciary duty, even when those claims are supported by the same conduct. *See* **RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'ship, HPA, Inc.**, No. 16873, 1999 WL 550350, at *10 (Del. Ch. July 16, 1999) ("[The Defendant] contends that these [fiduciary duty] claims are insufficient because the plaintiff is 'bootstrapping' what are really breach of contract claims into fiduciary duty claims, and also because the claims are derivative. I find these arguments unpersuasive. Conduct by an entity that occupies a fiduciary position (here, [the defendant]) may form the basis of both a contract and a breach of fiduciary duty claim."); *see also* **Cantor Fitzgerald, L.P. v. Cantor**, 724 A.2d 571, 582 (Del. Ch. 1998) (permitting both a breach of contract and breach of fiduciary duty claims where the breach of fiduciary duty claim had a separate origin from the breach

of contract claim); *Universal Studios Inc. v. Viacom Inc.*, 705 A.2d 579, 593–94 (Del. Ch. 1997) (permitting both a breach of contract and breach of fiduciary duty claim where the defendant's fiduciary obligations arose from the relationship between the parties).

Here, Brightstar Asia's fiduciary duties to the Plaintiff arise not by contract, but from Brightstar Asia's status as Harvestar's majority shareholder. *See Ivanhoe Partners v. Newmont Min. Corp.*, 535 A.2d 1334, 1344 (Del. 1987) (citing *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 958 (Del. 1985)) (under Delaware law a shareholder owes a fiduciary duty if it owns a majority interest in or exercises control over the business affairs of the corporation.) Accordingly, the Plaintiff's breach of fiduciary duty claim does not arise from the parties' contractual relationship, but from their fiduciary relationship. That claim is therefore separate from and independent of his claim for breach of the implied covenant of good faith and fair dealing.

Notwithstanding the foregoing, the Plaintiff agrees he will not obtain a double recovery for the same conduct, once for Brightstar Asia's breach of its fiduciary duties and again for Brightstar Asia's breach of the implied covenant. Those claims, however, are substantively viable independent of the other, and so appropriately asserted alternatively. *See* Fed. R. Civ. P. 8(d)(2). The Complaint, therefore, successfully states claims for both breach of the implied covenant and breach of fiduciary duty.

### 3.3.2. Section 29 of the Shareholders Agreement Does Not Lawfully Disclaim Brightstar's Fiduciary Duties.

Brightstar Asia suggests that Section 29(a) of the Shareholders Agreement absolves Brightstar Asia of any fiduciary duties it owed to the Plaintiff. Brightstar Asia, however, ignores the first clause of Section 29(a): "To the maximum extent permitted by applicable law." Because Delaware law does not permit a majority shareholder to wash its hands of its fiduciary duties to a minority shareholder, Brightstar Asia's motion must be denied.

Under Delaware law, a shareholder owes a fiduciary duty to other shareholders when it owns a majority interest or exercises control over the business affairs of the corporation. *See **Ivanhoe Partners***, 535 A.2d at 1344 (citing ***Unocal Corp.***, 493 A.2d at 958); ***eBay Domestic Holdings, Inc. v. Newmark***, 16 A.3d 1, 26 (Del. Ch. 2010) ("[C]ontrolling stockholders are fiduciaries of their corporations minority stockholders.") The court in *Allied Chemical and Dye Corporation v. Steel & Tube Co. of America* explained the fundamental concerns of justice that give rise to a majority shareholder's fiduciary duties:

> When, in the conduct of the corporate business, a majority of the voting power in the corporation join hands in imposing its policy upon all, it is beyond all reason and contrary, it seems to me, to the plainest dictates of what is just and right, to take any view other than that they are to be regarded as having placed upon themselves the same sort of fiduciary character which the law impresses upon the directors in their relation to all the stockholders. Ordinarily the directors speak for and determine the policy of the corporation. When the majority of stockholders do this, they are, for the moment, the corporation. Unless the majority in such case are to be regarded as owing a duty to the minority such as is owed by the directors to all, then the minority are in a situation that exposes them to the grossest frauds and subjects them to most outrageous wrongs.

14 Del. Ch. 1, 120 A. 486, 491 (1923). Accordingly, as Brightstar Asia controlled Harvestar, Brightstar Asia owed the Plaintiff a fiduciary duty not "to use [its] power to advantage [itself] at the expense of the minority." *Id.*

Brightstar Asia may not disclaim that duty under Delaware law. Indeed, where Delaware law permits such a disclaimer, it expressly provides for it. Delaware's Limited Liability Company allows members or managers of an LLC to expand, restrict, or eliminate the duties they owe to other members or managers. *See* 6 *Del. C.* § 18-1101(c). Likewise, Delaware law permits partners in a limited partnership to do the same. *See* 6 *Del. C.* § 17-1101(d). Corporations, on the other hand, may only exculpate their directors from liability from breach of the duty of care. *See* 8 *Del. C.* § 102(b)(7). They cannot exculpate their directors from liability for breaching other duties, and they cannot remove fiduciary duties in the first instance. *Id.*

Consequently, because common law equitable fiduciary duties apply by default in situations where one person reposes special trust and reliance on the judgment of another, and because no Delaware statute permits a majority stockholder to disclaim its fiduciary duties, Section 29(a) does not remove Brightstar Asia's fiduciary duties to the Plaintiff. *See **Auriga Capital Corp. v. Gatz Properties***, 40 A.3d 839, 849 (Del. Ch.), *judgment entered sub nom. Auriga Capital Corp. v. Gatz Properties, LLC* (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012) (the Delaware General Corporation Law must be read in concert with equitable fiduciary duties); ***Feeley v. NHAOCG, LLC***, 62 A.3d 649, 661 (Del. Ch. 2012) (the rules of law and equity apply fiduciary duties to LLC managers and members by default).

### 3.4. Plaintiff Has Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

#### 3.4.1. Section 29(a) Does Not Make a Breach of the Express Terms of the Shareholders Agreement a Prerequisite to a Claim for Breach of the Implied Covenant.

Brightstar Asia argues that Section 29(a) also impermissibly disclaims the implied covenant of good faith and fair dealing. Section 29(a) provides generally that if a party acts in accordance with the Shareholders Agreement, that party shall be deemed to have acted in accordance with the implied covenant. Brightstar Asia reads Section 29(a) to mean that the Plaintiff cannot show a breach of the implied covenant without first showing a breach of the express terms of the Shareholders Agreement.

Notwithstanding the vague meaning of acting "in accordance with" the Shareholders Agreement, Section 29(a)'s provision operates only to the limited extent the Shareholders Agreement prescribes a certain course of conduct, such as in Section 6, concerning drag along sales. Expressed otherwise, the Shareholders Agreement does not sanction Brightstar Asia's conduct (and therefore satisfy the implied covenant) where the Agreement does not explicitly prescribe that conduct.

#### 3.4.2. Even If Brightstar Asia's Interpretation of Section 29(a) Were Correct, Brightstar Asia Breached the Express Terms of the Shareholders Agreement.

Even were Brightstar Asia's interpretation of Section 29(a) correct, Brightstar Asia has committed a breach of the Shareholders Agreement's express terms. Section 14 of the Shareholders Agreement required that any transactions between Harvestar and Brightstar Asia and its affiliates be on terms no less favorable to Harvestar than would be obtainable in a comparable arm's-length transaction. (Dkt. 24-1, § 14).

Brightstar Asia breached Section 14 by forcing Harvestar to repair or refurbish devices for Brightstar Asia's affiliate at a cost $50 per device less than what the affiliate paid an unrelated, third party vendor for the same services.

### 3.4.3. The Plaintiff Properly Asserted His Claim for Brightstar Asia's Breach of the Implied Covenant.

Finally, Brightstar Asia argues that the Plaintiff attempts to abuse the implied covenant of good faith and fair dealing by importing into the Shareholders Agreement a provision requiring Brightstar Asia to provide a certain volume of mobile devices to Harvestar. Brightstar Asia once again misrepresents the Plaintiff's claim. Rather, the Plaintiff alleges that Brightstar Asia deliberately restricted the flow of mobile devise to Harvestar to devalue and destroy the Plaintiff's minority interest and "put" and "call" rights in violation of the implied covenant.

Moreover, Brightstar Asia's assertion that the Plaintiff could have anticipated a decrease in the volume of mobile devices provided to Harvestar is misguided. However easily the parties could have anticipated a decrease in that volume, the Plaintiff could not have anticipated Brightstar Asia's conduct. That Brightstar Asia would not decimate Harvestar's value as a going concern and sabotage Plaintiff's contractual "put" and "call" rights was an expectation so fundamental that the parties did not need to negotiate it. *See **Allied Capital Corp. v. GC-Sun Holdings, L.P.***, 910 A.2d 1020, 1032–33 (Del. Ch. 2006) (the implied covenant analysis should be applied when the contract is silent with respect to the matter at hand and when the court finds that the expectations of the parties were so fundamental that it is clear that they did not feel a need to negotiate about them); ***Renco Grp., Inc. v.***

*MacAndrews AMG Holdings LLC*, No. CV 7668-VCN, 2015 WL 394011 at *7 (Del. Ch. Jan. 29, 2015) (same).

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Brightstar Asia's Motion to Dismiss should be denied. That motion is moot. The Plaintiff has standing to assert his claims. And even the original Complaint successfully asserted causes of action for breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty.

Respectfully submitted,

s/ Eugene N. Bulso, Jr
Eugene N. Bulso, Jr. (BPR No. 12005)
LEADER & BULSO, PLC
414 Union Street, Suite 1740
Nashville, Tennessee 37219
Tel. (615) 780-4100
Fax. (615) 780-4101
gbulso@leaderbulso.com


s/ Sam Della Fera, Jr.
Sam Della Fera, Jr.,
MCMANIMON, SCOTLAND & BAUMANN, LLC
75 Livingston Avenue, Suite 201
Roseland, NJ 07068
Tel. 973-721-5019
sdellafera@msbnj.com

*Attorneys for Tyler Miller*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served via electronic mail on the following:

Peter C. Sales
Frankie N. Spero
Kristina A. Reliford
BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Tel. (615) 252-2365
Fax (615) 252-6365
psales@bradley.com
fspero@bradley.com
kreliford@bradley.com

*Attorneys for Brightstar Asia, Ltd.*

on this 2nd day of October 2020.

s/ Eugene N. Bulso, Jr.
Eugene N. Bulso, Jr.