## IN THE UNITES STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**TYLER MILLER,**

      **Plaintiff,**

v.

**BRIGHTSTAR ASIA, LTD,**

      **Defendant.**

**Case No. 20-cv-4849-GBD-JLC**

---

## RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT

---

Eugene N. Bulso, Jr. (BPR No. 12005)
LEADER & BULSO, PLC
414 Union Street, Suite 1740
Nashville, Tennessee 37219
Tel. (615) 780-4100
Fax. (615) 780-4101
gbulso@leaderbulso.com

Sam Della Fera, Jr.,
MCMANIMON, SCOTLAND & BAUMANN, LLC
75 Livingston Avenue, Suite 201
Roseland, NJ 07068
Tel. 973-721-5019
sdellafera@msbnj.com

*Attorneys for Tyler Miller*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 2

   1.  Formation and Acquisition of Harvestar. ............................................... 2

   2.  The Plaintiff's "Put" and "Call" Rights............................................... 4

   3.  Brightstar Asia Exploits Harvestar at the Expense of the Minority
      Shareholders. ........................................................................................... 5

ARGUMENT ........................................................................................................... 6

   1.  This Court Should Deny Brightstar's Rule 12(b)(1) Motion. ............... 6

      1.1.  Plaintiff Has Standing. ................................................................ 6

         1.1.1.  Motion to Dismiss for Lack of Standing Standard. ........... 6

         1.1.2.  Plaintiff Has Standing to Assert Direct Claims Under *NAF
              Holdings, LLC*; *El Paso* Does Not Apply to the Facts Before
              the Court. ............................................................................ 7

         1.1.3.  Per *NAF Holdings, LLC*, the Plaintiff May Assert His Rights
              Under the Shareholders Agreement Directly. .................. 10

         1.1.4.  There Is No Basis, Legal or Factual, to Apply *El Paso* to the
              Implied Covenant of Good Faith and Fair Dealing. ........ 15

         1.1.5.  The Plaintiff Has Alleged an Actual and Concrete Injury. ............. 15

      1.2.  Plaintiff's Claims Are Ripe. .................................................... 17

   2.  This Court Should Deny Brightstar Asia's Rule 12(b)(6) Motion. .................. 19

      2.1.  Rule 12(b)(6) Standard........................................................... 20

      2.2.  The Plaintiff Has Alleged a Breach of Section 14 of the
         Shareholders Agreement........................................................ 21

      2.3.  Plaintiff Has Stated a Claim for Breach of the Implied
         Covenant of Good Faith and Fair Dealing. ........................... 22

      2.4.  The Plaintiff Has Stated a Claim for Breach of Fiduciary Duty.......... 23

CONCLUSION...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........................................... 20

*Backus v. U3 Advisors, Inc.*,
    No. 1:16-CV-8990-GHW, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017) ................. 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................... 20

*Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*,
    906 A.2d 827 (Del. Ch. 2006) .................................................................................... 24

*Cantor Fitzgerald, L.P. v. Cantor*,
    724 A.2d 571 (Del. Ch. 1998) .................................................................................... 24

*Citigroup Inc. v. AHW Inv. P'ship*,
    140 A.3d 1125 (Del. 2016) ......................................................................................... 14

*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*,
    152 A.3d 1248 (Del. 2016) .............................................................................. 7, 9, 10

*Fisk Ventures, LLC v. Segal*,
    2008 WL 1961156 (Del.Ch. May 7, 2008) ................................................................ 15

*Flores v. Forster & Garbus, LLP*,
    No. 19-CV-4494 (VSB), 2020 WL 5603486 (S.D.N.Y. Sept. 17, 2020) .................... 6

*Gale v. Bershad* ,
    No. CIV. A. 15714, 1998 WL 118022 (Del. Ch. Mar. 4, 1998) ................................ 24

*Gentile v. Rossette*,
    906 A.2d 91 (Del. 2006) ............................................................................................. 10

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016) ....................................................................................... 20

*In Re Terraform Power, Inc. Stockholders Litigation*,
    No. 2019-0757-SG, 2020 WL 6375859 (Del. Ch. Oct. 30, 2020) ............................. 10

*Ivanhoe Partners v. Newmont Min. Corp.*,
    535 A.2d 1334 (Del. 1987) ......................................................................................... 25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014) ........................................ 17

*Lowell v. Lyft, Inc.*,
    352 F. Supp. 3d 248 (S.D.N.Y. 2018) ......................................................................... 7

*Lujan v. Defs. of Wildlife*
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) .................................... 6, 17

*Make the Rd. New York v. Pompeo*,
    No. 19 CIV. 11633 (GBD), 2020 WL 4350731 (S.D.N.Y. July 29, 2020) ................ 7

*Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*,
    No. CV 7668-VCN, 2015 WL 394011 (Del. Ch. Jan. 29, 2015) .............................. 23

*RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'ship, HPA, Inc.*,
    No. 16873, 1999 WL 550350 (Del. Ch. July 16, 1999) ........................................... 24

*Ross v. Bank of Am., N.A. (USA)*,
    524 F.3d 217 (2d Cir.2008) ........................................................................................ 18

*Schiff v. ZM Equity Partners, LLC*,
    No. 19CV4735, 2020 WL 5077712 (S.D.N.Y. Aug. 27, 2020) ............................ 11, 12

*Sehoy Energy LP v. Haven Real Estate Grp., LLC*,
    No. CV 12387-VCG, 2017 WL 1380619 (Del. Ch. Apr. 17, 2017) .......................... 12

*Simmonds v. I.N.S.*,
    326 F.3d 351 (2d Cir. 2003) ....................................................................................... 18

*Solow v. Aspect Res., LLC*,
    No. CIV.A. 20397, 2004 WL 2694916 (Del. Ch. Oct. 19, 2004) .............................. 24

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    587 F. Supp. 2d 594 (S.D.N.Y. 2008) ....................................................................... 11

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) ............................................. 18

*United States v. Vazquez*,
    145 F.3d 74 (2d Cir. 1998) ........................................................................................... 7

*Universal Studios Inc. v. Viacom Inc.*,
    705 A.2d 579 (Del. Ch. 1997) .................................................................................... 24

*Unocal Corp. v. Mesa Petroleum Co.*,
    493 A.2d 946 (Del. 1985) ........................................................................................... 25

***Whitmore v. Arkansas***,
   495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ............................................. 6

**Statutes**

Companies Ordinance, Cap. 622, § 67 (H.K.) ............................................................. 11

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 1, 6

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 20

Fed. R. Civ. P. 8(d)(2) ............................................................................................... 25

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ...................................................................................... 6

# INTRODUCTION

This case arises out of defendant Brightstar Asia, Ltd.'s ("Brightstar Asia") breach of a Shareholders Agreement executed April 9, 2018, and its breach of fiduciary duties owed to Plaintiff, a minority shareholder, under Delaware law. The Plaintiff asserts four claims in the First Amended Complaint: breach of contract: conflict transactions (Count I), breach of contract: specific performance, reformation and disgorgement (Count II), breach of contract: implied covenant of good faith and fair dealing (Count III), and breach of fiduciary duty (Count IV). (Dkt. 24 at 8–14.)

Brightstar Asia seeks dismissal under Rule 12(b)(1) on two grounds: (1) Plaintiff's alleged lack of standing; and (2) lack of ripeness of Plaintiff's claims. The first ground fails because under ***NAF Holdings, LLC v. Li & Fung (Trading) Ltd.***, 118 A.3d 175 (Del. 2015), the Plaintiff's claims for Brightstar Asia's breach of Section 14 of the Shareholders Agreement are direct, not derivative. The second ground fails because the Plaintiff seeks to recover damages and injunctive relief for injuries already sustained.

Brightstar Asia seeks dismissal under Rule 12(b)(6) on three grounds: (1) the Plaintiff fails to allege a breach of Section 14; (2) the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is duplicative of his breach of contract claims and attempts to rewrite the Shareholders Agreement; and (3) the Plaintiff's claim for breach of fiduciary duties is duplicative of his breach of contract claims. The first ground fails because Brightstar Asia misconstrues the Shareholders Agreement. The second and third grounds fail because the Plaintiff can assert his implied covenant and breach of fiduciary duty claims in the alternative, especially where

Brightstar Asia attempts to seed ambiguity about the parties rights and obligations in the Shareholders Agreement.

## FACTUAL BACKGROUND

### 1. Formation and Acquisition of Harvestar.

The Plaintiff, Tyler Miller, and his partner, Omar Elmi formed Harvestar Solutions Limited ("Harvestar") on August 1, 2016. (Dkt. 24, ¶ 9.) Harvestar's business consisted of purchasing used mobile telephones from across the globe and then refurbishing those telephones to "like new" condition before wholesaling the refurbished units to distributors and retailers. (*Id.*, ¶ 10.) Harvestar processed up to 500,000 devices a month, 200,000 of which it refurbished. (Dkt. 24-2.)

Harvestar's success soon attracted the attention of Miami-based Brightstar Corp., one of the largest distributors of mobile telephones in the world. (Dkt. 24, ¶ 11.) Through its "Buy Back & Trade-in" program, Brightstar Corp. purchases millions of used mobile devices that consumers trade-in at Apple and Softbank retail stores when purchasing a new device. (*Id.*, ¶ 12.) Brightstar Corp. then "flips," that is quickly resells, many of these used devices in the Asian market. It also uses third party vendors, such as Harvestar, to repair, refurbish and return to "like new" condition used devices that meet certain "grades." (*Id.*) Brightstar Corp. then wholesales these refurbished devices for re-entry into the consumer market. (*Id.*)

On April 9, 2018, Brightstar Asia, an affiliate of Brightstar Corp., purchased from Plaintiff and Mr. Elmi a 51% controlling stock interest in Harvestar pursuant to the terms of a Stock Purchase Agreement dated April 6, 2018. (*Id.*, ¶ 15.) In connection with the transaction, Harvestar, Brightstar Asia, the Plaintiff, and Mr.

Elmi executed a Shareholders Agreement dated April 9, 2018, defining the rights, duties, and obligations of the parties. (*Id.*, ¶ 17.)

Section 14 of the Shareholders Agreement provides:

> The parties hereto expressly authorize and consent to the involvement of the Investors and their Affiliates in any Other Business; provided, that any transaction between the Company or the Subsidiaries thereof, on the one hand, and an Investor or an Other Business, on the other hand, will be on terms no less favorable to the Company or the Subsidiaries thereof than would be obtainable in a comparable arm's-length transaction.

(Dkt. 24-1 at 16.) Section 14 further provides:

> The parties hereto expressly waive, to the fullest extent permitted by applicable Law, any rights to assert any claim that such involvement contemplated pursuant to this Section breaches any fiduciary or other duty or obligation owed to the Company or any Shareholder or to assert that such involvement constitutes a conflict of interest by such Persons with respect to the Company [or] any Shareholder.

(*Id.* 16–17.) Through Section 14, the parties, including the Plaintiff, authorized Brightstar Asia to engage in "Other Business" and to enter into or cause Brightstar Asia's affiliates to enter into transactions with Harvestar, so long as the terms of the transaction were no less favorable to Harvestar than would be obtainable in an arm's-length transaction. This provision in place, the parties, including the Plaintiff, waived their rights to claim that Brightstar Asia's engagement in "Other Business" constituted a breach of any fiduciary or other duty or a conflict of interest.

Section 14, therefore, protected the minority shareholders from any self-dealing transactions between Brightstar Asia and Harvestar, which Brightstar Asia now controlled.

## 2. The Plaintiff's "Put" and "Call" Rights.

Section 10 of the Shareholders Agreement gave the Plaintiff "put" rights, that is, the right to transfer to Brightstar Asia in a forced sale certain shares controlled by the Plaintiff. (Dkt. 24-1 at 13.) Section 10 further fixed the sale price of the "Put Shares" should the "Executives" (the Plaintiff and Mr. Elmi) exercise their "Put Rights" by way of a multi-variable formula. (*Id.*, § 10(f).) The sale price of the "Put Shares" would be five (5) multiplied by the quotient of Harvestar's earnings before interest and taxes (EBIT) divided by the "Harvestar Volume" (the number of handset units processed by Harvestar) (this quotient not to exceed $10), multiplied by the Harvestar Volume, multiplied by the Ownership Percentage represented by the "Put Shares," from which product Harvestar's indebtedness multiplied by the Ownership Percentage would be subtracted. (*Id.*) Expressed visually, this formula is:

$$"Put\ Share"\ Sales\ Price = \left(5\ x\ \frac{EBIT}{HV}\ x\ HV\ x\ OP\right) - (Debt\ x\ OP)$$

Thus, the value of the "Put Shares" evaporates as Harvestar's EBIT decreases, the volume of devices provided to Harvestar dwindles, and Harvestar's indebtedness increases.

Section 11 of the Shareholders Agreement gave the Plaintiff "call" rights, that is, the right to purchase from Brightstar Asia in a forced sale certain shares controlled by Brightstar Asia. (*Id.* at 15.) Like Section 10, Section 11 also fixes the purchase price of the "Executive Call Shares," calculated as the greater of (1) the fair market value of Harvestar multiplied by the Ownership Percentage and (2) the total amount of cash and other property invested in Harvestar by Brightstar Asia less $2,000,000.

(*Id.*, § 11(c).) Thus, the value of the "Executive Call Shares" increases with Brightstar Asia's additional "investment" in Harvestar, even as Harvestar's fair market value plummets.

### 3. Brightstar Asia Exploits Harvestar at the Expense of the Minority Shareholders.

Upon obtaining majority control of Harvestar, Brightstar Asia engaged in self-dealing transactions to the detriment of the minority shareholders, including Plaintiff. (Dkt. 24, ¶¶ 21-29.) Brightstar, for example, is currently using Harvestar to repair and refurbish up to 8,000 to 10,000 mobile devices per month for its insurance affiliate on terms less favorable to Harvestar than Brightstar could obtain in a comparable arm's-length transaction. (*Id.*, ¶ 27) Brightstar has caused, and continues to cause, Harvestar to repair handsets for its insurance affiliate at a cost $50 per device less than that company was paying to an unrelated, third party vendor prior to entering into the conflict transaction with Harvestar. (*Id.*)

Brightstar has also mismanaged Harvestar for its own benefit. (Dkt. 24, ¶¶ 22-26.) The monthly forecasts Brightstar Asia and its hand-picked directors and officers provided to Harvestar of the number of mobile devices Brightstar would provide Harvestar to be repaired proved to be wildly inaccurate. (*Id.,* ¶ 23) On the basis of those errant forecasts, Brightstar Asia caused Harvestar to purchase millions of dollars in parts and labor to repair mobile devices that never arrived, causing Harvestar to incur substantial financial losses. (*Id.*) Brightstar Asia also caused Harvestar to purchase expensive computer systems and equipment that Harvestar did not need and could not use efficiently. (*Id.,* ¶ 25.) Finally, Brightstar Asia placed

millions of dollars in intercompany loans and other obligations on Harvestar's balance sheet, destroying Harvestar's value. (*Id.,* ¶ 24.)

Brightstar Asia's self-dealing conduct and self-serving management violated the Shareholders Agreement and destroyed the value of Plaintiff's minority interest and his "put" and "call" rights.

## ARGUMENT

### 1. This Court Should Deny Brightstar's Rule 12(b)(1) Motion.

#### 1.1. Plaintiff Has Standing.

Article III of the Constitution of the United States limits the judicial power of federal courts to "Cases" and "Controversies." *See* U.S. Const. art. III, § 2, cl. 1. To implement this limitation, federal courts use the doctrine of standing as a "landmark" to "identify those disputes which are appropriately resolved through the judicial process." *See **Lujan v. Defs. of Wildlife***, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

##### 1.1.1. Motion to Dismiss for Lack of Standing Standard.

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." ***Flores v. Forster & Garbus, LLP***, No. 19-CV-4494 (VSB), 2020 WL 5603486, at *2 (S.D.N.Y. Sept. 17, 2020) (citation omitted). When a defendant brings a facial challenge—a challenge based solely on the allegations of the complaint and the exhibits thereto—to the plaintiff's standing at the pleadings state, the court "accept[s] as true all material allegations of the complaint, and must construe the

complaint in favor of the complaining party." *See **Lowell v. Lyft, Inc.**, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (citing **United States v. Vazquez**, 145 F.3d 74, 81 (2d Cir. 1998); **Make the Rd. New York v. Pompeo**, No. 19 CIV. 11633 (GBD), 2020 WL 4350731 at \*6 (S.D.N.Y. July 29, 2020). The pleadings, which need not be crafted with precise detail, must only allege facts that affirmatively and plausibly suggest the plaintiff has standing to survive a motion to dismiss. *See **Lowell**, 352 F. Supp. 3d at 255 (citations omitted).

### 1.1.2. Plaintiff Has Standing to Assert Direct Claims Under *NAF Holdings, LLC*; *El Paso* Does Not Apply to the Facts Before the Court.

Brightstar Asia originally argued that the Plaintiff's claims were derivative pursuant to **Tooley v. Donaldson, Lufkin & Jenrette, Inc.**, 845 A.2d 1031 (Del. 2004). (*See* Dkt. 19-1 at 7.) The Plaintiff responded, in line with the Delaware Supreme Court's holding in *NAF Holdings, LLC* that "a party to a commercial contract may sue to enforce its contractual rights directly, without proceeding by way of a derivative action." (*See* Dkt. 25 at 10–11.) Brightstar Asia now retorts that the Delaware Supreme Court "expressly addressed and rejected" *NAF Holdings, LLC* in **El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff**, 152 A.3d 1248 (Del. 2016). (*See* Dkt. 31 at 6.)

Brightstar Asia's intent may be to give the Court the impression that *El Paso* overruled *NAF Holdings, LLC*.[1] But *Tooley*, *NAF Holdings, LLC*, and *El Paso* are

---

[1] This misperception can be traced to Brighstar Asia's creation of a strawman to avoid addressing the Plaintiff's argument head on. *Compare* Dkt. 31 at 8 (the Plaintiff "read[s] NAF Holdings, LLC too broadly to suggest that *Tooley* does not apply where the alleged harm involves contract rights" *with* Dkt. 25 at 2 ("*Tooley* has no bearing on cases where, as here, a

consistent with one another, and reflect the Delaware Supreme Court giving effect to the uncontroversial principle that the party who owns a claim may assert it.

As the Plaintiffs previously explained (*see* Dkt. 25 at 9), in *Tooley* the Delaware Supreme Court prescribed a two-part test courts should use to separate direct claims from derivative claims. *See* 845 A.2d at 1035. The test proceeds by first asking who suffered the alleged harm, and second who would receive the benefit of the recovery or remedy. *Id.*

*Tooley* led to confusion. As the Second Circuit recognized, categorically extending the *Tooley* rule to circumstances where a stockholder seeks to enforce a personal contractual right does little to advance the goal of the derivative suit requirement: protecting the separate integrity of the corporation. *See* **NAF Holdings, LLC**, 772 F.3d 740, 746 (2d Cir. 2014) *certified question answered*, 118 A.3d 175 (Del. 2015). The Second Circuit, therefore, certified a question on the matter to the Delaware Supreme Court. *Id.* at 750. The Delaware Supreme Court clarified that "*Tooley* and its progeny do not . . . subject commercial contract actions to a derivative suit requirement." *See* **NAF Holdings, LLC**, 118 A.3d at 179. Indeed, the Delaware Supreme Court reaffirmed the fundamental principle of contract law that the parties to a contract are bound by its terms and have a corresponding right to enforce those terms. *Id.* at 180-81.

In *El Paso*, the Delaware Supreme Court—confronted by what it described as a "troubling case"—addressed the rights of parties to an alternative entity's

---

party seeks to enforce *his own rights* as a signatory to a commercial contract.") (emphasis added).

constitutive agreement to enforce the obligations therein. *See **El Paso***, 152 A.3d at 1258–60. The Delaware Chancery Court had, relying in part on *NAF Holdings, LLC*, recast as direct claims certain claims a limited partner had pleaded and at all relevant times treated as derivative claims. *See id.* at 1255–56. The Delaware Chancery Court did so to avoid the termination of the limited partner's standing following the acquisition of the limited partnership by another entity, as the limited partner had successfully proven $171 million in damages caused by the general partner's breach of the limited partnership agreement at trial. *Id.* The trial court interpreted *NAF Holdings, LLC* to mean that the *Tooley* test "does not apply to contractual rights." *Id.* at 1258.

The Delaware Supreme Court reversed. First, the Delaware Supreme Court clarified that *NAF Holdings, LLC* cannot be read to mean that any claim sounding in contract is direct by default. *Id.* at 1259. Indeed, the Supreme Court noted that such a bright line rule would effectively abrogate *Tooley* with respect to alternative entities, as the partnership or operating agreements that create the entity also establish the rights and duties of the partners. *Id.* at 1260. The trial court, accordingly, erred:

> The trial court treated the governing instrument of the [p]artnership as if it were a separate commercial contract, rather than it being the constitutive contract of the [p]artnership under the [Delaware Revised Uniform Limited Partnership Act] itself. The reality that limited partnership agreements often govern the territory *that in corporate law is covered by equitable principles of fiduciary duties* does not make all provisions of a limited partnership agreement enforceable by a direct claim.

*Id.* (emphasis added). Because the plaintiff sought to enforce a contractual duty owed to the limited partnership, the Delaware Supreme Court applied *Tooley* to determine whether the plaintiff's claim was derivative or dual in nature such that the plaintiff could proceed directly.[2] *Id.* at 1260.

*Tooley*, *NAF Holdings, LLC*, and *El Paso*, therefore, coexist in determining whether a claim is direct or derivative. First, per *NAF Holdings, LLC*, a court must ask whether the plaintiff seeks to enforce his own contractual rights. *El Paso* provides the answer when the contract in question is the constitutive contract of an alternative entity. If, however, the contract is a commercial contract and the plaintiff seeks to enforce his own contractual rights, then the plaintiff's claim is direct as the Delaware Supreme Court held in *NAF Holdings, LLC*.

### 1.1.3. Per *NAF Holdings, LLC*, the Plaintiff May Assert His Rights Under the Shareholders Agreement Directly.

Brightstar Asia combines a distorted interpretation of the Shareholders Agreement with a clearly incorrect reading of *El Paso* to suggest *NAF Holdings, LLC* has no application to this action.[3] Because the Shareholders Agreement is a commercial contract and not the constitutive agreement of Harvestar, and because

---

[2] Delaware courts cite to *El Paso* more for its analysis of dual-natured claims and its limitation of **Gentile v. Rossette**, 906 A.2d 91 (Del. 2006) to its facts than for its clarification of *NAF Holdings, LLC*. *See, e.g.*, **In Re Terraform Power, Inc. Stockholders Litigation**, No. 2019-0757-SG, 2020 WL 6375859, at *15 (Del. Ch. Oct. 30, 2020) (quoting **El Paso**, 152 A.3d at 1264). To assert a dual-natured claim, a plaintiff must show expropriation of economic value coupled with the dilution of voting rights. *Id.* at *16. The Plaintiff does not assert a dual-natured claim here.

[3] Brightstar Asia's mischaracterization of caselaw is thematic. Indeed, Brightstar Asia also misleadingly summarizes **BP1, LLC v. Coventry Real Estate Fund II, LLC**, No. 312579, 2014 WL 4723146 (Mich. Ct. App. Sept. 23, 2014), which involved neither mismanagement nor the devaluation of an existing "put" right.

Brightstar Asia violated the rights of the Plaintiff under Section 14 of the Shareholders Agreement, the Plaintiff has standing to assert his claims directly.

Brightstar Asia's analysis commits several readily apparent blunders. First, to invoke *El Paso*, Brightstar Asia characterizes the Shareholders Agreement as Harvester's "constitutive contract." (*See* Dkt. 31 at 11 n.5.) That is—to put it mildly— an uphill battle. Under the Companies Ordinance of the Hong Kong Special Administrative Region of the People's Republic of China, a private company limited by shares is incorporated by the delivery to the Registrar of Companies the signed articles of the company and an appropriate incorporation form. *See* Companies Ordinance, Cap. 622, § 67 (H.K.). Although the Amended Complaint does not allege the details of Harvestar's incorporation, it does note the Plaintiff and Omar Elmi formed Harvestar on August 1, 2016. (*See* Dkt. 24, ¶ 9.) The April 9, 2018 Shareholders Agreement, therefore, did not form, create, or constitute Harvestar.

Moreover, contrary to Brightstar Asia assertions, the Shareholders Agreement is a commercial contract. *See **Telenor Mobile Commc'ns AS v. Storm LLC***, 587 F. Supp. 2d 594, 606 (S.D.N.Y. 2008), *aff'd*, 351 F. App'x 467 (2d Cir. 2009) ("Contractual arrangements, such as shareholder agreements, employment contracts, or agency or other commercial contracts, can allow one entity to wield significant power over another.") The Delaware Supreme Court's decision in *El Paso*, therefore, is inapplicable to the facts before the Court.[4] Rather, this Court must determine, as

---

[4] Brightstar Asia points to ***Backus v. U3 Advisors, Inc.***, No. 1:16-CV-8990-GHW, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017) and ***Schiff v. ZM Equity Partners, LLC***, No. 19CV4735, 2020 WL 5077712 (S.D.N.Y. Aug. 27, 2020) to support its contention that *El Paso* applies here. But *Schiff* applied *El Paso* to a limited liability company agreement. *See* 2020 WL

directed by *NAF Holdings, LLC*, whether the Plaintiff asserts rights that belong to him under the Shareholders Agreement.

The Plaintiff plainly does so. In Section 14 of the Shareholder Agreement, the parties authorized Brightstar Asia to own and operate other entities engaged in "the business of the Company [Harvestar]." (*See* Dkt. 24-1 at 16.) Section 14 then provides:

> The *parties hereto* [Brightstar Asia, the Plaintiff, Omar Elmi, and Harvestar] expressly authorize and consent to the involvement of the Investors [Brightstar Asia] and their Affiliates in any Other Business; provided, that any transactions between the Company [Harvestar] or the Subsidiaries thereof, on the one hand, and an Investor or an Other Business, on the other hand, will be on terms no less favorable to the Company or the Subsidiaries thereof than would be obtainable in a comparable arm's-length transaction.

(*Id.* (emphasis added).) Section 14 also includes a waiver:

> The *parties hereto* expressly waive, to the fullest extent permitted by applicable Law, any rights to assert any claim that such involvement contemplated pursuant to this Section breaches any fiduciary duty or other duty or obligation owed to the Company or any *Shareholder* or to assert such involvement constitutes a conflict of interest by such Persons with respect to the Company [or] any *Shareholder*.

---

5077712 at *1. While *Backus* did apply *El Paso* to a corporation, it appears to be an anomaly. No Delaware court has applied *El Paso* in the corporate context or to a shareholder agreement, and Delaware courts have only twice applied *El Paso* to alternative entities. *See, e.g.*, *Schiff*; 2020 WL 5077712; ***Sehoy Energy LP v. Haven Real Estate Grp., LLC***, No. CV 12387-VCG, 2017 WL 1380619 (Del. Ch. Apr. 17, 2017). The absence of courts applying *El Paso* as Brightstar Asia advocates here stands to reason. If when applying *NAF Holdings, LLC* the court determines the plaintiff seeks to assert non-dual-natured claims belonging to the corporation, the outcome of the *Tooley* test is inevitable and its application unnecessary. A plaintiff cannot prevail on a claim for breach of a contractual obligation owed to the corporation while simultaneously proving that the harm and remedy originating from that breach accrue to the plaintiff independent of any harm to the corporation.

(*Id.* 16–17 (emphasis added).) Clearly, the Plaintiff—as one of the parties—extended certain benefits to Brightstar Asia while also retaining rights limiting Brightstar Asia's exercise of those benefits.

Brightstar Asia, however, pushes a cockeyed interpretation of Section 14 to excise the Plaintiff therefrom. That interpretation is scattershot and ultimately self-contradictory. Indeed, according to Brightstar Asia, Section 14 "is for the benefit of Brightstar Asia" (Dkt. 31 at 10) yet creates contractual obligations that only favor Harvestar (Dkt. 31 at 11–12) but does not actually create those contractual obligations. (*See* Dkt. 31 at 11 n.6). Brightstar Asia forces this interpretation to argue that the Plaintiff is irrelevant in so far as Section 14 is concerned.

Except as to the waiver provision. In Section 14, the parties—now inclusive of the Plaintiff—waived their rights to assert breach of fiduciary duty claims or conflict of interest claims subject to a single "exception" (*see* Dkt. 31 at 10) that is not an exception and that, regardless, Brightstar Asia does not feel obligated to observe. (*See* Dkt. 31 at 11 n.6). But Brightstar Asia cannot explain how the Plaintiff can waive his rights to assert claims Section 14 supposedly does not give him.

Thus, in Brightstar Asia's alternate reality, Section 14 of the Shareholders Agreement does not impose any obligations on Brightstar Asia, those non-existent obligations benefit only Harvestar, and the Plaintiff cannot sue to enforce the non-obligations owed to Harvestar because he waived his rights to claims he did not have.

Brightstar Asia's interpretation of Section 14 is difficult to square with the words of Section 14. Indeed, in Section 14 the parties permitted Brightstar Asia to

participate in businesses that compete with Harvestar. But the Plaintiff and the other parties only authorized and consented to certain transactions vis-à-vis Harvestar. Brightstar Asia frames this authorization as an "exception," and in doing so mischaracterizes as an exception to the rule the rule itself.

The question naturally follows that if the Plaintiff and the other parties only authorized and consented to certain transactions, and if Brightstar Asia engaged in transactions that were not authorized and to which the parties did not consent, who may enforce Section 14? The plain answer is the Plaintiff and the other parties.[5] The Plaintiff, therefore, correctly asserts a claim for breach of the Shareholders Agreement based on Brightstar Asia acting in direct violation of the authorization and consent given to it by the Plaintiff and the other parties. (*See* Dkt. 24 ¶¶ 30–45.) Under *NAF Holdings, LLC*, the Plaintiff may enforce his contractual rights directly.[6]

---

[5] The Plaintiff has a direct claim against Brightstar Asia for breach of Section 14, as does Harvestar. *See* ***NAF Holdings, LLC***, 118 A.3d at 180–81 ("It is a fundamental principle of contract law that the parties to a contract are bound by its terms, and have a corresponding right to enforce them.") The Plaintiff could assert its claim directly and Harvester's derivatively, but has not done so here.

[6] As discussed *infra*, Section 2.4, Count IV of the Amended Complaint asserts a claim for breach of fiduciary duties Brightstar Asia owes directly to the Plaintiff under Delaware law. Because those claims are not fiduciary duty claims belonging to the corporation, the Plaintiff may assert Count IV directly. *See* ***Citigroup Inc. v. AHW Inv. P'ship***, 140 A.3d 1125, 1127 (Del. 2016) ("Before evaluating a claim under *Tooley*, 'a more important initial question has to be answered: does the plaintiff seek to bring a claim belonging to her personally or one belonging to the corporation itself?'").

### 1.1.4. There Is No Basis, Legal or Factual, to Apply *El Paso* to the Implied Covenant of Good Faith and Fair Dealing.

Count III of the Amended Complaint asserts a cause of action for breach of the implied duty of good faith and fair dealing, premised on Brightstar Asia conflict transactions and its suppression of the Harvestar Volume.

The Plaintiff contends Section 14 expressly prohibits the conflict transactions in which Brightstar Asia engaged. If the Plaintiff is correct, then the implied covenant of good faith and fair dealing is inapplicable. *See* ***Fisk Ventures, LLC v. Segal***, 2008 WL 1961156, at *10 (Del.Ch. May 7, 2008) ("[B]ecause the implied covenant is, by definition, implied, and because it protects the spirit of the agreement rather than the form, it cannot be invoked where the contract itself expressly covers the subject at issue."). However, to the extent the Shareholders Agreement does not expressly prohibit the conflict transactions in which Brightstar Asia engaged here—a position Brightstar Asia advances here—the implied covenant should fill the gap.

Brightstar Asia, without any legal support, urges the Court to apply *El Paso* to the covenant of good faith and fair dealing. To do so, the Court would need to prejudge this case based solely on the Amended Complaint and determine that any application of the implied covenant the Court might make would only affect the rights of Harvestar. The Court should decline Brightstar Asia's invitation to apply an unsupported legal theory to an incomplete factual record.

### 1.1.5. The Plaintiff Has Alleged an Actual and Concrete Injury.

Brightstar Asia contends the Plaintiff lacks standing because he has not alleged an injury-in-fact and because he asserts the legal rights of third parties. (Dkt.

31 at 17.) Brightstar Asia's arguments center on two points: (1) the Shareholders Agreement contemplates the "Executives" (a term defined as the Plaintiff and Omar Elmi) exercising their "put" and "call" rights jointly; and (2) the Executives did not invoke their "put" and "call" rights.[7] (*Id.* at 18–19.) In making this argument, Brightstar Asia simply ignores Plaintiff's allegations.

In the First Amended Complaint, the Plaintiff has alleged at least three distinct actual injuries. Plaintiff has alleged that (a) Brightstar has violated—and continues to violate—the prohibition in Paragraph 14 of the Shareholders Agreement concerning conflict transactions. (Dkt. 24 at 9, 10.), entitling Plaintiff to obtain specific performance and other equitable relief under Paragraph 24 of the Agreement; (b) Brightstar's breach of Paragraph 14 has damaged the value of Plaintiff's 24.5% minority ownership interest in Harvestar (*Id.* at 9.); and (c) Brightstar's breach has damaged the otherwise valuable "put" and "call" rights Plaintiff owns pursuant to Paragraphs 10 and 11 of the Shareholders Agreement. (*Id.*) Brightstar Asia ignores Plaintiff's allegations concerning injuries (a) and (b), both of which undeniably allege actual injury, and focuses exclusively upon injury (c), damage to Plaintiff's "put" and "call" rights.   But even as to this third category of damages Brightstar Asia's arguments are baseless.

---

[7] Brightstar Asia argues that the injury to the Plaintiff's minority interest and the destruction of his "put" rights are not separate and distinct injuries. Brightstar Asia's argument demonstrates its misunderstanding as to how the Plaintiff calculated his damages. The Plaintiff calculated the damage to his "put" right prior to any adjustment for Harvestar's revenues. Expressed otherwise, adding $10 million to Harvestar's revenue would increase the value of the Plaintiff's "put" rights over and above the $6,125,000.00 he currently seeks.

A plaintiff has standing when (1) he has suffered an injury in fact, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; and (2) there is a causal connection between the plaintiff's injury and the defendant's conduct such that the injury is fairly traceable to the challenged action of the defendant and not the result of the independent action of a third party not before the court. *See Lujan*, 504 U.S. at 560–61, 112 S. Ct. at 2136 (citations omitted); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125, 134 S. Ct. 1377, 1386, 188 L. Ed. 2d 392 (2014).

As alleged in the Amended Complaint, Brightstar Asia caused Harvestar to engage in conflict transactions in violation of Section 14 of the Shareholders Agreement and suppressed the number of mobile devices provided to Harvestar. (*See* Dkt. 24, ¶¶ 33–35, 50–55.) Brightstar Asia's actions destroyed the Plaintiff's minority interest and rendered the Plaintiff's "put" and "call" rights—his means of escape from Brightstar Asia's deleterious behavior—worthless.

The harm to the Plaintiff, and his resulting causes of action, therefore, is not hypothetical, contingent, or abstract. His causes of action seek redress for a harm Brightstar Asia already inflicted on him. Brightstar Asia's taunting that the Plaintiff must first "put" his minority share to Brightstar Asia for zero dollars ($0) before asserting his causes of actions misses the mark. The Plaintiff has suffered real harm and, accordingly, has standing.

### 1.2. Plaintiff's Claims Are Ripe.

Brightstar Asia argues that even if the Plaintiff has standing, his claims are not ripe. This, of course, puts the cart before the horse. *See Ross v. Bank of Am.,*

*N.A. (USA)*, 524 F.3d 217, 226 (2d Cir.2008) (a plaintiff's claims are ripe when he has standing). Nevertheless, Brightstar Asia offers that the Plaintiff's claims are contingent because the Executives must exercise their put rights jointly, which they have not done, and because even if the Executives chose to exercise their "put" and "call" rights jointly, they could not do so now. Brightstar Asia's argument betrays a misunderstanding of the Plaintiff's claim and the law that governs it.

To be constitutionally ripe and therefore justiciable, a cause of action must present "a real, substantial controversy, not a mere hypothetical question" or a claim dependent on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Constitutional ripeness, therefore, overlaps with the standing requirement. Indeed, the ripeness test is the application of the first *Lujan* factor requiring the plaintiff's injury in fact to be actual or imminent rather than conjectural or hypothetical. *See id.* at 688. Thus, where a plaintiff has standing, his claims are ripe. [8] *See Ross*, 524 F.3d 217, 226 (2d Cir.2008).

---

[8] In addition to constitutional ripeness, courts follow certain standards of prudential ripeness. When the court determines that a case will be better decided later and that the parties' rights will not be undermined by the delay, the court may decline to entertain the case as not yet prudentially ripe. *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003). Such a determination does not mean that the case is not a real or concrete dispute affecting cognizable current concerns of the parties, but only that the delay will enhance the accuracy of the court's decision and prevent the court from becoming embroiled in adjudications that may later turn out to be unnecessary. *See id.* Courts proceed with a two-step inquiry before invoking prudential ripeness to delay adjudication of a case: (1) are the issues fit for judicial decision and not contingent on future events; and (2) will the withholding of court consideration impose some hardship on the parties. *See Nat'l Org. for Marriage, Inc.*, 714 F.3d at 691.1

Here, the Plaintiff does not seek to recover in advance the damages he will sustain upon the exercise of his "put" or "call" rights. He seeks to recover the damage *already done* to his "put" and "call" rights by Brightstar Asia's conduct. In fact, Section 10(f) of the Shareholder's Agreement sets the value of the Plaintiff's "put" shares, which increased—or more importantly decreased—based on Harvestar's EBIT, the volume of mobile devices provided to Harvestar, and Harvestar's indebtedness. (*See* Dkt. 24-1 at 13.) That value is currently zero ($0). Section 11(c) sets the value of the Plaintiff's "call" shares, which would be the greater of Harvestar's fair market value or the total amount of cash and other property invested by Brightstar Asia in Harvester less a fixed sum. (*Id.* at 15.) That value currently exceeds $10,000,000.00, far above the value for a company Brightstar Asia has rendered worthless.

Accordingly, Brightstar Asia's conduct (*see* Dkt. 21–28) has—not will have or might have—eliminated the value of the Plaintiff's "put" rights and "call" rights. The Plaintiff's claims present real, not contingent harms. Moreover, the Plaintiff's causes of action do not raise prudential ripeness concerns, as Brightstar Asia's conduct and the Plaintiff's resulting harm are matters of fact and any delay will not enhance the accuracy of the Court's decision.

## 2.  This Court Should Deny Brightstar Asia's Rule 12(b)(6) Motion.

Brightstar Asia moves to dismiss the Amended Complaint for failure to state a claim on three grounds: (1) the Plaintiff fails to allege a breach of Section 14; (2) the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is duplicative of his breach of contract claims and attempts to rewrite the Shareholders

Agreement; and (3) the Plaintiff's claim for breach of fiduciary duties is duplicative of his breach of contract claims. None of these grounds has merit.

### 2.1. Rule 12(b)(6) Standard.

A Rule 12(b)(6) motion challenges the "legal feasibility" of a complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Plaintiff must plead a facially plausible claim that enables the reasonable inference that the defendant is liable for the misconduct alleged—not merely the "sheer possibility that a defendant has acted unlawfully"—and that raises the plaintiff's right to relief above the speculative level. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1959.

The court, after rejecting conclusory allegations not entitled to the assumption of truth, considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950. In deciding a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the non-moving party's favor. *See id.*

## 2.2. The Plaintiff Has Alleged a Breach of Section 14 of the Shareholders Agreement

Brightstar Asia claims that the Amended Complaint fails to allege a breach of Section 14 of the Shareholders Agreement. (Dkt. 31 at 21) According to Brightstar Asia, "Plaintiff does not allege that Brightstar Device is engaged in Harvestar's business," and "[t]hus, the alleged transaction between Harvestar and Brightstar Device is not a transaction between Harvestar, on the one hand, and the 'Investor' or 'Other Business,' on the other hand. Accordingly, Plaintiff has failed to state a claim for breach of Section 14." (*Id.*) Here, as with its argument that the Shareholders Agreement is Harvestar's "constitutive contract," (*supra* at 10 and 11) Brightstar seeks to use disingenuous argument as a substitute for proper advocacy.

Section 14 of the Shareholders Agreement, in words of one syllable, requires that all transactions between Harvestar (or its subsidiaries) and Brightstar Asia (or its affiliates) be arms-length. (Dkt. 24–1 at 16) ("any transactions between [Harvestar], on the one hand, and [Brightstar Asia], on the other hand, will be on terms no less favorable to [Harvestar] than would be obtainable in a comparable arm's-length transaction.") Paragraphs 30 through 36 of the Amended Complaint undeniably allege that Brightstar Asia, or its affiliates, entered into transactions with Harvestar on terms less favorable to Harvestar than could be obtained in an arms-length transaction. (Dkt. 24, ¶¶ 30–36.) Section 14 *nowhere* requires, states, or implies that Brightstar Asia, or its affiliate, must be engaged in Harvestar's business in order for a violation to occur, yet the alleged existence of such a requirement is the sole basis for defendant's motion.   When this Court places Section 14 next to

paragraphs 30 through 36 of the Amended Complaint, it is crystal clear that the Amended Complaint states a claim for breach of Section 14. Brightstar Asia's misguided attempt to engraft onto Section 14 a requirement found nowhere in its text should be rejected for the specious argument that it is.

### 2.3. Plaintiff Has Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Following an apparent change of mind, Brightstar Asia contends that Count III of the Amended Complaint, which asserts a breach of the implied covenant of good faith and fair dealing, fails because Section 14 expressly prohibits conflict transactions. Plaintiff agrees that if Section 14 of the Shareholders Agreement expressly addresses Brightstar Asia's conflict transactions, then the Plaintiff's claim for breach of the implied covenant is superfluous.

However, Brightstar Asia argues elsewhere (*see* Dkt. 31 at 11 n.6) that Section 14 does not impose any obligations on Brightstar in regard to conflict transactions. Brightstar Asia cannot have its cake and eat it too: either Section 14 prohibited Brightstar Asia from engaging in conflict transactions and the Plaintiff has a claim for breach of contract, or a gap exists in the Shareholders Agreement and the Plaintiff has a claim that the implied covenant fills that gap with an obligation preventing Brighstar Asia from engaging in conflict transactions.

Moreover, Counts I and II and Count III are not identical. The Plaintiff's breach of implied covenant claim addresses more than Brightstar Asia's breach of Section 14 and does not merely duplicate Counts I and II. (*See* Dkt. 24 at ¶ 51.)

Brightstar Asia also argues that the Plaintiff attempts to rewrite the Shareholders Agreement by importing into it a provision requiring Brightstar Asia to provide a certain volume of mobile devices to Harvestar. Brightstar Asia misrepresents the Plaintiff's claim. The Plaintiff alleges that Brightstar Asia unfairly and in bad faith restricted the flow of mobile devices to Harvestar to devalue and destroy the Plaintiff's minority interest and "put" and "call" rights in violation of the implied covenant.

Moreover, Brightstar Asia's assertion that the Plaintiff could have anticipated a decrease in the volume of mobile devices misses the mark. The parties no doubt anticipated fluctuations in the Harvester Volume. But the Plaintiff could not have anticipated Brightstar Asia's conduct. That Brightstar Asia would not decimate Harvestar's value as a going concern and sabotage Plaintiff's contractual "put" and "call" rights was an expectation so fundamental that the parties did not need to negotiate it. *See Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032–33 (Del. Ch. 2006); *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, No. CV 7668-VCN, 2015 WL 394011 at *7 (Del. Ch. Jan. 29, 2015).

### 2.4. The Plaintiff Has Stated a Claim for Breach of Fiduciary Duty.

Brightstar Asia argues the Plaintiff's breach of fiduciary duty claim is duplicative of his claim for breach of the implied covenant of good faith and fair dealing. However, the Plaintiff's breach of fiduciary claim arises from a different source and is independently viable.

As identified by the court in *Gale v. Bershad*, "[t]he issue is whether the duty sought to be enforced arises out of the parties' contractual, as opposed to their

fiduciary, relationship." *See* No. CIV. A. 15714, 1998 WL 118022 at \*5 (Del. Ch. Mar.
4, 1998); *see also **Blue Chip Capital Fund II Ltd. P'ship v. Tubergen***, 906 A.2d
827, 833 (Del. Ch. 2006) (if the dispute relates to rights and obligations expressly
provided by contract, fiduciary duty claims are superfluous); ***Solow v. Aspect Res.,
LLC***, No. CIV.A. 20397, 2004 WL 2694916 at \*4 (Del. Ch. Oct. 19, 2004) ("[I]f the duty
sought to be enforced arises from the parties' contractual relationship, a contractual
claim will preclude a fiduciary claim.")

Thus, where a defendant's fiduciary obligations arise from an extra-
contractual source, the plaintiff can assert claims both for breach of the implied
covenant of good faith and fair dealing and for breach of fiduciary duty, even when
those claims are supported by the same conduct. *See **RJ Assocs., Inc. v. Health
Payors' Org. Ltd. P'ship, HPA, Inc.***, No. 16873, 1999 WL 550350, at \*10 (Del. Ch.
July 16, 1999) ("[The Defendant] contends that these [fiduciary duty] claims are
insufficient because the plaintiff is 'bootstrapping' what are really breach of contract
claims into fiduciary duty claims, and also because the claims are derivative. I find
these arguments unpersuasive. Conduct by an entity that occupies a fiduciary
position (here, [the defendant]) may form the basis of both a contract and a breach of
fiduciary duty claim."); *see also **Cantor Fitzgerald, L.P. v. Cantor***, 724 A.2d 571,
582 (Del. Ch. 1998) (permitting both a breach of contract and breach of fiduciary duty
claims where the breach of fiduciary duty claim had a separate origin from the breach
of contract claim); ***Universal Studios Inc. v. Viacom Inc.***, 705 A.2d 579, 593–94
(Del. Ch. 1997) (permitting both a breach of contract and breach of fiduciary duty

claim where the defendant's fiduciary obligations arose from the relationship between the parties).

Here, Brightstar Asia's fiduciary duties to the Plaintiff arise not by contract, but from Brightstar Asia's status as Harvestar's majority shareholder. *See Ivanhoe Partners v. Newmont Min. Corp.*, 535 A.2d 1334, 1344 (Del. 1987) (citing *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 958 (Del. 1985)) (under Delaware law a shareholder owes a fiduciary duty if it owns a majority interest in or exercises control over the business affairs of the corporation.) Accordingly, the Plaintiff's breach of fiduciary duty claim does not arise from the parties' contractual relationship, but from their fiduciary relationship. That claim is therefore separate from and independent of his breach of contract claims and breach of the implied covenant claims.

Notwithstanding the foregoing, the Plaintiff agrees he will not obtain a double recovery for the same conduct, once for Brightstar Asia's breach of its fiduciary duties and again for Brightstar Asia's breach of the Shareholders Agreement. The contract and fiduciary claims, however, are substantively viable independent of the other, and so appropriately asserted alternatively. *See* Fed. R. Civ. P. 8(d)(2). The Complaint, therefore, successfully states claims for breach of contract, breach of the implied covenant, and breach of fiduciary duty.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Brightstar Asia's Motion to Dismiss should be denied.

Respectfully submitted,

s/ Eugene N. Bulso, Jr
Eugene N. Bulso, Jr. (BPR No. 12005)
LEADER & BULSO, PLC
414 Union Street, Suite 1740
Nashville, Tennessee 37219
Tel. (615) 780-4100
Fax. (615) 780-4101
gbulso@leaderbulso.com


s/ Sam Della Fera, Jr.
Sam Della Fera, Jr.,
MCMANIMON, SCOTLAND & BAUMANN, LLC
75 Livingston Avenue, Suite 201
Roseland, NJ 07068
Tel. 973-721-5019
sdellafera@msbnj.com

*Attorneys for Tyler Miller*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via electronic mail on the following:

Peter C. Sales
Frankie N. Spero
Kristina A. Reliford
Bradley Arant Boult Cummings, LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Tel. (615) 252-2365
Fax (615) 252-6365
psales@bradley.com
fspero@bradley.com
kreliford@bradley.com

*Attorneys for Brightstar Asia, Ltd.*

on this 6th day of November 2020.

s/ Eugene N. Bulso, Jr.
Eugene N. Bulso, Jr.