UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TYLER MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 1:20-cv-4849-GBD-JLC |
| | ) | |
| BRIGHTSTAR ASIA, LTD, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Defendant, Brightstar Asia, Ltd. ("Brightstar Asia"), hereby submits this reply in support

of its motion to dismiss Plaintiff's First Amended Complaint ("Amended Complaint").

**A. The Delaware Supreme Court's Holding in *El Paso* Applies to Plaintiff's Contractual Claims in Counts I–III of the Amended Complaint**.

As Brightstar Asia demonstrated in its memorandum of support ("Memorandum"),

pursuant to the holding in *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248 (Del.

2016), because Plaintiff's claims in Counts I–III of the Amended Complaint sound in breach of a

contractual duty owed to Harvestar under the Shareholders Agreement, this Court must apply the

*Tooley* test to determine whether those claims are derivative or direct. (*See* Dkt. 31, pp. 5–12.)

Further, under the *Tooley* test, Plaintiff's causes of action in the Amended Complaint are clearly

derivative claims. (*See id.*, pp. 12–17.)  Realizing that the application of *El Paso* and *Tooley* will

result in the dismissal this action, Plaintiff argues (conveniently) for a narrow reading of *El Paso*,

without any support, and argues that *El Paso* is inapplicable.  As discussed below, *El Paso* governs,

and Plaintiff's claims are derivative under *Tooley* and must be dismissed for lack of standing.

Simply put, *El Paso* dictates when a trial court must analyze a claim sounding in contract

under *Tooley*.  The impetus for the court's ruling in *El Paso* was that the chancery court in that

case had "read[] *NAF Holdings* too broadly" to suggest that *Tooley* does not apply where the

alleged harm involves contract rights.  *El Paso*, 152 A.3d at 1259.  The court disagreed with that reading and clarified that "*NAF Holdings* does not support the proposition that *any* claim sounding in contract is direct by default, irrespective of *Tooley*."  *Id.* (original emphasis).

Instead, the court explained, when a claim "sound[s] in contract", whether or not that claim should be analyzed under the *Tooley* test turns on the contractual duty that was allegedly breached. *Id.* at 1258–59.  The court held that, if the plaintiff's claim "sounds in breach of a contractual duty owed to the [company]," then the court must apply the *Tooley* test to determine whether that claim is derivative or direct.  *Id.* at 1260.  As noted in Brightstar Asia's Memorandum, the Southern District of New York has recognized and applied the *El Paso* rule in analyzing claims sounding in contract.  *See Backus v. U3 Advisors, Inc.*, No. 1:16-cv-8990, 2017 WL 3600430, at *16 (S.D.N.Y. Aug. 18, 2017); *Schiff v. ZM Equity Partners, LLC*, No. 19-cv-4735, 2020 WL 5077712, at *10 (S.D.N.Y. Aug. 27, 2020) (same).

In his response, Plaintiff attempts to limit the holding in *El Paso* by arguing that *El Paso* only applies when the contract at issue is a "constitutive contract" of a company.  (Dkt. 32, p. 10.) Plaintiff then argues that the Shareholders Agreement is not a "constitutive contract," and, therefore, *El Paso* does not apply to Plaintiff's contractual claims under the Shareholders Agreement.  However, this argument clearly misstates the holding in *El Paso*.

While it is true that the court in *El Paso* noted that the contract at issue was the "constitutive contract" of the partnership, the court did not limit its holding to "constitutive contracts" or, for that matter, to a particular type of contract.  Rather, as discussed above, the rule in *El Paso* applies to any claim "sounding in contract" and focuses its inquiry on whether the claim "sounds in breach of a contractual duty owed to the [company]."  *El Paso*, 152 A.3d at 1260.  If the answer to that question is yes, then the court must analyze that contractual claim under the *Tooley* test.

In *Backus*, the court properly applied the rule in *El Paso* to a shareholder's purported direct claim for breach of a stockholder agreement. *Backus*, 2017 WL 3600430, at *16. The court held that, because the shareholder's claim sounded in breach of a contractual duty owed to the company under the stockholder agreement, under the rule in *El Paso*, the court was required to analyze that contractual claim under the *Tooley* test to determine whether it was derivative.[1] *Id.*; *see also Schiff*, 2020 WL 5077712, at *10 (applying the rule in *El Paso* to plaintiff's purported direct contractual claims under the LLC agreement). This Court should follow the proper application of *El Paso* in *Backus* and *Schiff* and reject Plaintiff's baseless invitation to narrow the holding in *El Paso*.

Finally, contrary to Plaintiff's contention, the Shareholders Agreement is the constitutive agreement of Harvestar.[2] In connection with Brightstar Asia's acquisition of a majority stake in Harvestar, Brightstar Asia, Plaintiff, Omar Elmi, and Harvestar entered into the Shareholders Agreement, setting forth, *inter alia*, the governance of Harvestar and the rights and obligations of the shareholders. (Amend. Compl., ¶ 17 (asserting that the "Shareholders Agreement dated April 9, 2018, defin[es] the rights, duties and obligations of the parties")). Delaware courts have recognized agreements of such nature as constitutive. *See, e.g.*, *El Paso*, 152 A.3d at 1260 (limited partnership agreement, which set forth the "rights and duties owed by the partners" and was the "governing instrument" of the company, was the "constitutive contract" of the partnership); *In re Carlisle Etcetera LLC*, 114 A.3d 592, 607 (Del. Ch. 2015) (recognizing the LLC's operating agreement as the "constitutive agreement" of the company). Accordingly, while the applicability of *El Paso* does not turn on whether the contract is a "constitutive contract," the Shareholders

---

[1] *Backus* is not an "anomaly," as Plaintiff conveniently suggests. (Dkt. 32, p. 12 n.4.) Rather, *Backus* represents the proper application of the rule in *El Paso*, which was thereafter properly applied again in *Schiff*.

[2] Plaintiff argues that, "to invoke *El Paso*, Brightstar Asia characterizes the Shareholders Agreement as Harvestar's 'constitutive contract.'" (Dkt. 32, p. 11.) Not true. Brightstar Asia referred to the Shareholders Agreement as a "constitutive contract" of Harvestar (*see* Dkt. 31, p. 11 n.5), but that is not the legal basis on which Brightstar Asia invoked *El Paso*. Brightstar Asia invoked *El Paso* because, under the rule in that case, Plaintiff's claims sound in breach of a contractual duty allegedly owed to Harvestar under the Shareholders Agreement. (*See* Dkt. 31, pp. 9–12.)

Agreement is Harvestar's constitutive agreement.[3]  For the foregoing reasons, *El Paso* applies to

Plaintiff's contractual claims Counts I–III of the Amended Complaint.

## B. Plaintiff's Claims in Counts I–III Sound in Breach of a Contractual Duty Owed to Harvestar, and, thus, this Court Must Apply the *Tooley* Test.

As demonstrated in Brightstar Asia's Memorandum, Plaintiff's contractual claims in

Counts I–III of the Amended Complaint sound in breach of a contractual duty allegedly owed to

Harvestar under the Shareholders Agreement.  (Dkt. 31, pp. 9–12.)  Because Plaintiff erroneously

denies that *El Paso* applies to his contractual claims, he does not address this issue in his response.

Rather, Plaintiff simply argues that his purported claims in Counts I and II for breach of Section

14 of the Shareholders Agreement constitute an assertion of his own contractual rights.  Plaintiff

then sets forth a convoluted argument which discusses portions of Section 14 that are inapplicable,

but does not address the actual language of Section 14 that Plaintiff contends was breached.  This

Court should reject Plaintiff's attempt to deflect from and avoid the clear result under *El Paso*.

As discussed in Brightstar Asia's Memorandum, under Section 14, Brightstar Asia is

permitted to invest in and have outside business relationships "with entities other than the

Company [*i.e.*, Harvestar)]" (referred to as an "Other Business").  Thus, for example, under Section

14, Brightstar Asia is permitted to invest in a competitor of Harvestar.  Also under Section 14,

Harvestar and the other Shareholders waive any claims against Brightstar Asia arising from

Brightstar Asia's involvement with an "Other Business."

---

[3] Plaintiff appears to argue that the Shareholders Agreement is not Harvestar's "constitutive contract" because, when Plaintiff and Mr. Elmi formed Harvestar in August 2016, they filed incorporation forms. (Dkt. 32, p. 11.)  However, as Plaintiff concedes, he does not allege the details of Harvestar's incorporation in the Amended Complaint. (*Id.*); *see Key v. Tanoury*, No. 05 Civ. 10461, 2006 WL 3208548, at *3 (S.D.N.Y. Nov. 3, 2006) (noting that a court "cannot consider . . . additional facts in response to a motion to dismiss since [the plaintiff] did not allege them in his original complaint" (citing *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)).  The reason for that is because, as Plaintiff alleges, in April 2018, Brightstar Asia acquired a majority stake in Harvestar, and the parties executed a new governing instrument (*i.e.*, the Shareholders Agreement), "defining the rights, duties and obligations of the parties." (Amend. Compl., ¶ 17.)  Hence, in the Amended Complaint, Plaintiff treats the Shareholders Agreement as the foundational agreement of Harvestar and centers this lawsuit around that instrument.

In this action, however, Plaintiff is not asserting a claim based upon Brightstar Asia's involvement with an "Other Business" as contemplated under Section 14.   Rather, Plaintiff contends that Brightstar Asia breached the specific clause within Section 14 that pertains only to "transactions between the Company [*i.e.*, Harvestar] . . ., on the one hand, and an Investor [*i.e.*, Brightstar Asia] or an Other Business, on the other hand."   (Amend. Compl., ¶¶ 31, 33, 41, 50.) Under that clause, if the "Investor" or the "Shareholders" cause *Harvestar* (*i.e.*, the "Company") to enter a transaction, then such transaction must be "on terms no less favorable **to the Company [*i.e.*, Harvestar]**" than could have been obtained "in a comparable arm's length transaction."

Under the rule in *El Paso*, the question for this Court is whether Plaintiff's claim for breach of this specific clause in Section 14 "sounds in breach of a contractual duty owed to [Harvestar]." The answer is yes.   Like the contractual duty of the general partner to take action "in the best interests *of the Partnership*" in *El Paso*, and the contractual duty of the shareholders to devote substantially all of their professional time to the company in *Backus*, the alleged contractual duty in Section 14 to enter transactions "on terms no less favorable **to the Company [*i.e.*, Harvestar]**" than could have been obtained "in a comparable arm's length transaction" is owed (if at all) to Harvestar (*i.e.*, the company).

Therefore, under *El Paso*, this Court must analyze Plaintiff's claims in Counts I and II for breach of Section 14 (as well as his implied covenant claim in Count III[4]) under the *Tooley* test to

---

[4] In its Memorandum, Brightstar Asia demonstrated that Plaintiff's purported claim for breach of the implied covenant clearly sounds in breach of a contractual duty owed to Harvestar.   (Dkt. 31, p. 12.)   Plaintiff did not refute this point in his response.   Instead, Plaintiff argues, without citing any authority, that the rule in *El Paso* should not apply to implied covenant claims.   (Dkt. 32, p. 15.)   However, under Delaware law, a claim for breach of the implied covenant sounds in contract. *See, e.g.*, *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 439 & n.1 (Del. Ch. 2012) ("Under Delaware law, an implied covenant claim does not sound in tort.   It is contractual.") (collecting cases), *rev'd on other grounds*, 68 A.3d 665 (Del. 2013). Moreover, courts applying the rule in *El Paso* have applied that rule to claims for breach of the implied covenant. *See, e.g.*, *Sehoy Energy LP v. Haven Real Estate Group, LLC*, No. 12387, 2017 WL 1380619, at *8 (Del. Ch. Apr. 17, 2017) (holding that, based on *El Paso*, "the *Tooley* test [is] applicable to the [p]laintiffs' Contract Claims," including claim for breach of the implied covenant); *Schiff*, 2020 WL 5077712, at *11 (applying *El Paso/Tooley* to claim for breach of the implied covenant).

determine whether those claims are derivative or direct.  Further, for the detailed reasons set forth in Brightstar Asia's Memorandum (which Plaintiff neither responded to nor refuted), Plaintiff claims are clearly derivative under both prongs of *Tooley*.  (*See* Dkt. 31, pp. 12–17.)[5]

### C.  Plaintiff Lacks Article III Standing to Assert his Purported Claims.

Plaintiff argues that he has Article III standing because he has alleged "three distinct actual injuries." (Dkt. 32, p. 21.)  Plaintiff is wrong.  For his first purported injury, Plaintiff argues that he alleged that Brightstar Asia breached Section 14 of the Shareholders Agreement, entitling him to equitable relief.  (*Id.*)  This is not an "injury in fact" suffered *by Plaintiff* for Article III standing.

First, as shown in Brightstar Asia's Memorandum (and below), Plaintiff has not alleged a breach of Section 14. (Dkt. 31, p. 21.)  Next, the equitable relief that Plaintiff requests in Count II of the Amended Complaint—*i.e.*, (a) enjoining Brightstar Asia from causing *Harvestar* to enter certain transactions; (b) reforming a purported agreement between *Harvestar and non-party*, Brightstar Device Protection, LLC ("Brightstar Device"); and (c) ordering Brightstar Asia to disgorge $10 million to *Harvestar*—is solely on behalf of and for the benefit of Harvestar.  Plaintiff is not entitled to individually recover any of this relief.  Thus, Plaintiff has not alleged that *he* suffered an "injury in fact".  Moreover, under the "prudential standing rule," Plaintiff "'cannot rest his claim to relief on the legal rights or interests of third parties'" (*i.e.*, Harvestar).  *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (citation omitted).[6]

---

[5] In Footnote 6 of his response, Plaintiff suggests that *Tooley* is inapplicable to his purported claim in Count IV for breach of fiduciary duty, and he cites *Citigroup Inc. AHW Inv. P'ship*, 140 A.3d 1125, 1127 (Del. 2016) for support. *Citigroup* is clearly inapposite.  In that case, the court held that the plaintiff's "holder claims" for negligent misrepresentation and fraud, which were personal to the stockholder under state law, were direct claims and not subject to *Tooley* analysis.  *Id.* at 1127.  The court made clear that *Tooley* governs whether a claim for fiduciary duty must be asserted derivatively and noted that *Tooley* was inapplicable in that case because the plaintiff's "holder claims" "[were] not fiduciary duty claims or claims otherwise belonging to the corporation."  *Id.*  Here, in Count IV, Plaintiff asserts a fiduciary duty claim, which, as shown in Brightstar Asia's Memorandum, is derived entirely from alleged harm to Harvestar and, thus, is a derivative claim.  (Dkt. 31, pp. 12–17.)  Count IV must be analyzed under the *Tooley* test.

[6] In addition, because Brightstar Device is not a party to this action, Plaintiff's request to reform a contract between Harvestar and Brightstar Device is not redressable by a favorable decision in this action. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) ("the injury must be likely redressable by a favorable decision").

The other two alleged injuries (*i.e.*, harm to Plaintiff's 24.5% stock interest in Harvestar and his purported "put" right) are addressed in Brightstar Asia's Memorandum. (Dkt. 31, pp. 17–19.)  Briefly, because the alleged harm to Plaintiff's 24.5% stock interest is not distinct from the alleged injury to the value of Plaintiff's purported "put" right, the only injury that Plaintiff has alleged in this action is the alleged harm to the value of his purported "put" right.  Plaintiff argues that the alleged harm to his purported "put" right has already been inflicted and, therefore, is not hypothetical or contingent.  (Dkt. 32, p. 17.)  However, Plaintiff does not have an individual "put" right.  Moreover, Plaintiff has not alleged that the Executives jointly exercised the "Put Right," and the Executives are not even entitled to do so again until April 2021.  Thus, Plaintiff has not alleged an "injury in fact," and the Amended Complaint must be dismissed for lack of standing.

### D.  **Plaintiff's Claims are Not Ripe**.

Plaintiff argues that his claims are ripe because he purportedly seeks to recover damage "already done" to the value of his purported "put" right, not damage that he will sustain upon the exercise of his purported "put" right.  (Dkt. 32, p. 19.)  Plaintiff asserts that the "current" value of his purported "put" right is zero dollars ($0).  (*Id.*)  This argument is clearly without merit.

The "sales price for the Put Shares" is not calculated under Section 10(f) of the Shareholders Agreement, and, therefore, is not known or established, until the "Put Right" is exercised by the "Executives" under Section 10(b), if at all.  Plaintiff does not allege that the "Executives" have exercised the "Put Right."  Moreover, the Executives are not entitled to exercise the "Put Right" at the present time and will not be able to do so until April 2021.

Thus, the "Put Right" does not have a current value (*i.e.*, the "sales price for the Put Shares" has not been calculated), and such value will not be known or established until the "Executives" exercise the "Put Right," if at all, in accordance with Section 10 of the Shareholders Agreement. Accordingly, Plaintiff's claims do not present a "real controversy," but rather a "hypothetical

question" that is not ripe for adjudication.

**E.  Plaintiff's Amended Complaint Fails to State a Claim**.

      1.    <u>In Counts I & II, Plaintiff has Not Alleged a Breach of the Subject Clause of Section 14 of the Shareholders Agreement</u>.

Plaintiff's response regarding Counts I and II is based upon an incorrect quote of Section 14.  Specifically, Plaintiff represents that the subject clause of Section 14 applies to transactions between Harvestar and "Brightstar Asia (*<u>or its affiliates</u>*)."  (Dkt. 32, p. 21) (emphasis added).  However, that is not what the clause provides.  Rather, the subject clause only applies to "transactions between the Company [*i.e.*, Harvestar] or the Subsidiaries thereof, on the one hand, and an Investor [*i.e.*, Brightstar Asia] or an Other Business, on the other hand."  Thus, that clause does not apply to transactions between Harvestar and the "affiliates" of the "Investor", as Plaintiff contends.  Plaintiff alleges that Brightstar Asia breached this clause of Section 14 by causing Harvestar to enter into transactions with Brightstar Device.  However, because Brightstar Device is neither an "Investor" nor an "Other Business" under the Shareholders Agreement, Plaintiff has failed to state a claim for breach of the subject clause of Section 14.

      2.    <u>Plaintiff's Implied Covenant Claims Fails as a Matter of Law</u>.

Plaintiff's first ground for breach of the implied covenant (*see* Amend. Compl., ¶ 50) fails as a matter of law because it is improperly duplicative of Plaintiff's breach of contract claim in Count I.  (*See* Dkt. 31, p. 22.)  Plaintiff contends (conveniently) that Brightstar Asia cannot make this argument without also conceding that Plaintiff stated a claim in Count I.  (Dkt. 32, p. 22.)  This is wrong.  Brightstar Asia concedes nothing, and its arguments for dismissal of these claims are not mutually exclusive.  Both claims fail as a matter of law for independent reasons.

Regarding Plaintiff's second ground for breach of the implied covenant (*see* Amend. Compl., ¶ 51), Plaintiff contends that he is not seeking to imply a volume requirement into the

Shareholders Agreement, but rather he is claiming that Brightstar Asia "unfairly and in bad faith restricted the flow of mobile devices to Harvestar." (Dkt. 32, p. 23.)  However, that is not what Plaintiff alleges in the Amended Complaint.  *See Key*, 2006 WL 3208548, at *3 (court cannot consider facts in a response to motion to dismiss not alleged in the complaint).  Rather, Plaintiff's implied covenant claim is premised upon his allegations that Brightstar Corp. or Brightstar Asia did not provide, and, thus, Harvestar did not receive, specific volumes of mobile devices (*i.e.*, 500,000 per year; 40,000 per month) that were "contemplated" and the "basis for" the April 9, 2018 stock purchase transaction.  (*See* Amend. Compl., ¶¶ 17, 19, 20, 23, 51.)  Moreover, Plaintiff's calculation of the value of his purported "put" right (*i.e.*, $6,125,000) is based upon Harvestar not receiving the specific volumes of devices alleged.  (*Id.*, ¶ 54.)  Thus, contrary to Plaintiff's new theory, he is trying to re-write the Shareholders Agreement to require Brightstar Asia not only to provide used mobile devices to Harvestar, but also at certain volumes.  But, these alleged requirements were allegedly "contemplated" and the "basis for" the transaction and could easily have been included in the agreement.  Thus, the second ground fails as a matter of law.

    **3.**    <u>**Plaintiff's Fiduciary Duty Claim Fails as a Matter of Law**</u>.

Because Plaintiff's fiduciary duty claim is based upon the same verbatim facts and conduct as Plaintiff's claims for breach of contract/implied covenant, under the clear Delaware caselaw (*e.g.*, *Blue Chip* and *Bershad*) cited in Brightstar Asia's Memorandum (Dkt. 31, pp. 24–25), that claim must be dismissed. Plaintiff misstates or misunderstands this caselaw.  The inquiry under these cases is not whether or not the fiduciary duty arises from a contractual source.  The inquiry is whether the claim for breach of fiduciary duty is based upon the same facts and conduct underlying the contract claims.  *See, e.g.*, *Blue Chip Capital Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 833 (Del. Ch. 2006).  If yes, as is the case here, then the fiduciary duty claim relates to

contractual, not fiduciary, obligations, and that claim must be dismissed as "superfluous". *Id.*

The "extra-contractual source" rule espoused by Plaintiff is not a rule in Delaware, and the three cases cited by Plaintiff, beginning with the *RJ Associates* case, do not stand for such a rule (in fact, just the opposite).  The fiduciary duty claim in each of those three cases was derived from fiduciary duty provisions in the parties' agreements.[7]  Moreover, those cases are distinguishable from this case.  None of those cases addressed the *Bershad*/*Blue Chip* line of cases, and it appears that those courts allowed both the contract and fiduciary claims, in large part, because of the express fiduciary duty provisions in the respective agreements. Moreover, other Delaware courts, in dismissing duplicative fiduciary claims under *Bershad*/*Blue Chip*, have distinguished *RJ Associates* on this ground. *See, e.g.*, *In re WeWork Lit.*, No. 2020-0258, 2020 WL 6375438, at *14 n.142 (Del. Ch. Oct. 30, 2020); *Solow v. Aspect Res., LLC*, Civ.A. 20397, 2004 WL 2694916, at *4 n.26 (Del. Ch. Oct. 19, 2004).  Here, there is no such fiduciary duty provision[8], and Plaintiff's fiduciary duty claim is premised on the same verbatim facts and conduct as his contract claims. Therefore, under *Bershad*/*Blue Chip*, Plaintiff's fiduciary duty claim must be dismissed.

Respectfully submitted this 18th day of November, 2020,

/s/ *Kristina A. Reliford*
Kristina A. Reliford
Peter C. Sales (*Admitted Pro Hac Vice*)
Frankie N. Spero (*Admitted Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
(615) 252-3573
kreliford@bradley.com
psales@bradley.com
fspero@bradley.com
*Attorneys for Brightstar Asia, Ltd.*

---

[7] *See Cantor Fizgerald, L.P. v. Cantor*, 724 A.2d 571, 580–82 (Del. Ch. 1998); *Universal Studios Inc. v. Viacom Inc.*, 705 A.2d 579, 594–95 (Del. Ch. 1997); *RJ Assocs., Inc. v. Health Payors' Org. Ltd. P'Ship, HPA, Inc.*, No. 16873, 1999 WL 550350, at *9–10 (Del. Ch. July 16, 1999).
[8] In fact, Section 29 of the Shareholders Agreement provides that the Shareholders do not owe any fiduciary duty.