Case 1:20-cv-04849-GBD-JLC   Document 38   Filed 12/21/20   Page 1 of 13

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/21/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TYLER MILLER,

              Plaintiff,

        -against-

BRIGHTSTAR ASIA, LTD,

              Defendant.
-----------------------------------------------------------------X

**OPINION AND ORDER**

20-CV-4849 (GBD) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

      Tyler Miller brought this case against Brightstar Asia, Ltd. alleging breach of contract and other claims related to a shareholders agreement. Brightstar Asia, Ltd. has moved to dismiss Miller's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and now seeks a stay of discovery and all other proceedings pending resolution of its motion. Miller opposes a stay of written discovery, but does not oppose a stay of deposition discovery. For the reasons set forth below, Brightstar Asia's request for a stay is granted.

**I.  BACKGROUND**

      In 2016, Tyler Miller and Omar Elmi formed Harvestar Solutions Limited ("Harvestar"). Amended Complaint ("Amended Compl."), Dkt. No. 24 ¶ 9. Harvestar is a Hong Kong-based company that purchases used mobile telephones, refurbishes them, and then sells them to distributors and retailers. *Id.* ¶¶ 9–10. Brightstar Corporation is a Miami-based company that purchases millions of used mobile devices, resells them, and through third-party vendors (including

1

Harvestar), also repairs and refurbishes old devices for resale. *Id.* ¶¶ 11–12. Brightstar Device Protection, LLC, a Delaware-based limited liability company wholly owned by Brightstar Corporation, also acquires thousands of damaged mobile devices. *Id.* ¶ 13. On April 9, 2018, Brightstar Asia, Ltd. ("Brightstar Asia"), an affiliate of Brightstar Corporation, purchased from Miller and Elmi a 51% controlling stock interest in Harvestar, leaving Miller and Elmi each owning a 24.5% minority interest in the company. *Id.* ¶ 15. In connection with the purchase, Brightstar Asia, Miller, and Elmi executed a shareholders agreement, dated April 9, 2018, defining the parties' rights, duties, and obligations (the "Shareholders Agreement"). *Id.* ¶ 17 & Ex. 1.

 In his amended complaint, Miller alleges that Brightstar Asia "mismanaged" Harvestar, in part, through "self-dealing" "conflict transactions" by causing Harvestar to repair more than 200,000 mobile devices at a price $50 lower per device than Brightstar Asia could have obtained in comparable arm's-length transactions. *Id.* ¶¶ 21–29. In addition, Miller alleges that Brightstar Asia caused Harvestar not to receive volumes of used mobile devices that were "contemplated" and the "basis for" Brightstar Asia's purchase of its majority stake in Harvestar. *Id.* ¶ 20. Miller further alleges that as a result of its alleged "self-dealing" and "mismanagement," Brightstar Asia caused Harvestar's earnings before interest and taxes ("EBIT") to decrease to a negative number. *Id.* ¶ 54. Based on these allegations, Miller asserts four causes of action: breach of contract (Counts I & II)

(*Id.* ¶¶ 30–45), breach of the implied covenant of good faith and fair dealing (Count III) (*Id.* ¶¶ 46–55), and breach of fiduciary duty (Count IV) (*Id.* ¶¶ 56–63).

After Brightstar Asia moved to dismiss (Dkt. No. 21), Miller amended his complaint on September 30, 2020 (Dkt. No. 24). Brightstar Asia then moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on October 26, 2020, arguing that Miller does not have standing and, even if he did have standing, his claims are not ripe for adjudication. Defendant's Memorandum of Law in Support of Its Motion to Dismiss ("Def. Mem."), Dkt. No. 31, at 4–19. In the alternative, Brightstar Asia contended that Miller failed to state a claim. *Id.* at 20–25. Miller responded on November 6, 2020. Plaintiff's Response to Motion to Dismiss ("Pl. Resp."), Dkt. No. 32. Briefing on the motion to dismiss was completed on November 18, 2020, with Brightstar Asia's reply. Defendant's Reply in Support of Motion to Dismiss ("Def. Reply"), Dkt. No. 34.

Brightstar Asia thereafter requested a stay of discovery and all other proceedings during the pendency of the motion to dismiss. Dkt. No. 35.[1] In response, Miller informed the Court that he does not oppose a stay of oral discovery but opposes a stay of all other discovery. Dkt. No. 37.

---

[1] Brightstar Asia filed a letter-motion dated November 23, 2020 seeking a pre-motion conference in order to obtain permission to file a formal motion to stay discovery. In issuing its decision now, the Court is dispensing with the need for a conference and a formal motion, as the parties' correspondence (and the underlying motion papers) provides a sufficient record on which the Court can resolve Brightstar Asia's application.

## II. DISCUSSION

**A.     Applicable Law**

A motion to dismiss does not automatically stay discovery. *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75, 79 (S.D.N.Y. 2020) (citing *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)). Thus, "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Id.* (quotation omitted). Rather, under Rule 26(c), a court has discretion to stay discovery "for good cause." *New York by James v. Pennsylvania Higher Educ. Assistance Agency*, No. 19-CV- 9155 (ER), 2020 WL 605944, at *1 (S.D.N.Y. Feb. 7, 2020). Good cause is analyzed by the "application of three factors: (1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (quoting *Guiffre v. Maxwell*, No. 15-CV-7433 (RWS), 2016 WL 254932, at *1 (S.D.N.Y. Jan. 20, 2016)). As the moving party, Brightstar Asia bears the burden of demonstrating good cause under Rule 26(c). *Ema Fin.*, 336 F.R.D. at 79 (citing *Thrower v. Pozzi*, 99-CV-5871 (GBD), 2002 WL 91612, at *6 (S.D.N.Y. Jan. 24, 2002)).

B.  Application

    1. **Brightstar Asia Has Made a Strong Showing that Miller's Claims Lack Merit**

Brightstar Asia has moved to dismiss the amended complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction and, in the alternative, under Rule 12(b)(6) for failure to state a claim. To support its jurisdictional basis for dismissal, Brightstar Asia argues that Miller lacks standing because (1) his claims are derivative claims, not direct claims under Delaware law, and (2) he has failed to allege an injury in fact and his claims are based on the legal rights and interests of third parties. Def. Mem. at 4–17.[2] In the alternative, Brightstar Asia argues that even if Miller does have standing, his claims are not ripe for adjudication. *Id.* at 19–20.

Brightstar Asia's contention that Miller's claims are derivative hinges on the interpretation of Delaware law, and more specifically whether *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), applies here.[3] According to

---

[2] The parties both briefed the issues under Delaware law. "Where the parties' briefs assume that a particular jurisdiction's law applies, such 'implied consent . . . is sufficient to establish choice of law.'" *In re SKAT Tax Refund Scheme Litig.*, No. 18-CV-5053 (LAK), 2020 WL 7059843, at *3, n.28 (S.D.N.Y. Dec. 2, 2020) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)). Moreover, Section 26 of the Shareholders Agreement specifies that it should be construed and enforced in accordance with Delaware law. Dkt. No. 24-1, at 19. Thus, the Court will apply Delaware law as well.

[3] Under *Tooley*, whether a shareholder's claim is direct or derivative "turn[s] *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any

5

Brightstar Asia, under *Tooley*'s two-part inquiry, Miller's claims would be derivative because the breach of contractual duty he alleges is owed to Harvestar and any recovery from the alleged harm must flow to Harvestar.  Def. Mem. at 6–17.  Miller counters that the *Tooley* test does not apply because under *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175 (Del. 2015), the proper inquiry is whether he is "seeking to enforce his own contractual rights."  Pl. Resp. at 10.  On reply, Brightstar Asia argues that the Delaware Supreme Court explicitly rejected Miller's broad reading of *NAF Holdings*, and reaffirmed that the *Tooley* test applies where an individual sues for a breach of a contractual duty owed to a *company*.  Def. Reply at 1–3 (citing *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016)).

Although the Court takes no position in this Opinion and Order on whether *Tooley* applies here, Brightstar Asia's argument is "well-founded in the law."  *New York by James*, 2020 WL 605944, at *2.  As Brightstar Asia observes (Def. Mem. at 9), at least one court in this District has applied the *Tooley* test, where, as here, an individual's claim "'sounds in breach of a contractual duty' owed to the company." *Backus v. U3 Advisors, Inc.*, No. 16-CV-8990 (GHW), 2017 WL 3600430, at *16 (S.D.N.Y. Aug. 18, 2017) (quoting *El Paso*, 152 A.3d at 1259–60) and another court has applied the *Tooley* test as articulated by *Backus*, rejecting the broad reach of

---

recovery or other remedy (the corporation or the stockholders, individually)?"  *Id.* at 1033.

*NAF Holdings* on which Miller relies. *See Schiff v. ZM Equity Partners, LLC*, No. 19-CV-4735 (WHP), 2020 WL 5077712, at *10 (S.D.N.Y. Aug. 27, 2020). In a footnote, Miller dismisses *Backus* as an "anomaly," and deems *Schiff* irrelevant because the case involved a limited partnership. Pl. Resp. at 12 n.4. Nonetheless, for purposes of a stay application, Brightstar Asia has made a strong showing that this Court may lack subject-matter jurisdiction over Miller's claims because they are derivative under *Tooley*.

Brightstar Asia also challenges Miller's standing to bring his claims because he has not alleged an "injury in fact" and instead asserts the rights of third parties. Brightstar Asia argues that Miller's alleged injuries belong to Harvestar. To Brightstar Asia, the alleged injury to Miller's stock interest is the same injury as Miller's "put" right (*i.e.*, the right to sell his shares to Brightstar Asia under certain conditions). Def. Mem. at 18. Under Section 10 of the Shareholders Agreement, Brightstar Asia argues, the only way Miller may realize the value of his Harvestar shares is by exercising the "Put Right," which can be done by the "Executives" "**acting jointly only**," which they will not be able to do until April 2021. *Id.* at 18–19. Because Miller cannot individually assert his "Put Right," Brightstar Asia contends that Miller lacks standing. Miller counters that his causes of action seek to redress harm directly inflicted on his minority interest in Harvestar, and his individual rights as a signatory to the Shareholders Agreement, and that he has therefore suffered real harm and has standing. Pl. Resp. at 17.

Relatedly, Brightstar Asia further challenges this Court's subject-matter jurisdiction over Miller's claims because, even if Miller did have standing, his claims are not ripe for adjudication. Brightstar Asia again focuses on Section 10 of the Shareholders Agreement, arguing that because the Executives are not legally entitled to exercise the "Put Right" until April 2021, Miller seeks to recover the value of the "Put Right" that "has not been, and may never be exercised." Def. Mem. at 20. Miller responds that he seeks to recover damages already done to his "put" and "call" rights. Pl. Resp. at 19. Without presently deciding these issues, the Court finds that Brightstar Asia has made a strong showing for purposes of this stay application that Miller's claims may not have standing or, in the alternative, may not be ripe because the "Put Rights" can only be exercised at a future date, and it is uncertain whether those rights will ever be exercised.

The Court now turns to Brightstar Asia's arguments supporting dismissal under Rule 12(b)(6) for Miller's alleged failure to state a claim. Brightstar Asia contends that (1) there was no breach of Section 14 of the Shareholders Agreement; (2) Miller's implied covenant claim is duplicative of the breach of contract claims and is an attempt to renegotiate and rewrite the contract; and (3) Miller's fiduciary claim fails as a matter of law because it is based on the same facts and conduct underlying his breach of contract and implied covenant claims. Def. Mem. at 20–25.

To begin, the parties dispute whether dealings between Brightstar Device and Harvestar—the basis for Miller's breach of contract claims (Counts I and II)—fall within Section 14 of the Shareholders Agreement. Brightstar Asia argues that

Section 14 only applies to "transactions between the Company [*i.e.*, Harvestar] or the Subsidiaries thereof, on the one hand, and an Investor or an Other Business, on the other hand." Def. Mem. at 21 (quoting Shareholders Agreement at § 14).[4] Section 14 further defines "Investor" as Brightstar Asia, and "Other Business" as "entities other than the Company [*i.e.*, Harvestar] or any Subsidiary thereof that are engaged in the business of the Company or any Subsidiary thereof, or that are or may be competitive with the Company or any Subsidiary thereof." *Id.* (quoting Shareholders Agreement at § 14). Because Miller does not allege that Brightstar Device is engaged in Harvestar's business or a competitor of Harvestar, Brightstar Asia contends that Brightstar Device is not an "Other Business" under Section 14, and the transaction between Harvestar and Brightstar Device does not fall under Section 14. *Id.* It would follow then, that Miller does not have a cognizable claim. In response, Miller argues that Section 14 applies to "all transactions between Harvestar (or its subsidiaries) and Brightstar Asia (or its affiliates)," and points to the same sentence, but focuses on the term "Investor" instead of the term "Other Business," thus arguing that "any transactions between [Harvestar], on the one hand, and [Brightstar Asia]"—including any of its affiliates—"on the other hand,

---

[4] The complete referenced sentence in the Shareholders Agreement provides: "The parties hereto expressly authorize and consent to the involvement of the Investors and their Affiliates in any Other Business; provided, that any transactions between the Company or the Subsidiaries thereof, on the one hand, and an Investor or an Other Business, on the other hand, will be on terms no less favorable to the Company or the Subsidiaries thereof than would be obtainable in a comparable arm's-length transaction." Shareholders Agreement at § 14.

9

will be on terms no less favorable to [Harvestar] than would be obtainable in arms-length transactions." Pl. Resp. at 21.  At this stage in the litigation, both parties have offered reasonable interpretations.  Thus, Miller may have a cognizable claim depending on how the Court ultimately interprets the contract.

Turning to Miller's third claim (breach of implied covenant), Brightstar Asia argues that it fails as a matter of law because it is duplicative of Miller's breach of contract claims and because it cannot be used to rewrite the contract, claiming that Miller "is asking the Court to rewrite the Shareholders Agreement . . . to provide a certain volume of used mobile devises." Def. Mem. at 23.  Miller agrees that if the Court finds there is a breach of contract, then the breach of implied covenant claim fails as a matter of law.  Pl. Resp. at 22.  However, he argues that he is not asking the Court to rewrite the terms of the contract, but rather that Brightstar Asia restricted the flow of devices to Harvestar to "devalue and destroy [his] minority interest" in Harvestar, in violation of the implied covenant.  Pl. Resp. at 23.  Because the merit of Miller's claim for breach of implied covenant is in part informed by how the Court ultimately rules on the breach of contract claims, the Court is unable to determine its merit at this stage.

Lastly, Brightstar Asia argues that Miller's fourth claim for breach of fiduciary duty fails as a matter of law because it is duplicative of his breach of contract and implied covenant claims, which under Delaware law must be dismissed because they are superfluous.  Def. Mem. at 24.  Miller counters that his claims are not duplicative because Brightstar Asia has a fiduciary duty independent

from the contract stemming from its status as Harvestar's majority shareholder.  Pl. Resp. at 25.  Brightstar Asia, however, points to Section 29 of the Shareholders Agreement, which provides that Brightstar Asia does not owe Harvestar any fiduciary duty.  Def. Reply at 10 n.8; *see* Shareholders Agreement at § 25 ("no Shareholder (solely in its capacity as such), any of their respective Affiliates or officers or employees shall owe any duty (including any fiduciary duty) to the Company").

Because determining the merits of Miller's third and fourth claims requires a fact-intensive inquiry and "in light of the parties' citations to case law in support of both arguments, the Court is unable to conclude that the defendant made a strong showing, at this time, that the plaintiff's claim[s] [are] not meritorious." *Mirra v. Jordan*, No. 15-CV-4100 (AT) (KNF), 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016).  However, being "mindful of the Court's obligation not to proceed unnecessarily with merits discovery in a case over which the Court may lack subject matter jurisdiction," *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 75 (S.D.N.Y. 2013), the strength of Brightstar Asia's arguments to dismiss Miller's claims for lack of subject-matter jurisdiction weighs in favor of granting a stay of discovery.

### 2. Brightstar Asia Has Shown that Discovery Would be Burdensome and Miller Will Not be Unfairly Prejudiced

Although Miller does not oppose staying oral discovery, it appears that written discovery will be far more burdensome, particularly at a time when most

11

discovery is produced virtually due to the ongoing pandemic.  According to Brightstar Asia, written discovery would be burdensome in part because, in addition to potential third-party discovery involving various non-parties referred to in Miller's First Amended Complaint, foreign discovery may be necessary given that Brightstar Asia is based in Hong Kong and Harvestar's principal operations are in the Philippines.  Dkt. 35 at 3.  The Court agrees with Brightstar Asia that a stay would conserve both judicial and party resources.  *See, e.g., Ema Fin.*, 336 F.R.D. at 84 (finding potential discovery of third parties to be burdensome in granting stay of discovery); *Spinelli v. Nat'l Football* League, No. 13-CV-7398 (RWS), 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015) ("A stay may also have the advantage of simplifying and shortening discovery in the event that some of Plaintiffs' claims are dismissed and others survive, by limiting the scope of the parties' inquiry to claims that have been established as potentially viable.").

Finally, Miller will not be prejudiced by staying discovery until the Court decides the motion to dismiss.  If the Court denies the motion, a stay of discovery will presumably be for a relatively short time, and "a short delay at this time would not be unfairly prejudicial." *Hertz Glob. Holdings, Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh*, No. 19-CV-6957 (AJN), 2020 WL 6642188, at *1 (S.D.N.Y. Nov. 12, 2020); *see also* Spinelli. 2015 WL 7302266, at *2 (stay of discovery granted in two-year-old case as "delay in discovery, without more, does not amount to unfair prejudice").

### III. CONCLUSION

For the foregoing reasons, Brightstar Asia's motion to stay discovery and all other proceedings pending the resolution of its motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motion at Docket No. 35 and mark it as "granted."

**SO ORDERED.**

Dated: December 21, 2020
         New York, New York

_____
JAMES L. COTT
United States Magistrate Judge