## IN THE UNITES STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**TYLER MILLER,**

      **Plaintiff,**

**v.**

      **Case No. 20-cv-4849-GBD-JLC**

**BRIGHTSTAR ASIA, LTD,**

      **Defendant.**

---

## OBJECTION TO REPORT AND RECOMMENDATION

---

Eugene N. Bulso, Jr. (TN BPR No. 12005)
BULSO, PLC
155 Franklin Road, Suite 400
Brentwood, TN 37027
Tel. (615) 913-5200
Fax (615) 913-5150
gbulso@bulso.com

Sam Della Fera, Jr.,
MCMANIMON, SCOTLAND & BAUMANN, LLC
75 Livingston Avenue, Suite 201
Roseland, NJ 07068
Tel. (973) 721-5019
sdellafera@msbnj.com

*Attorneys for Tyler Miller*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... 3

INTRODUCTION ................................................................................................... 5

ARGUMENT .......................................................................................................... 5

   1.  Delaware Law Champions Freedom of Contract ...................................... 6

   2.  Interpretation of a Contract under Delaware Law. ................................... 7

   3.  *Tooley*, *NAF Holdings*, *El Paso, and Backus*. ........................................ 9

   *4.*  The Plaintiff Can Assert His Claims Predicated on Section 14 of the Shareholders Agreement Directly Pursuant to *NAF Holdings*. ..................... 14

      4.1.  *El Paso*, as Read by *Backus*, is *Tooley* by Another Name .................... 15

      4.2.  *Backus* Forces a False Dichotomy. ........................................................ 17

      4.3.  *Backus* Rekindles the Freedom of Contract Concerns Raised by the Second Circuit in *NAF Holdings* (2d Cir.) ............................................ 18

      4.4.  Following *NAF Holdings*' Directive and Interpreting the Shareholders Agreement as Required by Delaware Law, the Plaintiff Has Rights that He Can Assert Directly. ............................................................... 20

   5.  The Plaintiff Has a Distinct Claim for Breach of Fiduciary Duty as a Minority Shareholder ............................................................................................. 25

   6.  The Rule 12(b)(6) Component of Brightstar Asia's Motion to Dismiss ............ 25

CONCLUSION ..................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Backus v. U3 Advisors, Inc.*,
   No. 1:16-CV-8990-GHW, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017) .. 5, 14, 22

*Demetree v. Commonwealth Tr. Co.*,
   No. CIV. A. 14354, 1996 WL 494910 (Del. Ch. Aug. 27, 1996) .......................... 8

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
   702 A.2d 1228 (Del. 1997) .................................................................................... 8

*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*,
   152 A.3d 1248 (Del. 2016) ................................................................ 5, 13, 16, 22

*In re Oxbow Carbon LLC Unitholder Litig.*,
   No. CV 12447-VCL, 2018 WL 3655257 (Del. Ch. Aug. 1, 2018) ....................... 20

*Ivanhoe Partners v. Newmont Min. Corp.*,
   535 A.2d 1334 (Del. 1987) ................................................................................. 25

*Kuhn Const., Inc. v. Diamond State Port Corp.*,
   990 A.2d 393 (Del. 2010) ................................................................................ 9, 23

*Libeau v. Fox*,
   880 A.2d 1049 (Del. Ch. 2005) ........................................................................ 5, 7

*NACCO Indus., Inc. v. Applica Inc.*,
   997 A.2d 1 (Del. Ch. 2009) ................................................................................... 7

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
   118 A.3d 175 (Del. 2015) ............................................................................. passim

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
   772 F.3d 740 (2d Cir. 2014) ......................................................................... passim

*Osborn ex rel. Osborn v. Kemp*,
   991 A.2d 1153 (Del. 2010) ................................................................................ 7, 8

*Related Westpac LLC v. JER Snowmass LLC*,
   No. CIV.A. 5001-VCS, 2010 WL 2929708 (Del. Ch. July 23, 2010) ................... 6

*Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*,
   616 A.2d 1192 (Del. 1992) ................................................................................ 7, 8

*State v. Tabasso Homes,*
    42 Del. 110, 28 A.2d 248 (Gen. Sess. 1942) ........................................................ 6

*Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.,*
    206 A.3d 836 (Del. 2019) ................................................................... 7, 8, 9, 23

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*
    845 A.2d 1031 (Del. 2004) .......................................................................... 9, 17

*Twin City Fire Ins. Co. v. Delaware Racing Ass'n,*
    840 A.2d 624 (Del. 2003) ................................................................................. 7

*Unocal Corp. v. Mesa Petroleum Co.,*
    493 A.2d 946 (Del. 1985) ............................................................................... 25

4845-0949-1950.2

# INTRODUCTION

"The wealth-creating and peace-inducing effects of civil contracts are undercut if citizens cannot rely on the law to enforce their voluntarily-undertaken mutual obligations." *Libeau v. Fox*, 880 A.2d 1049, 1056–57 (Del. Ch. 2005), *aff'd in part, rev'd in part*, 892 A.2d 1068 (Del. 2006). Because the Report and Recommendation declines to enforce the obligations to which the parties voluntarily agreed in the Shareholders Agreement, the Plaintiff objects.

# ARGUMENT

The Report and Recommendation (Dkt. No. 39) recommends granting Brightstar Asia, LTD.'s Motion to Dismiss (Dkt. No. 30) because the claims advanced by the Plaintiff, Tyler Miller, are properly characterized as derivative. To reach that conclusion, the Report and Recommendation filters the Shareholders Agreement entered into, *inter alia*, by the Plaintiff and Brightstar Asia, LTD ("Brightstar Asia") and the mutual obligations agreed to therein through the "sounds in breach of a contractual duty owed to the company" inquiry provided by ***El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff***, 152 A.3d 1248 (Del. 2016). The Report and Recommendation errs because the *El Paso* inquiry applies to the constitutive agreements of alternative entries, which mix the law of contractual rights and equitable principles of fiduciary duties. The Report and Recommendation relies on ***Backus v. U3 Advisors, Inc.***, No. 1:16-CV-8990-GHW, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017), which applied the *El Paso* inquiry to a stockholder agreement. But *Backus* departs from settled Delaware law, effectively abrogates ***NAF Holdings,***

*LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175 (Del. 2015), and applies *El Paso* in a manner that no Delaware court has.

Because the Report and Recommendation follows *Backus* in applying *El Paso* to a commercial contract between the Plaintiff and Brightstar Asia, and because in doing so the Report and Recommendation strips the Plaintiff of his contractual rights under Section 14 of the Shareholders Agreement, the Plaintiff objects.

**1.  Delaware Law Champions Freedom of Contract.**

Delaware law has long been home to the proposition that parties should be free to arrange their contractual rights and obligations as they see fit. That freedom is not easily infringed:

> Of course we appreciate the fact that the right to contract is one of the great, inalienable rights accorded to every free citizen. We appreciate the fact as expressed by Sir George Jessel in *Printing Co. v. Sampson*, L.R. 19 Eq. 465, "If there is one thing more than another which public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting" and that this freedom of contract shall not lightly be interfered with. We also recognize that freedom of contract is the rule and restraints on this freedom the exception, and to justify this exception unusual circumstances should exist.

*State v. Tabasso Homes*, 42 Del. 110, 116–17, 28 A.2d 248, 252 (Gen. Sess. 1942). Accordingly, where parties have voluntary entered into an agreement, and no overriding public policy excuses performance, Delaware law requires them to adhere to the contracts they entered. *See Related Westpac LLC v. JER Snowmass LLC*, No. CIV.A. 5001-VCS, 2010 WL 2929708, at *1 (Del. Ch. July 23, 2010) ("Delaware law respects contractual freedom and requires parties like the operating member to adhere to the contracts they freely enter.")

Indeed, the enforcement of private contracts itself is a vital aspect of public policy. "The wealth-creating and peace-inducing effects of civil contracts are undercut if citizens cannot rely on the law to enforce their voluntarily-undertaken mutual obligations." *Libeau*, 880 A.2d 1056–57; *see also* *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009) ("Delaware upholds the freedom of contract and enforces as a matter of fundamental public policy the voluntary agreements of sophisticated parties.")

## 2. Interpretation of a Contract under Delaware Law.

The enforcement of private contracts, of course, depends on the correct interpretation of the parties' agreement. Courts logically start with the words of the agreement. *See* *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) ("To determine what contractual parties intended, Delaware courts start with the text."); *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003) ("Under standard rules of contract interpretation, a court must determine the intent of the parties from the language of the contract.")

When the contract is clear and unambiguous, the role of the court is simple: give effect to the plain meaning of the contract's terms and provisions. *See* *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195–96 (Del. 1992) ("[W]hen the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning."); *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions.")

Delaware adheres to the "objective" theory of contracts, by which contracts are constructed and understood to mean what an objective, reasonable person in the position of the parties would have thought it meant. *See Sunline*, 206 A.3d at 846; *Osborn*, 991 A.2d at 1159; *Rhone-Poulenc*, 616 A.2d at 1196. When objective, reasonable persons would agree on the meaning of terms in a contract, those terms are clear and unambiguous. *See Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."); *Demetree v. Commonwealth Tr. Co.*, No. CIV. A. 14354, 1996 WL 494910, at *4 (Del. Ch. Aug. 27, 1996) ("An inquiry into the subjective unexpressed intent or understanding of the individual parties is neither necessary nor appropriate where the words of the contract are sufficiently clear to prevent reasonable persons from disagreeing as to their meaning.")

However, when objective, reasonable persons could disagree on the meaning of a contract's terms, there is ambiguity that requires looking beyond the language of the contract to determine the parties' intentions. *See Sunline*, 206 A.3d at 847 ("If . . . the contract is nonetheless 'reasonably susceptible [to] two or more interpretations or may have two or more different meanings,' then the contract is ambiguous and courts must resort to extrinsic evidence to determine the parties' contractual intent."); *Eagle Indus.*, 702 A.2d at 1232 ("When the provisions in controversy are fairly susceptible of different interpretations or may have two or more different

meanings, there is ambiguity. Then the interpreting court must look beyond the language of the contract to ascertain the parties' intentions.")

When interpreting the language of the contract, the court is careful to give meaning to each term and to avoid rendering any term "surplusage." *See **Kuhn Const., Inc. v. Diamond State Port Corp.**, 990 A.2d 393, 396–97 (Del. 2010); **Sunline**, 206 A.3d at 846 ("The contract must also be read as a whole, giving meaning to each term and avoiding an interpretation that would render any term 'mere surplusage.'")

### 3.   *Tooley, NAF Holdings, El Paso, and Backus.*

In ***Tooley v. Donaldson, Lufkin & Jenrette, Inc.***, 845 A.2d 1031 (Del. 2004), the Supreme Court of Delaware announced the proper analytical framework to distinguish direct and derivative claims. That framework followed two questions: (1) who suffered the alleged harm, the corporation or the stockholder individually; and (2) who would receive the benefit of the recovery or other remedy? *See **Tooley**, 845 A.2d at 1035. The Delaware Supreme Court also remarked that "the stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* at 1039.

As applied to claims for breach of fiduciary duty, the *Tooley* framework decreased complexity—eliminating the concept of special injury, *see id.* at 1035—and facilitated the identification of direct and derivative claims. But the *Tooley* factors proved difficult to apply to claims arising from contract.

The Second Circuit recognized this shortcoming in ***NAF Holdings, LLC v. Li & Fung (Trading) Ltd.***, 772 F.3d 740, (2d Cir. 2014), *certified question answered*,

118 A.3d 175 (Del. 2015). There, the plaintiff, NAF Holdings, sought an award of damages for injury to its property—specifically its shareholdings in several subsidiary entities—caused by the defendant Trading's repudiation of an agreement to serve as a sourcing agent for the entity acquired by the subsidiaries. *See **NAF Holdings***, 772 F.3d at 741–43. The district court granted Trading's motion for summary judgment, finding that NAF Holdings suffered no harm from Trading's breach other than harm inflicted on the subsidiaries, such that NAF Holdings' claims were derivative according to *Tooley*. *See **id.*** at 742–45.

On appellate review, the Second Circuit noted that NAF Holdings' claims could pass the first prong of the *Tooley* test, breach of a duty owed directly to the stockholder. In fact, Trading's contractual duty was owed directly to NAF Holdings. ***Id.*** at 744. But NAF Holdings' claims could, under no circumstances, pass the second prong, the plaintiff can prevail without showing an injury to the corporation. ***Id.*** NAF Holdings could not show harm resulting from Trading's breach of its contractual obligations to NAF Holdings, because the harm flowing from that breach accrued first to the subsidiaries and then indirectly to NAF Holdings. ***Id***. at 744–45.

The Second Circuit noted that courts generally applied the *Tooley* test to claims alleging breach of fiduciary duties and distinguished the case before it as predicated on contractual duties. ***Id.*** at 745. The Second Circuit, moreover, appreciated the differences wrought by the distinction. In effect, *Tooley*'s second prong, prohibiting direct claims unless the plaintiff can prevail without showing an injury to the corporation, prohibited a corporation from permitting direct suits by shareholders.

*Id.* at 746-47. This is the case even for advantageous exchanges because such a contractual provision, and the shareholders' suit thereon, could not survive *Tooley*'s second prong. The Second Circuit viewed that prospect with suspicion:

> Barring the shareholder from asserting a claim arising from its own personal contract with the defendant seems to us difficult to justify. Such a rule, furthermore, conflicts with fundamental principles of contract law. As a general proposition, a party that obtains the contractual commitment of another may sue to remedy breach of that contractual commitment.

*Id.* at 747. The Second Circuit explained its concerns with a discussion of the law applicable to third-party beneficiaries, noting both parties would have a claim against the breaching defendant. *Id.* (quoting 13 Williston on Contracts § 37:55 (4th ed.)) ("Despite the apparent difficulties caused by the promisor being potentially liable to two parties, most courts have found it simpler to allow both the promisee and the beneficiary to sue the promisor to enforce the third party beneficiary contract."). The Second Circuit summarized the quagmire as follows:

> Without question, the third-party beneficiary corporation is a separate entity independent of the plaintiff, but if the fact of independence does not bar direct suit by the contracting party to enforce a promise made directly to itself when the contracting party has no shareholder's ownership interest in the third-party beneficiary, we can see no reason why the result should be otherwise merely because the plaintiff owns stock in the third-party beneficiary.

*Id.* at 748. The Second Circuit, therefore, certified a question to the Delaware Supreme Court to clarify the application of *Tooley* to suits to enforce contractual commitments. *Id.* at 750.

The Delaware Supreme Court responded to the certified question in ***NAF Holdings, LLC v. Li & Fung (Trading) Ltd.***, 118 A.3d 175 (Del. 2015). The Delaware Supreme Court answer that

> [A] party to a commercial contract may sue to enforce its contractual rights directly, without proceeding by way of a derivative action. *Tooley* and its progeny do not, and were never intended to, subject commercial contract actions to a derivative suit requirement. That body of case law was intended to deal with a different subject: determining the line between direct actions for breach of fiduciary duty suits by stockholders and derivative actions for breach of fiduciary duty suits subject to the demand excusal rules set forth in § 327 of the Delaware General Corporation Law, Court of Chancery Rule 23.1, and related case law.

***NAF Holdings***, 118 A.3d at 179. The Delaware Supreme Court further clarified that, regardless of whether the corporation of which the plaintiff is a stockholder suffered harm, the court must ask "does the plaintiff seek to bring a claim belonging to her personally or one belonging to the corporation itself?" ***Id.*** at 180. An affirmative response that the party seeks to enforce its own rights reveals a direct claim. Any other conclusion, the Delaware Supreme Court observed, would misread *Tooley* ("Reading *Tooley* to convert direct claims belonging to a plaintiff into something belonging to another party would, we confess, be alien to our understanding of what was at stake in that case, or in the cases after *Tooley* that relied on it.") and would be inconsistent with Delaware law ("[Delaware law] seeks to ensure freedom of contract and allow parties to enforce their bargains in our courts. It is a fundamental principle of contract law that the parties to a contract are bound by its terms, and have a corresponding right to enforce them."). ***Id.*** at 180–81. Accordingly, a suit by a party

to a commercial contract to enforce its own contractual rights is not a derivative action under Delaware law. **Id.** at 182.

After holding that "*Tooley* and its progeny do not, and were never intended to, subject commercial contract actions to a derivative suit requirement" (*see **NAF Holdings,*** 118 A.3d at 179), the Delaware Supreme Court held in ***El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff***, 152 A.3d 1248 (Del. 2016) that *Tooley* does apply to the formative or constitutive agreements of alternative entities. *See **El Paso***, 152 A.3d 1248 at 1259–60. The Court held that the trial court erred by treating the constitutive contract as a commercial contract. **Id.** Indeed, the constitutive contracts of alternative entities "govern the territory that in corporate law is covered by equitable principles of fiduciary duties." **Id.** To hold that all provisions of the constitutive contract are enforceable by direct claim would abrogate *Tooley* as to alternative entities and would permit enforcement of fiduciary duties owed to the entity by direct claim. *See **id.***

Accordingly, because in the Court's analysis the plaintiff's claim "sound[ed] in breach of a contractual duty owed to the [limited partnership]," the Delaware Supreme Court applied the *Tooley* analysis to determine whether the claim "to enforce the [partnership's] own rights must be asserted derivatively or is dual nature such that it can proceed directly." **Id.** The Delaware Supreme Court additionally found that the contractual provision on which the plaintiff relied "[was] better viewed as addressing the manner in which a limited partner's own rights can be enforced— which importantly include[d] derivative claims." *See **id.*** at 1259 n.45; *but see **NAF***

***Holdings***, 118 A.3d at 180 ("Reading *Tooley* to convert direct claims belonging to a plaintiff into something belonging to another party would, we confess, be alien to our understanding of what was at stake in that case, or in the cases after *Tooley* that relied on it.")

In ***Backus v. U3 Advisors, Inc.***, No. 1:16-CV-8990-GHW, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017), a party to a stockholder agreement attempt to enforce a contractual provision that the principals devote substantially all of their professional time to the company. ***Id.*** at *3. The district court read *El Paso* to subject constitutive contracts and commercial contracts alike to the inquiry of whether the claim "sounded in breach of a contractual duty owed to the company." ***Id.*** at *16. The *Backus* court did not address the distinction drawn in *El Paso* between constitutive agreements and commercial contracts. Nor did the *Backus* court explain why traditional rules of contract interpretation were insufficient to determine the parties' rights under a commercial contract. The district court applied *El Paso*, determined that the plaintiff's claim "sounded in breach of a contractual duty owed to the company," applied *Tooley*, and determined that the claim asserted by the plaintiff was derivative. ***Id.*** *16–*17.

### 4. The Plaintiff Can Assert His Claims Predicated on Section 14 of the Shareholders Agreement Directly Pursuant to *NAF Holdings*.

The Report and Recommendation adopts *Backus*' application of *El Paso* outside the context of the constitutive contract of alternative entities and ultimately deprives the Plaintiff of the rights afforded him by Section 14 of the Shareholders Agreement. Because the Report and Recommendation's following of *Backus* overextends *El Paso*

and violates basic principles of Delaware law on contract interpretation, the Plaintiff objects to the Report and Recommendation.

### 4.1. *El Paso*, as Read by *Backus*, is *Tooley* by Another Name.

In *El Paso*, the Delaware Supreme Court indicated that it was not overruling or supplanting *NAF Holdings*. Indeed, *NAF Holdings* and *El Paso* agree that *Tooley* does not apply where a party to a commercial contract seeks to enforce its own contractual rights. But *El Paso* held that *Tooley* must still apply to the constitutive agreements of alternative entities, because holding otherwise would eliminate the distinction between direct, contractual claims and derivative, breach of fiduciary duties claims in the context of alternative entities. *Backus* then applied *El Paso* to contractual claims generally, effectively reimporting *Tooley* into the determination of whether a party asserts its own rights in all contexts. The result is a hollowed-out *NAF Holdings* and the disregard of the freedom of contract concerns raised by the Second Circuit.

The abrogation of *NAF Holdings* by *Backus* is evident in the circular logic of *Backus* as applied to claims arising from commercial contracts. In *Tooley*, the Delaware Supreme Court held that to assert a direct claim "the stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* at 1039. Thus, the stockholder plaintiff must show (1) the duty breached was owed to the stockholder; and (2) the stockholder can prevail without showing an injury to the corporation.

In *NAF Holdings* (2d Cir.), the Second Circuit struggled with the second prong of the *Tooley* test. NAF Holdings had a contractual agreement with Trading, which

Trading breach. Thus, the duty breached was clearly owed to NAF Holdings. *See **NAF Holdings***, 772 F.3d at 744–45. But NAF Holdings could not prevail without showing harm to the corporation, because it only experienced indirectly harm inflicted directly on its subsidiaries. ***Id.*** The Delaware Supreme Court, on the question certified to it by the Second Circuit, clarified that the Second Circuit need not apply *Tooley* under the circumstances. *See **NAF Holdings***, 118 A.3d at 179. Indeed, the Delaware Supreme Court held that a court must ask "does the plaintiff seek to bring a claim belonging to her personally or one belonging to the corporation itself?" ***Id.***

In *El Paso*, the Delaware Supreme Court faced the difficult task of determining whether a claim belonged to a limited partner or the limited partnership. *See **El Paso***, 152 A.3d 1248 at 1259–60. Whereas with a commercial contract the Court could have determined whether the plaintiff asserted his own rights or those belonging to the corporation by interpreting the contract according to Delaware Law, the limited partnership agreement presented a challenge. Because the agreement was the constitutive agreement of the limited partnership, it blurred the line between contractual rights and duties and the equitable principles of fiduciary duties supplied by corporate law. ***Id.***

The *El Paso* Court attempted to address the problem by conducting "the usual examination of who owns the claim." ***Id.*** at 1251. The Court phrased the question asked as "does the claim sound in breach of a contractual duty owed to the company?" *See **id.*** at 1260. Though posing that question in the context of a constitutive contract

is reasonable, asking it outside that context merely applies *Tooley* where *NAF Holdings* said *Tooley* was inapplicable

Indeed, to maintain a direct claim per *Tooley* the stockholder plaintiff must show (1) the duty breached was owed to the stockholder; and (2) the stockholder can prevail without showing an injury to the corporation. *See **Tooley***, 845 A.2d at 1039. *Mutatis mutandis*, the first prong of the *Tooley* test reads that a claim is derivative when the duty breached was owed to the company.

Thus, by asking of plaintiffs asserting claims predicated on contracts other than the constitutive contracts of alternative entities whether their claim sounds in breach of a contractual duty owed to the company, *Backus* applies the first *Tooley* prong. Stated otherwise, to determine whether to apply *Tooley*, *Backus* applies *Tooley*.

### 4.2. *Backus* Forces a False Dichotomy.

*Backus'* application of *El Paso* reduces the numerous possibilities of contractual arrangements to two alternatives: (1) a claim sounds in breach of a duty to the company; or (2) it does not. This is a false dichotomy cannot accommodate contractual arrangements creating rights and duties in multiple parties. In other words, for *Backus* contractual duties are either/or, not both/and.

Asking who owns the claim, as the Delware Supreme Court instructed in *NAF Holdings*, is not similarly constrained. The response could be the company, the stockholder, or both. The exact response is left to the discretion of the companies, its stockholders, and the terms and provisions of their agreement.

### 4.3. *Backus* Rekindles the Freedom of Contract Concerns Raised by the Second Circuit in *NAF Holdings* (2d Cir.).

The Second Circuit noted in *NAF Holdings* (2d. Cir.) that the categorical extension of the *Tooley* framework to contract claims impaired corporate decision-making autonomy and freedom of contract. *See **NAF Holdings**,* 772 F.3d at 746. *Backus* brings those concerns to the fore again.

The Second Circuit posited a scenario where a corporation desired to permit a minority stockholder to sue directly to enforce contracts made to secure services for the corporation's benefit. *Id.* at 746–47. *Tooley* prevented the corporation and the stockholder from so agreeing because the consent of the corporation could not waive the requirement that the stockholder show the ability to prevail on the claim without showing an injury to the corporation. *Id.* Despite the corporation's legitimate desires, *Tooley* would not allow the corporation to allow the stockholder to sue directly.

Further, the Second Circuit found that barring the shareholder from asserting a claim arising from its own personal contract with the defendant conflicted with fundamental principles of contract law, which generally permit a party that obtains a contractual commitment to sue to remedy a breach of that contractual commitment. *Id.* at 747. Thus, in the law of third-party beneficiaries both the promisee and the beneficiary can sue the promisor to enforce the contract, despite the promisor's potential liability to two parties. *Id.* That the rights of the promisee could be protected through a suit brought by the beneficiary was irrelevant. *Id.*

The Second Circuit's concerns materialized in *Backus*. Indeed, *Backus*' application of *El Paso* to contracts generally, followed by the Report and

Recommendation, effectively prohibits companies and stockholders from permitting direct claims to enforce contractual rights. Indeed, a company and its stockholders could view the contract provision in *Backus*, requiring the principals to devote substantially all of their professional time to the company, as mutually beneficial and desirable. The company could go so far as to permit a stockholder to enforce the provision directly in the stockholders agreement. Yet as long as the court focuses on to whom the duty is owed—which will inevitably be the company—the stockholder can never have a direct claim. Thus, freedom of contract and corporate autonomy are curtailed by *Backus*.

Following *NAF Holdings* and its focus on ownership of the contractual rights underlying the claim is the sounder approach. The court should determine the rights of the parties as expressed in the parties' contractual agreement and permit the parties to sue on their rights directly, irrespective of whether a court sitting in review would characterize the duty the rights exist to enforce as flowing to the company.

The court, accordingly, should not follow *Backus*' extension of *El Paso* to apply outside of the context of the constitutive contracts of alternative entities. Indeed, no Delaware court has applied *El Paso* to contracts other than the constitutive contracts of limited partnerships. Though the Report and Recommendation faults the Plaintiff for "simply" dismissing *Backus* as an anomaly, the Plaintiff's reluctance to expand *El Paso*'s application to contracts other than the constitutive contracts of alternative entities is shared by the one Delware chancery court that has opined on the matter. *See **In re Oxbow Carbon LLC Unitholder Litig.**,* No. CV 12447-VCL, 2018 WL

3655257 at \*16 n.79 (Del. Ch. Aug. 1, 2018), *vacated on other grounds sub nom. Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482 (Del. 2019) ("I recognize that the Delaware Supreme Court has held that when the contractual right appears in the constitutive document of an entity, as here, the contractual nature of the claim does not affect its proper characterization as direct versus derivative.") Moreover, the Plaintiffs—and the Delaware chancery court—do not read *El Paso* narrowly as claimed by the Report and Recommendation. They read *El Paso* as written.

### 4.4. Following *NAF Holdings*' Directive and Interpreting the Shareholders Agreement as Required by Delaware Law, the Plaintiff Has Rights that He Can Assert Directly.

Though the Plaintiff objects to the Report and Recommendation's analysis, the Plaintiff does agree that pursuant to *NAF Holdings* the court must determine whether the Plaintiff seeks to enforce his own rights. *See **NAF Holdings***, 118 A.3d at 179 (a party to a commercial contract may sue to enforce its contractual rights directly, without proceeding by way of derivative action). The Plaintiff asserts that he does. The Report and Recommendation disagrees.

The Report and Recommendation filters Section 14 of the Shareholders Agreement through *Backus* to reach its conclusion. (*See* Dkt. 39 at 14.) Section 14 of the Shareholders Agreement provides:

> The parties hereto expressly authorize and consent to the involvement of the Investors and their Affiliates in any Other Business; provided, that any transaction between the Company or the Subsidiaries thereof, on the one hand, and an Investor or an Other Business, on the other hand, will be on terms no less favorable to the Company or the Subsidiaries thereof than would be obtainable in a comparable arm's-length transaction.

(Dkt. 24-1 at 16.) Section 14 further provides:

> The parties hereto expressly waive, to the fullest extent permitted by applicable Law, any rights to assert any claim that such involvement contemplated pursuant to this Section breaches any fiduciary or other duty or obligation owed to the Company or any Shareholder or to assert that such involvement constitutes a conflict of interest by such Persons with respect to the Company [or] any Shareholder.

(*Id.* 16–17.)

In the First Amended Complaint, the Plaintiff alleges that Brightstar Asia breached Section 14 of the Shareholders Agreement by exceeding the authorization given to it by the parties, including the Plaintiff, and causing Harvester to enter into agreements with Brightstar Asia's affiliate on terms less favorable to Harvestar than could be had in a comparable, arm's-length transaction. (Dkt. 24, ¶¶ 30–38.) As the Plaintiff alleges, Brightstar Asia's breach of Section 14 rendered the Plaintiff's "put" rights described in Section 10 of the Shareholders Agreement worthless. (*Id.*) The Plaintiff additionally sought specific performance of Brightstar Asia's obligation—as Section 24 of the Shareholders Agreement explicitly empowered him to do—and other equitable remedies Brightstar agreed to in Section 24. (Dkt. 24, ¶¶ 39–45.) Finally, the Plaintiff argued that Brightstar breached the implied duty of good faith and fair dealing implied by Delaware law.

The Report and Recommendation, pursuant to *Bachus*, asks whether Brightstar Asia's alleged breach of Section 14 "sounds in breach of a contractual duty" to Harvestar. Finding that Section 14 mirrors the contractual duties in *El Paso* and *Backus*, the Report and Recommendation concludes that the plaintiff's claim sounds in breach of a contractual duty owed to Harvestar, such that *Tooley* applies.

The Report and Recommendation rejects out of hand the Plaintiff's contention that the provisions in *El Paso* and *Backus* were materially different from Section 14. In *El Paso*, the relevant provision stated that "[w]henever the General Partner makes a determination or takes or declines to take any other action . . . then . . . the General Partner . . . shall make such determination or take or decline such other action in good faith." *See El Paso*, 152 A.3d at 1257–58. For the action to be taken in good faith, the "the Person or Persons making such determination or taking or declining to take such other action must believe that the determination or other action is in the best interests of the Partnership." *Id.* at 1258. In *Backus*, the provision stated

> The Stockholders hereby acknowledge that for at least two years following the Effective Date, all of the Principals are expected to be "Active Principals", meaning that each of them is expected to devote substantially all of their professional time to the Company, and to be involved in the day-to-day business operations and management of the Company.

*Backus*, 2017 WL 3600430 at *3.

The plaintiff drew attention to the fact that neither the *El Paso* provision nor the *Backus* provision contained language through which the minority shareholder expressly authorized the majority shareholder to engage in specific conduct, while limiting the authorization otherwise. The Report and Recommendation alarmingly states that the Plaintiff's focus on interpreting the Shareholders Agreement to determine the rights of the parties improperly "diverts the analysis." (*See* Dkt. 39 at 14.) Instead, the Report and Recommendation contends that the proper manner to interpret the Shareholders Agreement, an agreement that neither formed nor constituted Harvestar, is to follow *Backus*' application of *El Paso* in judicially

mapping the flow of duties. Because the Report and Recommendation only interprets Section 14 through *Backus*—does the claim sound in breach of a contractual duty owed to the company—it concludes that Section 14 imposes a duty on Brightstar Asia in favor of Harvestar.

Consequently, the Report and Recommendation excises the Plaintiff from Section 14 of the Shareholders Agreement, notwithstanding the reference to "the parties." Indeed, because the Report and Recommendation determines in the abstract that Section 14 imposes a duty in favor of Harvestar, it strips from the Plaintiff any right or ability to seek recourse should Brightstar Asia exceed the authorization the Plaintiff gave it. Implicitly, the Report and Recommendation holds that Plaintiff, as one of the contracting parties, must rely on Harvestar to enforce the limited authorizations the Plaintiff gave to Brightstar Asia. *Contra **NAF Holdings***, LLC 772 F.3d at 747 ("It is no sufficient answer that the rights of the contracting party to enforce the promise made to it would be protected through a suit brought by the third-party beneficiary."); ***NAF Holdings***, 118 A.3d at 180 ("Reading *Tooley* to convert direct claims belonging to a plaintiff into something belonging to another party would, we confess, be alien to our understanding of what was at stake in that case, or in the cases after *Tooley* that relied on it.")

Additionally, the Report and Recommendation's *Backus*-based interpretation of Section 14 impermissible creates surplusage. *See **Kuhn***, 990 A.2d at 396–97; ***Sunline***, 206 A.3d at 846 ("The contract must also be read as a whole, giving meaning to each term and avoiding an interpretation that would render any term 'mere

surplusage.'") In Section 14, "the parties" waived any right to assert a claim that transactions between Brightstar Asia and its affiliates, on one hand, and Harvestar, on the other hand, breached any duty owed to Harvester or any Shareholder. Given the Report and Recommendation's holding that the Plaintiff neither had any rights nor benefitted from any duties vis-à-vis Section 14, this provision of Section 14 is meaningless. The Plaintiff agreed to waive claims he did not have.

But a plain reading of the Shareholders Agreement that gives meaning to each term therein reveals that the Plaintiff did have a right to enforce Section 14 and did waive his right to challenge Brightstar Asia and affiliates transactions and interactions with Harvestar so long as those transactions comply with Section 14. The Report and Recommendation concludes otherwise because it follows *Backus* instead of *NAF Holdings*. Had the Report and Recommendation followed *NAF Holdings* and Delaware law on interpreting contracts, it would have determined that in Section 14, the parties—the Plaintiff, Omar Elmi, and Harvestar—authorized Brightstar Asia to engage in certain transactions with Harvestar and retained individual rights to enforce Section 14.

The Plaintiff had the right to enforce Section 14, and because his claims seek to enforce his contractual rights, he may pursue those claims directly. *See **NAF Holdings***, 118 A.3d at 179. Accordingly, because the Report and Recommendation concludes otherwise, the Plaintiff objects.

## 5. The Plaintiff Has a Distinct Claim for Breach of Fiduciary Duty as a Minority Shareholder.

The Report and Recommendation treats the Plaintiffs claims in Count IV as ordinary claims for breach of fiduciary duties owed to Harvestar. The Report and Recommendation misreads the First Amended Complaint.

Count IV of the First Amended Complaint asserts a claim for breach of fiduciary duties Brightstar Asia owes directly to the Plaintiff under Delaware law. (Dkt. 24 ¶¶ 56–63.) Indeed, as Harvestar's majority shareholder, Brightstar Asia owed a fiduciary duty directly to the plaintiff, a minority shareholder, independent of any duties Brightstar Asia owed to Harvestar. *See **Ivanhoe Partners v. Newmont Min. Corp.**, 535 A.2d 1334, 1344 (Del. 1987) (citing **Unocal Corp. v. Mesa Petroleum Co.**, 493 A.2d 946, 958 (Del. 1985)) (under Delaware law a shareholder owes a fiduciary duty if it owns a majority interest in or exercises control over the business affairs of the corporation.)

Because the duties created by *Ivanhoe* and *Unocal* run directly from Brightstar Asia to the Plaintiff, the Plaintiff may assert claims for breach of those duties without regard to *Tooley*, *NAF Holdings*, and *El Paso*.

## 6. The Rule 12(b)(6) Component of Brightstar Asia's Motion to Dismiss.

The Report and Recommendation, after addressing standing, dismissed the rest of the parties' arguments as moot. To the extent the Report and Recommendation addresses, effects, or makes any findings in relation to Brightstar Asia's Motion to Dismiss for failure to state a claim, the Plaintiff incorporates by reference the arguments presented in his Response to Motion to Dismiss. (Dkt. 32.)

## CONCLUSION

For all of the foregoing reasons, the Plaintiff objects to the Report and Recommendation.

Respectfully submitted,

s/ Eugene N. Bulso, Jr
Eugene N. Bulso, Jr. (BPR No. 12005)
LEADER & BULSO, PLC
414 Union Street, Suite 1740
Nashville, Tennessee 37219
Tel. (615) 780-4100
Fax. (615) 780-4101
gbulso@leaderbulso.com

s/ Sam Della Fera, Jr.
Sam Della Fera, Jr.,
MCMANIMON, SCOTLAND & BAUMANN, LLC
75 Livingston Avenue, Suite 201
Roseland, NJ 07068
Tel. 973-721-5019
sdellafera@msbnj.com

*Attorneys for Tyler Miller*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via electronic mail on the following:

Peter C. Sales
Frankie N. Spero
Kristina A. Reliford
BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Tel. (615) 252-2365
Fax (615) 252-6365
psales@bradley.com
fspero@bradley.com
kreliford@bradley.com

*Attorneys for Brightstar Asia, Ltd.*

on this 9th day of June 2021.

s/ Eugene N. Bulso, Jr.
Eugene N. Bulso, Jr.