UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYLER MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No: 1:20-cv-4849-GBD-JLC |
| | ) |
| BRIGHTSTAR ASIA, LTD, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT BRIGHTSTAR ASIA, LTD.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION**

Defendant, Brightstar Asia, Ltd. ("Brightstar Asia"), hereby submits this response in opposition to Plaintiff's "Objection to Report and Recommendation" (Dkt. 41) ("Objection").

**INTRODUCTION**

In his Report and Recommendation ("R&R"), the Magistrate Judge correctly held that Plaintiff's alleged direct claims in the Amended Complaint are derivative under Delaware law, which Plaintiff lacks standing to assert in this action. Specifically, the Magistrate Judge correctly applied the holding in *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016) to the contractual claims alleged in Counts I–III of the Amended Complaint and held that, because those claims sound in breach of a contractual duty owed to Harvestar Solutions Limited ("Harvestar") under the Shareholders Agreement, this Court must apply the test in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) to determine whether those claims are derivative or direct. The Magistrate Judge then analyzed the contractual claims, along with the claim for breach of fiduciary duty in Count IV of the Amended Complaint, under the *Tooley* test, and correctly held that Plaintiff's claims are all derivative under *Tooley*.

Plaintiff attempts to avoid the clear result that is dictated in this case by *El Paso* and *Tooley*.

1

He argues for a narrow reading of *El Paso*, without any support, which conveniently renders *El Paso* and *Tooley* inapplicable to the contractual claims. Plaintiff further argues, contrary to established Delaware law, that his fiduciary duty claim is excepted from *Tooley*. Plaintiff is wrong on all points. The Magistrate Judge correctly applied *El Paso* and *Tooley* in holding that Plaintiff's causes of action in the Amended Complaint are derivative claims. This Court should adopt the Report and Recommendation and dismiss this action for lack of subject matter jurisdiction.

## ARGUMENT

### A. The Magistrate Judge Correctly Held that the Rule in *El Paso* Applies to the Contractual Claims Alleged in Counts I–III of the Amended Complaint.

In his Objection, Plaintiff contends that the Magistrate Judge erred in applying the rule in *El Paso* to the alleged contractual claims under the Shareholders Agreement because, according to Plaintiff, *El Paso* only applies to "constitutive contracts." (Dkt. 41, p. 5.) Plaintiff is wrong. As the Magistrate Judge correctly held, the holding in *El Paso* dictates when a claim sounding in contract must be analyzed under *Tooley*, and that holding is not limited to "constitutive contracts" as Plaintiff suggests. (R&R, pp. 10–11, Dkt. 39.) Thus, the Magistrate Judge correctly held that *El Paso* applies to the contractual claims alleged in Counts I–III of the Amended Complaint.

In *El Paso*, the Delaware Supreme Court announced the rule that, when a claim sounds in breach of a contractual duty owed to the company, the court must analyze that claim under the *Tooley* test to determine whether it is derivative or direct. *El Paso*, 152 A.3d at 1260. The impetus for that ruling was that the chancery court had read the Supreme Court's earlier holding in *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175 (Del. 2015) "too broadly" to suggest that *Tooley* does not apply where the alleged harm involves "contract rights". *Id.* at 1259. In *NAF Holdings*, the court held that "a suit by a party to a commercial contract to enforce ***its* own** contractual rights is not a derivative action under Delaware law." *NAF Holdings*, 118 A.3d at 182

2

(emphasis added). The court made clear, however, that "*Tooley* and its progeny" govern the question of whether a cause of action "to enforce rights belonging to the corporation" must be asserted derivatively, and that a suit to enforce the "contractual rights" of a company must be brought derivatively on behalf of the company. *Id.* at 176, 178.

Following *NAF Holdings*, in *El Paso*, a limited partner sued the general partner for breach of the limited partnership agreement ("LPA"), to which the limited partner was a party. *El Paso*, 152 A.3d at 1250. The limited partner alleged that the general partner breached conflict of interest provisions in the LPA when it caused the partnership to make a $171 million overpayment for the purchase of assets from the general partner's parent company. *Id.* The chancery court, relying on *NAF Holdings*, found that *Tooley* did not apply to "contract rights" and, thus, held that the limited partner could challenge the overpayment as a direct claim for breach of the LPA. *Id.* at 1258.

The Delaware Supreme Court disagreed with the chancery court's overbroad reading of *NAF Holdings* and reversed. *Id.* at 1260–65. The court clarified that *NAF Holdings* addressed the situation where a plaintiff asserts its own, individual rights under a contract, which was not what the limited partner was asserting in his claim for breach of the conflict of interest provisions in the LPA. *Id.* at 1259. The court made clear that: "*NAF Holdings* does not support the proposition that *any* claim sounding in contract is direct by default, irrespective of *Tooley*. Nor does [*NAF Holdings*] mean that [the plaintiff's] status as a limited partner and party to the LPA enable[s] him to litigate directly every claim arising from the LPA." *Id.* at 1259–60 (original emphasis).

Instead, the court explained that, when a plaintiff's claim "sound[s] in contract", whether or not that claim should be analyzed under the *Tooley* test turns on the contractual duty that was allegedly breached. *Id.* at 1258–60. The court then held that, if the plaintiff's claim "sounds in breach of a contractual duty owed to the [company]" (*i.e.*, a contractual right of the company),

3

then the court must apply the *Tooley* test to determine whether that claim to enforce the company's own rights must be asserted derivatively or directly. *Id.* at 1260.

The Magistrate Judge correctly held that *El Paso* applies to Plaintiff's claims in Counts I–III of the Amended Complaint, which sound in breach of a contractual duty owed to Harvestar under the Shareholders Agreement. In so holding, the Magistrate Judge correctly rejected Plaintiff's unsupported contention that the *El Paso* holding is limited only to claims under "constitutive contracts." As the Magistrate Judge held: "[T]he Delaware Supreme Court—or any court for that matter—has not limited *El Paso* to apply only to the 'constitutive contract of an alternate entity.' Moreover, there is nothing in *El Paso* to suggest that the Delaware Supreme Court intended to limit its decision to constitutive contracts and if anything, the decision itself suggests the contrary." (R&R, pp. 10–11.) The Magistrate Judge also correctly noted that Plaintiff "does not cite any authority supporting his proposed narrowing of *El Paso*". (*Id.*, p. 10). Instead, as the Magistrate Judge correctly held, *El Paso* applies to any contractual claim that "sounds in breach of a contractual duty owed to the [company]." *El Paso*, 152 A.3d at 1260; R&R, pp. 9–11.[1]

In reaching his holding, the Magistrate Judge cited to the analogous case of *Backus v. U3 Advisors, Inc.*, No. 1:16-cv-8990, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017), in which the district court correctly applied *El Paso* to a shareholder's purported direct claim for breach of a stockholder agreement. *Id.*, at *16. The court held that, because the shareholder's claim sounded

---

[1] Because the applicability of *El Paso* does not turn on whether the contract is "constitutive," the Magistrate Judge correctly held that he did not need to determine whether the Shareholders Agreement is a constitutive contract of Harvestar. (R&R, p. 11 n.3.) However, the Shareholders Agreement is the constitutive agreement of Harvestar. In connection with Brightstar Asia's acquisition of a majority stake in Harvestar, Brightstar Asia, Plaintiff, Omar Elmi, and Harvestar entered into the Shareholders Agreement, setting forth, *inter alia*, the governance of Harvestar and the rights, duties, and obligations of the shareholders and Harvestar. (Amend. Compl., ¶ 17 (asserting that the "Shareholders Agreement dated April 9, 2018, defin[es] the rights, duties and obligations of the parties")); *see El Paso*, 152 A.3d at 1260 (the LPA, which set forth the "rights and duties owed by the partners" and was the "governing instrument" of the company, was the "constitutive contract"). Thus, in the Amended Complaint, Plaintiff treats the Shareholders Agreement as the foundational agreement of Harvestar and centers this lawsuit around that instrument.

in breach of a contractual duty owed to the company under the stockholder agreement, under the rule in *El Paso*, the court was required to analyze that contractual claim under *Tooley* to determine whether it was derivative. *Id.*; *see also Schiff v. ZM Equity Partners, LLC*, No. 19-cv-4735, 2020 WL 5077712, at *10 (S.D.N.Y. Aug. 27, 2020) (applying *El Paso* to plaintiff's purported direct contractual claims under an LLC agreement). Thus, consistent with *Backus*, the Magistrate Judge correctly applied *El Paso* to the alleged contractual claims under the Shareholders Agreement.

In keeping with his erroneous argument that the holding in *El Paso* is limited to "constitutive contracts," Plaintiff argues that the district court's ruling in *Backus* "overextend[ed]" the rule in *El Paso* by applying it to a stockholder agreement. (Dkt. 41, p. 11.) Plaintiff then suggests that the Magistrate Judge only applied the improper ruling in *Backus*, not Delaware law. Plaintiff is wrong. As discussed above, the *El Paso* Court did not limit its holding to "constitutive contracts," but rather held that, when a claim sounds in breach of a contractual duty owed to the company, the claim must be analyzed under *Tooley*.[2] Therefore, by applying *El Paso* to the alleged claims sounding in breach of contractual duties owed to the companies, the court in *Backus* and the Magistrate Judge in this case correctly applied (not "overextended") the rule in *El Paso*.[3]

For these reasons, the Magistrate Judge correctly held that *El Paso* applies to the contractual claims alleged in Counts I–III. Plaintiff's argument that *El Paso* is limited to "constitutive contracts" and, thus, does not apply to those claims, which the Magistrate Judge correctly rejected, fails as a matter of law and should likewise be rejected by this Court.

---

[2] In his Objection, Plaintiff asserts that no Delaware court has applied the *El Paso* rule to a contract other than a constitutive contract of a limited partnership, and he cites to *In re Oxbow Carbon LLC Unitholder Litig.*, No. CV12447, 2018 WL 3655257, at *16 n.79 (Del. Ch. Aug. 1, 2018), which was subsequently overturned on other grounds. However, contrary to Plaintiff's comment, the Vice Chancellor's footnote considered the *El Paso* rule in the context of a *LLC* agreement, and it did not hold that the *El Paso* rule is limited to constitutive contracts.

[3] Because the *Backus* court and the Magistrate Judge correctly applied *El Paso*, Plaintiff's arguments in the Objection specifically attacking *Backus*—which are premised upon his meritless arguments that *Backus* "overextended" *El Paso* and that the Magistrate Judge only applied *Backus*, not Delaware law (*see* Dkt. 41, pp. 14–20)—are without merit and should be rejected by the Court.

**B. The Contractual Claims Alleged in Counts I–III Sound in Breach of a Contractual Duty Owed to Harvestar, and, thus, pursuant to *El Paso*, must be Analyzed under *Tooley*.**

As Brightstar Asia demonstrated in its memorandum of law and reply in support of motion to dismiss (*see* Dkt. 31, pp. 9–12; Dkt. 34, pp. 4–6), and as the Magistrate Judge correctly held, Plaintiff's claims in Counts I–III sound in breach of a contractual duty owed to Harvestar. (*See* R&R, pp. 12–16.) Thus, under the rule in *El Paso*, those claims must be analyzed under the *Tooley* test. In his Objection, Plaintiff does not object to or refute the Magistrate Judge's holding under *El Paso* that the alleged claims sound in breach of a contractual duty owed to Harvestar.[4] Rather, he argues (as he did in response to Brightstar Asia's motion to dismiss) that the purported claims in Counts I and II for breach of Section 14 of the Shareholders Agreement constitute an assertion of his own contractual rights, which he may assert as a direct claim pursuant to *NAF Holdings*. As the Magistrate Judge correctly held, Plaintiff's arguments fail as a matter of law under *El Paso*.

As discussed above, in *El Paso*, the court made clear that "*NAF Holdings* does not support the proposition that *any* claim sounding in contract is direct by default, irrespective of *Tooley*," nor that the plaintiff's status as a party to the contract enables him to litigate directly every claim arising under the contract. *El Paso*, 152 A.3d at 1259. Rather, the court must look to the contractual duty that was allegedly breached. *Id.* at 1259, 1260. If the claim sounds in breach of a contractual duty owed to the company, then the claim must be analyzed under *Tooley*. *Id.* at 1260.

Here, Plaintiff contends that Brightstar Asia breached the specific clause within Section 14 that pertains only to "transactions between the Company [*i.e.*, Harvestar] . . ., on the one hand, and an Investor [*i.e.*, Brightstar Asia] or an Other Business, on the other hand." (Amend. Compl., ¶¶ 31, 33, 41, 50.) Under that clause, if the "Investor" or the "Shareholders" cause *Harvestar* (*i.e.*,

---

[4] Plaintiff also did not refute this point in his response to Brightstar Asia's motion to dismiss.

the "Company") to enter a transaction, then such transaction must be "on terms no less favorable **to the Company [*i.e.*, Harvestar]**" than could have been obtained "in a comparable arm's length transaction." As the Magistrate Judge correctly held, like the contractual duty of the general partner to take action "in the best interests of the Partnership" in *El Paso*, and the contractual duty of the shareholders to devote substantially all of their professional time to the company in *Backus*, the alleged contractual duty under Section 14 to enter transactions "on terms no less favorable **to the Company [*i.e.*, Harvestar]**" than could have been obtained "in a comparable arm's length transaction" is owed (if at all) to Harvestar (*i.e.*, the company). Thus, Plaintiff's alleged claims for breach of that alleged contractual duty "sound in breach of a contractual duty owed to [Harvestar]," and, pursuant to *El Paso*, those claims must be analyzed under *Tooley*.

Plaintiff argues that, because Section 14 provides that "the parties" to the Shareholders Agreement agreed to and authorized the terms of that Section, the Magistrate Judge's ruling under *El Paso* "excised" him from Section 14 and "stripped" his right to bring a direct claim. (Dkt. 41, p. 23.) This argument clearly fails under *El Paso*. The fact that "the parties" agreed to and authorized the terms of Section 14 does not mean that any claim under Section 14 is "direct by default" or that Plaintiff (as a party to the Agreement) is entitled to litigate directly every claim arising under Section 14. *See El Paso*, 152 A.3d at 1259. The question under *El Paso* is whether Plaintiff's alleged claims sound in breach of a contractual duty owed to Harvestar, which, as discussed above, they do (which Plaintiff does not refute). Thus, that "the parties" agreed to Section 14 does not change the fact the contractual duty allegedly breached is owed to Harvestar.

The same analysis applies to Plaintiff's argument concerning the waiver language in Section 14. (*See* Dkt. 41, pp. 23–24.) The fact that Plaintiff agreed to a waiver of any individual

claims relating to Brightstar Asia's involvement with an "Other Business"[5] does not somehow confer upon Plaintiff a direct claim for any breach of the alleged duty to Harvestar under Section 14 to enter transactions "on terms no less favorable to the Company [*i.e.*, Harvestar]."  Moreover, application of the *El Paso* rule does not render Plaintiff's waiver as "surplusage."  His waiver of any individual claims under Section 14 is separate from any analysis under *El Paso* of whether claims sounding in breach of a contractual duty owed to Harvestar under Section 14 must be asserted derivatively.  If the claim must be asserted derivatively on behalf of Harvestar, then it is not an individual/direct claim that can be waived by Plaintiff.

For these reasons, the Magistrate Judge correctly held that, under *El Paso*, the claims alleged in Counts I–III sound in breach of a contractual duty owed to Harvestar.  The Magistrate Judge then correctly analyzed those contractual claims under the *Tooley* test and held that the claims are derivative (*see* R & R, pp. 17–19), which Plaintiff does not refute in his Objection.[6]

### C. The Magistrate Judge Correctly Held that Plaintiff's Purported Direct Claim for Breach of Fiduciary Duty is Derivative under the *Tooley* Test.

The Magistrate Judge correctly analyzed Plaintiff's claim for breach of fiduciary duty in Count IV under *Tooley* and held that the claim is derivative.  (R & R, pp. 16–19.)  Plaintiff does not refute the Magistrate Judge's holding that his fiduciary duty claim is derivative under *Tooley*.  Instead, Plaintiff simply argues that his fiduciary duty claim against Brightstar Asia, as controlling shareholder, is a direct claim, and *Tooley* is inapplicable.  (Dkt. 41, p. 25.)  Plaintiff is wrong.

Plaintiff's citations to the *Ivanhoe Partners* and *Unocal* cases are misplaced.  Those cases merely provide that a majority shareholder owes a fiduciary duty under Delaware law.  However,

---

[5] The waiver in Section 14 only applies to claims against Brightstar Asia arising from Brightstar Asia's involvement with an "Other Business," but Plaintiff is not asserting any such claims against Brightstar Asia.  Rather, he only contends that Brightstar Asia breached the alleged contractual duty to enter a transactions "on terms no less favorable to the Company [*i.e.*, Harvestar]"  Thus, the waiver language is simply irrelevant to the derivative analysis.
[6] Likewise, in his response to Brightstar Asia's motion to dismiss, Plaintiff did not respond to nor refute Brightstar Asia's arguments that his claims are derivative under *Tooley*, which the Magistrate Judge noted.  (R & R, p. 18 n.5.)

that a majority shareholder owes a fiduciary duty does not mean that Plaintiff's alleged direct fiduciary duty claim in Count IV is excepted from the *Tooley* analysis, nor has Plaintiff cited any authority supporting such a proposition. To the contrary, *Tooley* governs "the distinct question of when a cause of action for breach of fiduciary duty . . . must be asserted derivatively," *NAF Holdings*, 118 A.3d at 176, including purported fiduciary duty claims by a minority against a majority shareholder. *See, e.g.*, *Klein v. H.I.G. Capital, L.L.C.*, No. 2017-0862, 2018 WL 6719717, at *5–6, 9 (Del. Ch. Dec. 19, 2018) (minority shareholder's purported direct fiduciary duty claim against controlling shareholder was derivative under *Tooley*); *Caspian Select Credit Master Fund Ltd. v. Gohl*, No. 10244, 2015 WL 5718592, at *3, 5 (Del. Ch. Sept. 28, 2015) (same).

Thus, Plaintiff's purported direct fiduciary duty claim in Count IV must be analyzed under the two-pronged *Tooley* test to determine whether it is derivative or direct. As Brightstar Asia demonstrated in its memorandum of law, and as the Magistrate Judge correctly held: (1) the two harms alleged by Plaintiff (*i.e.*, harm to Harvestar's revenues and EBIT resulting from Brightstar Asia's alleged mismanagement) were suffered directly by Harvestar, and the alleged resulting economic injury to Plaintiff (*i.e.*, decrease in the value of his Harvestar stock and "put" right) is a classically derivative injury; and (2) any recovery from the alleged harms flows to Harvestar. (Def.'s Mem. of Law, pp. 12–17; R & R, pp. 18–19.) Thus, under the *Tooley* test, Plaintiff's fiduciary duty claim is clearly derivative, and he lacks standing to bring it in this action.

## CONCLUSION

For these reasons, Brightstar Asia requests that the Court adopt the Magistrate Judge's Report and Recommendation and dismiss this action for lack of subject matter jurisdiction.

Respectfully submitted,

/s/ *Kristina A. Reliford*
Kristina A. Reliford
Peter C. Sales (*Admitted Pro Hac Vice*)
Frankie N. Spero (*Admitted Pro Hac Vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
(615) 252-3573
kreliford@bradley.com
psales@bradley.com
fspero@bradley.com
*Attorneys for Brightstar Asia, Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing is being served via the Court's CM/ECF system on the following on this the 23rd day of June, 2021:

Eugene N. Bulso, Jr.
BULSO PLC
155 Franklin Road, Suite 400
Brentwood, Tennessee 37027
gbulso@bulso.com

Sam Della Fera, Jr.
McManimon, Scotland and Baumann, LLC
75 Livingston Avenue, Suite 201
Roseland, New Jersey 07068
sdellafera@msbnj.com

/s/ *Kristina A. Reliford*
Kristina A. Reliford
