**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TYLER MILLER,

                        Plaintiff,

        -against-

BRIGHTSTAR ASIA, LTD.,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                       :

                                       :           <u>MEMORANDUM DECISION</u>

                                       :             <u>AND ORDER</u>

                                       :         20 Civ. 4849 (GBD) (JLC)

                                       :

**GEORGE B. DANIELS, United States District Judge:**

      Plaintiff Tyler Miller brought this action against Brightstar Asia, Ltd. alleging breach of contract and other claims related to a shareholder agreement between the parties. (Am. Compl., ECF No. 24.) Brightstar moved to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Specifically, Defendant argued that because Plaintiff's claims are derivative under Delaware law, Plaintiff lacks standing to bring suit and this Court lacks subject matter jurisdiction.

      Before this Court is Magistrate Judge James L. Cott's May 26, 2021 Report and Recommendation (the "Report"), recommending that Plaintiff's motion to dismiss for lack of subject matter jurisdiction be granted. (Report, ECF No. 39, at 20.) Magistrate Judge Cott advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 20.) Plaintiff filed timely objections. (Pl.'s Objs. to R. & R. ("Objs."), ECF No. 41.) Defendant filed a response to such objections. (Def.'s Resp. to Pls.'s Objections to R. & R. ("Def.'s Resp."), ECF No. 42).

Having reviewed Magistrate Judge Cott's Report, as well as Plaintiff's objections and Defendant's response, this Court ADOPTS the Report and overrules Plaintiff's objections. Accordingly, Defendant's motion to dismiss is GRANTED.

## I.    FACTUAL BACKGROUND

Plaintiff and Omar Elmi formed Harvestar Solutions Limited in August 2016. (Am. Compl. ¶ 9.)    Harvestar, which was jointly run by Plaintiff and Mr. Elmi, purchases used mobile telephones, refurbishes them, and then sells them to distributors and retailers. (*Id.* ¶ 10.) Brightstar Corporation is a Miami-based company that purchases a large volume of used mobile telephones, resells them, and via third-party vendors, also repairs and refurbishes the used devices for resale. (*Id.* ¶ 11–12.)    Brightstar Device Protection, LLC, a Delaware limited liability company, is a wholly owned subsidiary of Brightstar Corporation.

Brightstar Corporation was a significant customer of Harvestar. (*Id.* ¶ 12.) Through this relationship, Brightstar Corporation became familiar with Harvestar and its operations and became interested in an acquisition. (*Id.* ¶ 14.) On April 9, 2018, Brightstar Asia, an affiliate of Brightstar Corporation, purchased from Plaintiff and Mr. Elmi a 51% controlling stock interest in Harvestar, leaving Plaintiff and Mr. Elmi each with a 24.5% minority stock interest in the company. (*Id.* ¶ 15.) In connection with this purchase, Harvestar, Brightstar Asia, Plaintiff, and Mr. Elmi executed a Shareholders Agreement dated April 9, 2018, defining the rights, duties, and obligations of the parties. (*Id.* ¶ 17.) Notably, the Shareholders Agreement required that any transaction between Brightstar Asia or its affiliates, on the one hand, and Harvestar or its subsidiaries, including Harvestar Technologies, Inc., on the other hand, be on terms "no less favorable to the Company [Harvestar] or the Subsidiaries thereof than would be obtainable in a comparable arm's-length transaction."

Plaintiff alleges that Brightstar Asia "mismanaged" Harvestar by, *inter alia*, "self-dealing" "conflict transactions," which caused Harvestar to repair more than 200,000 mobile devices at a price \$50 lower per device than what could have been obtained in a comparable arm's-length transaction. (*Id.* ¶¶ 21–29.) Plaintiff further alleges that as a result of its alleged "self-dealing" and "mismanagement," Brightstar Asia caused Harvestar's revenue to drop and its Earnings Before Interest and Taxes to decrease to a negative number. (*Id.* ¶ 54.) Based on these allegations, Plaintiff asserts four causes of action: breach of contract (Counts I & II) (*Id.* ¶¶ 30–45), breach of the implied covenant of good faith and fair dealing (Count III) (*Id.* ¶¶ 46–55), and breach of fiduciary duty (Count IV) (*Id.* ¶¶ 56–63).

## II.   LEGAL STANDARD

### A.  Reports and Recommendations.

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL

1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

## B. Rule 12(b)(1) Lack of Subject Matter Jurisdiction.

"Under Article III, federal courts may exercise subject matter jurisdiction only over actual cases and controversies." *Kofinas v. Fifty-Five Corp.*, 2021 WL 603294, at *3 (S.D.N.Y. Feb. 16, 2021) (citing *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 55 (2d Cir. 2016)). "Rule 12(b)(1) requires dismissal of an action when the district court lacks the statutory or constitutional power to adjudicate it." *Williams v. Novoa*, 2021 WL 431445, at *3 (S.D.N.Y 2021)(internal quotation omitted) (quoting *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Id.* (quoting *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014)).

"When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Williams*, 2021 WL 431445, at *3 (internal quotation omitted) (quoting *Hettler*, 15 F. Supp. 3d at 450). In addition, the court "may consider affidavits and other material beyond the pleading to resolve jurisdictional questions." *Kraiem v. JonesTrading Institutional Servs. LLC.*, 2020 WL 5819557, at *4 (S.D.N.Y. Sept. 30, 2020) (citing *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

"A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly brought under Fed. R. Civ. P. 12(b)(1)." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020) (citing *Carter v. HealthPort Techs. LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). "When a motion under Rule 12(b)(1) is

4

based solely on the complaint and the attached exhibits, the plaintiff bears no evidentiary burden, and the district court must evaluate whether those documents allege facts that plausibly suggest that the plaintiff has standing to sue." *Id.* (citing *Carter*, 822 F.3d at 56). "Standing refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance, and the question of derivative standing is a threshold issue that the Court must decide." *Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, 2017 WL 1215753, at \*5 (S.D.N.Y. Mar. 31, 2017) (citing *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1256 (Del. 2016))

## III.   PLAINTIFF LACKS STANDING

As a threshold matter, Plaintiff's objection is improper as it seeks to relitigate an issue that was fully argued in "the original briefs to the magistrate judge." *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at \*3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). The Report notes that Plaintiff argued that the Delaware Supreme Court's decision in *El Paso Pipeline GP Co., v. Brinckerhoff* is only relevant "'when the contract in question is the constitutive contract of an alternative entity'" and is inapplicable here. (Report at 10) (quoting Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 32 at 10.) Plaintiff further contended that if a "'contract is a commercial contract and the plaintiff seeks to enforce his own contractual rights, then the plaintiff's claim is direct as the Delaware Supreme Court held" in *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.* (*Id.*) Thus, the issue raised in the objections—the scope of *NAF Holdings* and the applicability of *El Paso* to the instant action—is the exact same issue that was fully considered and analyzed by Magistrate Judge Cott. As such, the Report, in particular Magistrate Judge Cott's decision to apply the holding of *El Paso*, is reviewed only for clear error.

This case turns on whether the claims being asserted by Plaintiff are direct or derivative in nature. In *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, the Delaware Supreme Court established

5

the analysis to be applied in determining whether a shareholder's claim is direct or derivative. Under *Tooley*, this determination "must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" 45 A.2d 1031, 1033 (Del. 2004) (emphasis in original).

The Delaware Supreme Court clarified *Tooley*'s applicability in *NAF Holdings* and *El Paso*. In *NAF Holdings*, the Delaware Supreme Court explained that *Tooley* and its progeny "deal with the . . . question of when a cause of action for breach of fiduciary duty or to enforce rights belonging to the corporation itself must be asserted derivatively" and that this "body of law has no bearing on whether a party with its own rights as a signatory to a commercial contract may sue directly to enforce those rights." 118 A.3d at 176. Thus, *NAF Holdings* stands for the proposition that "a suit by a party to a commercial contract to enforce *its own* contractual rights is not a derivative action under Delaware law." *Id.* at 182 (emphasis added). In *El Paso*, the Delaware Supreme Court acknowledged this holding but notably clarified that "*NAF Holdings* does not support the proposition that any claim sounding in contract is direct by default, irrespective of *Tooley*." 152 A.3d 1259. The *El Paso* court then went on to hold that when a claim "sounds in breach of a contractual duty" owed to the company, the *Tooley* analysis applies to determine whether the claim "must be asserted derivatively." *Id.* at 1260.

Plaintiff, as he did in his opposition to the motion to dismiss, argues that the holding in *El Paso* is limited to "constitutive contracts" (i.e., contracts establishing or giving existence to a company.) (Pl.'s Obj's at 5–6, 14–15; Pl.'s Opp'n at 10.) While the contract at issue in *El Paso* was a "constitutive contract" of the partnership (a limited partnership agreement), the Delaware Supreme Court did not limit its holding to "constitutive contracts." Indeed, the rule announced in

6

*El Paso* focuses on whether the claim being asserted by a plaintiff "sounds in breach of a contractual duty owed to the [company]" and is not limited to a particular type of contract. *El Paso*, 152 A.3d at 1260. In noting that being a signatory to a contract did not enable a party to directly litigate every claim arising from the contract, the *El Paso* court did not cabin its holding to limited partnership agreements. *Id.* at 1259–1260. Instead, the court simply noted in footnote that a "[l]imited partnership agreement is a type of contract." *Id.* at 1260, n.50. Nothing in the decisions of the Delaware Supreme Court indicates that they intended to foreclose on the application of *El Paso* to all types of contracts.

In the five years since the Delaware Supreme Court decided *El Paso*, no court has limited its holding to "constitutive contracts." Despite claiming that the Report strays from "settled Delaware law" Plaintiff fails to provide any authority supporting his narrow reading of *El Paso*. Moreover, the available authority on this subject weighs against Plaintiff's interpretation of *El Paso*, as two courts in this district have applied the holding to more than "constitutive contracts." In *Backus v. U3 Advisors, Inc.*, Judge Woods applied *El Paso* to a shareholder agreement to determine whether plaintiff's claims sounded "in breach of a contractual duty to [the company]" and concluded that because the duty was owned to the company and not the individual signatory to the shareholder agreement the *Tooley* two-step test applied. 2017 WL 3600430, at \*16 (S.D.N.Y. Aug. 18, 2017); *see also Schiff v. ZM Equity Partners, LLC*, 2020 WL 5077712, at \*10 (S.D.N.Y. Aug. 27, 2020) (applying the rule in El Paso to plaintiff's purported direct contractual claims under an LLC agreement.) This Court sees no reason, and Plaintiff provides none, to depart from the reasoning of other courts in this district in applying the *El Paso* rule to contractual claims arising from a shareholder agreement. Thus, Magistrate Judge Cott correctly determined that the

holding of *El Paso Pipeline GP Co. v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016) applied to the contractual claims brought by Plaintiff in this case.

Here, Counts I and II of Plaintiff's amended complaint allege breach of Section 14 of the shareholder agreement.  (Am. Compl. ¶¶ 32, 41.)   Count III alleges a breach of the implied covenant of good faith and fair dealing. While Plaintiff asserts these contractual claims directly, Magistrate Judge Cott correctly determined that these claims sound in breach of a contractual duty owed to Harvestar. (Report at 13–16.)  Plaintiff claims that Defendant mismanaged Harvestar by engaging in self-dealing and breached the Shareholder Agreement by causing Harvestar to enter into transactions with Brightstar Device on terms less favorable to Harvestar than it could have obtained in an arm's length transaction. (Am. Compl. ¶¶ 21–29.) Section 14 of the Shareholder Agreement states that transactions entered into by Brightstar "will be on terms no less favorable *to the Company*." (Report at 13–14) (emphasis added.)  Thus, as Magistrate Judge Cott noted, the plain language of the Shareholder Agreement makes clear that any alleged contractual duty belongs to Harvestar and not Plaintiff individually.  (*Id.*)  There is no separation between the claims Plaintiff is asserting and those belonging to Harvestar, thus Magistrate Judge Cott properly determined that the *Tooley* test applied to Plaintiff's claims.[1]

Magistrate Judge Cott correctly concluded that under *Tooley* Plaintiff's claims are derivative in nature. (Report at 17–19.)  The essence of Plaintiff's claims is that Defendant mismanaged Harvestar by entering into unfavorable and conflictual transactions and by preventing

_____

[1] Similarly, Magistrate Judge Cott correctly determined that Plaintiff's claim for breach of fiduciary duty in Count IV is derivative under *Tooley*.  *Tooley* clearly governs "the distinct question of when a cause of action for breach of fiduciary duty . . . must be asserted derivatively," *NAF Holdings*, 118 A.3d at 176, including purported fiduciary duty claims by a minority against a majority shareholder. *See, e.g., Klein v. H.I.G. Capital, L.L.C.*, 2018 WL 6719717, at \*5–6, 9 (Del. Ch. Dec. 19, 2018) (minority shareholder's purported direct fiduciary duty claim against controlling shareholder was derivative under *Tooley*). Plaintiff's argument that *Tooley* is inapplicable to Count IV is without merit.

Harvestar from receiving the volume of mobile devices that were the basis for Brightstar's purchase of a majority interest in Harvestar. (Am. Compl. ¶¶ 19–20, 51, 62; Report at 18.) These actions resulted in a drop in Harvestar's revenue and a decrease in Harvestar's Earnings Before Interest and Taxes. Under *Tooley*'s first prong, it is clear that each of these harms are to Harvestar directly and not to Plaintiff. (Report at 18.) Any resulting harm to Plaintiff via a decrease in value of his shares is the very model of a modern derivative claim brought by a shareholder. Magistrate Judge Cott also correctly concluded that under *Tooley*'s second prong any remedy for these alleged harms, such as enjoining Defendant from entering the transactions, reforming the contract, or a damages recovery, would inure to the benefit of Harvestar and not Plaintiff directly. (Report at 19.) Accordingly, Magistrate Judge Cott properly determined that Plaintiff's claims are derivative and as such he lacks standing to bring this action and this Court lacks subject matter jurisdiction. (Report at 19.)

## IV.    CONCLUSION

Magistrate Judge Cott's Report is ADOPTED. Defendant's motion to dismiss, (ECF No. 30), is GRANTED. The Clerk of the Court is directed to close the motion and this case accordingly.

Dated: New York, New York
       September 13, 2021

SO ORDERED.

*George B. Daniel*

GEORGE B. DANIELS
United States District Judge