# Exhibit A

**AMENDED AND RESTATED**

**MASTER SERVICES AGREEMENT**

**THIS AMENDED AND RESTATED MASTER SERVICES AGREEMENT** dated as of April 9, 2018 (as amended, this "Agreement") amends and restates the Master Services Agreement, entered on the 25th day of July, 2017 (the "Effective Date"), by and between Brightstar Corp., a Delaware corporation, having its primary place of business at 9725 N.W. 117th Avenue #300, Miami, Florida 33178 ("Brightstar") and Harvestar Technologies Inc., a Corporation having its primary place of business at Blk 1 Lot 5 Millennium Drive LISP3 San Rafael, Santo Tomas, Batangas 4234 ("Service Provider").

**WHEREAS**, Brightstar provides leading supply chain solutions to the wireless telecommunication industry, with specific focus on delivering effective and efficient holistic programs in the areas of forward and reverse logistics and the treatment and disposition of wireless devices associated with wireless device equipment replacement and repair programs ("Program(s)") to wireless telecommunications service providers on behalf of their customers.

**WHEREAS**, SERVICE PROVIDER, provides repaired or refurbished wireless telecommunications equipment that meet the original manufacturer's performance standards ("Product(s)") fulfillment services, repair, programming, refurbishment, logistics and other logistics-related services (collectively, the "Services");

**WHEREAS**, as of the date hereof, Brightstar Asia Ltd. is entering into a Share Purchase Agreement and a Shareholders Agreement with Harvestar Solutions Limited, a Hong Kong entity and parent of Service Provider and Tyler Miller and Omar Elmi; and

**WHEREAS**, it is a condition of the transactions contemplated by such Share Purchase Agreement and Shareholders Agreement that the parties hereto amend and restate this Agreement.

**NOW, THEREFORE,** in consideration of the mutual representations, warranties, covenants and other terms and conditions contained herein, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree to amend and restate the Agreement in its entirety as follows:

1. **Introduction.**

   a. *Services*. Brightstar appoints Service Provider and Service Provider accepts such appointment as a non-exclusive provider of Products and Services. From time to time during the Term (as defined in Section 3 below) of this Agreement, Brightstar may acquire Products and or Services from the Service Provider, by use of this Agreement and one or more mutually executed Statement of Work ("SOW"). Each SOW is separate and independent of, and has no contractual impact on any other SOW executed under this Agreement and shall be treated as a separate contract; however, each SOW shall incorporate and be subject to the terms and conditions of this Agreement. If Brightstar also issues purchase orders for the Services, all purchase orders will be subject to the terms and conditions of this Agreement and applicable SOWs. The terms of this Agreement and the applicable SOW shall prevail over any terms and conditions presented by the Service Provider which shall be of no effect. In the event of an express conflict between the terms of this Agreement a purchase order and an applicable SOW, the specific terms in the applicable SOW shall prevail. Brightstar reserves the right to migrate all or part of its business to other providers, subject to Termination Assistance (as set out in clause 19.d.ii). Brightstar will submit a firm purchase order 30 days in advance. A firm purchase order, Returns Merchandise Authorization ("RMA Order"), and SOW are all deem to indicate a purchase commitment.

   b. *Reservation of Rights*. Brightstar reserves the right from time to time, with four (4) weeks prior written notice to Service Provider and consent by Service provider, to change, add to, or delete from the list of Products in the non-binding portion of any forecast provided by Brightstar to Service Provider pursuant to an applicable SOW. Brightstar also reserves the right from time to time, within eight (8) weeks prior written notice to Service Provider to change or terminate the level or scope of Services or other services or plans offered to Brightstar.

c. *Benefit of Brightstar affiliates*. An affiliate shall mean any other company in the Brightstar group of companies including any holding company or any subsidiary of that holding company or subsidiary of that subsidiary. Brightstar Affiliates may request Products and or Services and or deliverables from the Service provider under this Agreement as specified and as more fully described in a relevant SOW(s) and or purchase order, which will be subject to the terms of this Agreement (as the same may be altered as mutually agreed in the SOW). For purposes of SOWs executed by a Brightstar Affiliate, all references to Brightstar in this Agreement shall be deemed to refer to such Brightstar Affiliate who will be solely responsible for the payment of the Service Providers fees and other obligations place upon Brightstar in this agreement. The Service Provider will invoice the Brightstar Affiliate in such case and not Brightstar (unless agreed otherwise).

2. **Commencement of Services.** No commitment for Services is made by either party except by the execution of SOWs by both parties. This Agreement and the appendices executed concurrent with this Agreement are effective as of the Effective Date. Any SOW executed after the Effective Date will become effective as indicated therein.

3. **Term.** Unless earlier terminated by either party pursuant to Section 19, this Agreement shall be in effect for so long as either of Omar Elmi or Tyler Miller are shareholders of Harvestar Solutions Limited. The expiration or earlier termination of this Agreement shall not affect the expiration or termination date stated in any then-current SOWs provided however that each SOW can be terminated pursuant to the terms of the applicable SOW or prior to its corresponding expiration date pursuant to Section 19 of this Agreement. Upon expiration or termination of this Agreement, the Parties may not enter into any new SOWs.

4. **Operational Control.**

a. As between the parties, Service Provider will have the sole and exclusive control over (i) the manner Service Provider and its subcontractors perform Services and (ii) the personnel and assets used to perform the Services. Service Provider will engage, employ, or subcontract with such individuals or other entities as it may deem necessary in connection therewith, provided the majority of the Services will be provided by Service Provider's employees (whether permanent employees or contract employees). Such individuals will not be considered employees or subcontractors of Brightstar and will be subject to employment or engagement, and discharge, discipline and control solely and exclusively by Service Provider.

b. All pricing for Services will be stated in an applicable SOW. All SOW pricing for Services from Service Provider is assumed to be performed in a mutually agreed facility/location. Service Provider is required to seek written approval from Brightstar prior to performing any Services on any SOW for Brightstar in any location other than the mutually agreed locations of Service Provider; or if Service Provider intends to relocate any operations conducting Services from one facility to another after initiation of any SOW.

5. **Taxes.**

a. Service Provider assumes full responsibility for the payment of wages and all applicable fringe benefits, local, provincial, and payroll taxes, national insurance contributions or contribution of taxes for unemployment insurance, pensions, worker's compensation, social security and related protection ("Taxes") with respect to the persons employed by Service Provider in the performance of the Services and shall indemnify Brightstar in full against any claim made against Brightstar for the payment of such Taxes.

b. The prices set forth herein or in any applicable SOW are exclusive of any applicable sales tax (Value added tax) on the Services provided under this Agreement. If any such tax is applicable such tax may be recoverable by the service provider by providing a proper VAT invoice. All other taxes (including but not limited to taxes measured by Service Provider's net income or taxes based on Service Provider gross receipts or Service Provider's franchise) duties, tariffs or otherwise arising from the performance of the services shall be the Service Provider's sole responsibility and is not recoverable from Brightstar. Service Provider shall be solely responsible for the timely remittance of such sales tax to the applicable governmental or regulatory authority.

6. **Operations**.

    a. *Shipping*. All requirements and provisions relating to the Shipment of Products will be set forth in an applicable SOW.

    b. *IT Services*. Service Provider and Brightstar will make available to each other the necessary information technology services ("**IT Services**") in order to establish a reliable electronic link between the parties. Both parties shall mutually agree to the design and content of the electronic and manual information flow between them and the integration activities and responsibilities for each party. All costs incurred by either party shall be paid for by that party. In accordance with mutually agreed specifications, Brightstar will deliver to Service Provider an RMA Order. Service Provider will deliver to Brightstar an Advanced Shipment Notification ("ASN") for all Product shipments made and all Services performed for Repair and Kitting by Carrier, Electronic Serial Number ("ESN"), repair level and beyond economic repair ("BER"). Other information in such formats as may be mutually agreed (detail to be provided in an SOW). Service Provider agrees to provide Brightstar with interface information per mutually agreed specifications to support Brightstar's IT system requirements. The parties shall work in good faith to meet any reasonable request for interface changes, modifications or new requirements between the two parties' systems.

    c. *Brightstar Inventory and Other Property*. While Brightstar's inventory and other property is in Service Provider's care, custody and control, SERVICE PROVIDER will be liable for: (i) any damage or destruction to Brightstar's inventory or property; and (ii) any inventory shrinkage, theft, or loss of Brightstar's inventory and property, subject to any allowances provided in the SOWs and as stated in Appendix A attached hereto (if any) and the Service provider shall be responsible for insuring such Inventory and property for its full replacement value. Service Provider shall be excused providing that such inventory shrinkage is caused by *Brightstar* and/or is subject to Force Majeure.

7. **Warranties.** Service Provider hereby provides the following warranties:

    a. *Product Warranty*. Service Provider warrants that all Products it repairs or refurbishes (the "Refurbished Product") shall be free from defects in Service Provider's workmanship and materials for a period of ninety (90) days from the date the Product is repaired or refurbished. If any Refurbished Product is returned by Brightstar as defective within the ninety (90) days warranty period and such defect is determined to be due to a defect in Service Provider's materials or workmanship (not including 3rd party software or OEM software issues), Service Provider will repair replace or credit the full cost of the services fee paid plus the costs of correcting the defect, at Brightstar's sole discretion. All confirmed defects repaired or replaced by the Service Provider will be at no cost to Brightstar, including cosmetics if needed. All such warranty claims for Service Provider Refurbished Products shall be made directly to Service Provider.

    b. *Safety Warranty:* The Service provider hereby warrants that all Refurbished Products shall be safe in normal use and shall comply in all respects with the safety requirements of the United States of America and EU as applicable, or any other safety requirements applicable to the performance of this agreement, including but not limited to CE marking.

    c. *Returns Merchandise Authorization (RMA)*. Service Provider shall provide an RMA upon request by Brightstar to return defective devices. RMA's will be processed immediately upon receipt at Service Provider's location at no additional cost to Brightstar if confirmed true failure was caused solely by Service Provider's fault.

    d. *Fulfillment Services Warranty*. Service Provider hereby warrants to Brightstar that all fulfillment Services, if applicable, provided hereunder shall be performed in a first-class manner, in accordance with this Agreement, and to the highest standard one would expect of a professional organization who provides fulfillment servic*e*s by service providers of wireless telecommunications products generally, and that its personnel who carry out the Services are suitably qualified to carry out such work.

    e. *IP Warranty*. Service Provider warrants that the Services will not knowingly infringe any patent, trademark, trade secret, copyright or other intellectual property right of a third party.

f.  _OEM Standard Component Parts_. The Service Provider warrants that it shall only implement original equipment manufacturer's component parts / software, or otherwise component parts that are in full compliance with OEM standards and specifications for the supply of Services. For the avoidance of doubt, the Service Provider shall not use any third-party parts that are neither used by the original manufacturer of the device nor in non-compliance with OEM standards and specifications.

g.  _Claimant Information_. Service Provider will provide the Claimant Information warranty as defined and described in Section 14(h) of this Agreement.

h.  _Content Clear Warranty_. Service Provider warrants that customer content shall be removed from all devices. Devices deemed BER shall also be content cleared, and warranted as such by Service Provider, should the device be able to be powered "on". If a BER device cannot be powered on, Service Provider shall identify devices with previous user's content on them. For devices designated "BER with Content," Brightstar will provide disposition instructions and providers which are authorized to accept BER with Content by Brightstar in writing to Service Provider. Such BER with Content will be returned to Brightstar. Brightstar will notify Service Provider when those disposition instructions or providers change and give Service Provider reasonable time to change its disposition process. Service Provider will change its process as soon as practical, provided that any such change will occur not later than five (5) business days after receiving notice of the change in disposition process. Data wiping (or data clearing) content is designed to restore the settings of the device to the original factory defaults, and to set the internal "Reconditioned" or "Refurbished" flag for the device to "YES" or "TRUE." All of the transactions performed by the data wiping tool should be tracked at the device ESN or Serial Number level and be reportable. Any software used to rebrand or reset the unit to factory settings is required to data clear the unit of all customer content, to include but not be limited to emails, texts, pictures, web history, customer contacts, phones numbers, and MDN information.

i.  _Security Requirements_. Service Provider will provide the Security Requirements warranty as defined and described in Section 15(g) of this Agreement.

8.  **Compliance with Laws.**

a.  _Safe and Legal Services_. Each party shall comply with all Laws regulations codes and standards applicable to performance of this Agreement and any applicable SOW, including but not limited to the Laws of the United States of America and EU as applicable, and all jurisdictions in which such party operates its business and are necessary to performance hereunder.

b.  _Service Provider Compliance_. Service Provider will require all of its subcontractors to comply with any Law that is applicable to the provision of the Services, including but not limited to all Laws applicable to that party's conduct.

c.  _Import and Export Requirements_. If Service Provider imports or exports Products, Service Provider shall be responsible for such import/export control and embargo regulations, inclusive of appropriate law in the United States, the European Union, the United Nations and other relevant jurisdictions, including, but not limited to, permission to connect, packaging and instruction in the countries to which such Products are to be exported.

d.  _Trade Compliance_. The parties will abide by all applicable export and sanctions laws and regulations, including but not limited to the laws of the United States or EU with respect to export of any U.S.-origin hardware, software, or technical information. No hardware, software, technical information or services will be sold, exported, or provided by either party to any country, entity or person if: (i) the export of any such product or service to such country, or by such entity or person is prohibited by applicable laws; (ii) the import of any such product or service into such country or by such entity or person is prohibited by the laws of such country; or (iii) proper authorization for the lawful importation or exportation of any such product has not been obtained.

e.  _Anti-Corruption_. Both parties shall comply with all applicable laws, regulations and standards of all jurisdictions applicable to such party's performance under this Agreement. Specifically, both parties will refrain from activities and have procedures in place to prevent activities that are illegal, unethical or which might bring either party or the Products into disrepute, or which might constitute or represent

4

a serious conflict of interest, or which might give the appearance of impropriety. This includes all applicable domestic and international: anti-corruption and anti-Bribery laws and regulations prohibiting the payment of commercial or private bribes, including without limitation the U.S. Foreign Corrupt Practices Act ("FCPA") and the Bribery Act 2010, which prohibit(s) corrupt offers, directly or indirectly, to a government official (including any government employee or candidate for public office, or any employee of a government-owned or government-controlled company, public international organization, or political party) to secure any improper commercial advantage. Both Parties shall not make any payment to induce officials to perform routine functions they are otherwise obligated to perform, also known as "facilitating payments." Furthermore, both Parties shall refrain from making any payment to any person in a manner which would constitute or have the purpose or effect of public or commercial bribery, or the acceptance of or acquiescence in extortion, kickbacks, or other unlawful or improper means of obtaining business or any improper advantage. Breach of these obligations by either Party will entitle the non-breaching party to terminate this Agreement immediately.

9. **Payment.**

a. *Rates and Charges*.  The rates, fees and charges to be charged to and paid by Brightstar are set forth in the applicable SOWs.  Service Provider agrees there are no other applicable rates or charges.  Service Provider may propose pricing updates within the duration of this Agreement to adjust for changes in repair volume or device mix. Any change in rates, fees or charges agreed to by Service Provider and Brightstar will be set forth in a Change Order to the applicable SOW signed by both parties.  Service Provider and Brightstar agree to perform regular reviews of the rates, fees, and charges for the Services.  The basis for the review will be set forth in the applicable SOWs.  Start-up expenses and fees will be paid in accordance with the applicable SOWs.

b. *Terms*.  Service Provider will transmit monthly invoice(s) to Brightstar, as stated in each respective SOW or as otherwise directed by Brightstar.  Brightstar will pay all amounts due within net thirty (30) days of Brightstar's receipt of the monthly invoice. For purpose of clarity, Service Provider may only submit an invoice in accordance with the applicable SOW.  Should Brightstar have a dispute with an invoice or portion thereof, it shall send a written notice to Service Provider disputing such invoice. The parties will then meet in good faith to try to resolve the dispute within fifteen (15) days thereafter.  In any case where Brightstar disputes a portion of an invoice, it shall pay the undisputed portion of the invoice in a timely manner.

c. *Taxes.* The invoice provided by Service Provider shall include all applicable taxes imposed upon the provision of Services where applicable.  Brightstar shall pay applicable taxes to Service Provider on invoices submitted by Service Provider.  Taxes must be stated as separate items on an invoice listing the taxing jurisdiction imposing the tax.  Installation, labor and other non-taxable charges must be listed separately.  Service Provider shall remit taxes to the appropriate taxing authorities.  Service Provider shall honor tax exemption certificates, and other appropriate documents, which Brightstar may submit, pursuant to relevant tax provisions of the taxing jurisdiction providing the exemption and or shall adhere to any tax exemptions.

d. *Electronic Transfers*.  The parties will endeavor to exchange any and all necessary data electronically consistent with their respective business practices.  When invoices are submitted electronically, all parties involved must have capabilities to receive and verify functional acknowledgments.  Brightstar may transfer funds electronically to a bank designated by Service Provider.  Service Provider shall hold Brightstar harmless for uncollected funds (i) not properly or timely transferred from such bank or (ii) deposited in accordance with the applicable electronic funds transfer.  If the parties later agree, a third party agreement regarding electronic data interchange ("EDI") will be entered into; otherwise, any EDI will be conducted in accordance with standard commercial practices.  Service Provider and Brightstar each agree to utilize commercially reasonable efforts to complete compatible electronic interchange systems as soon as possible; however, delays in such development will not be considered a breach of this Agreement.

e. *Credit Line*.  Service Provider will provide Brightstar with a sufficient line of credit based on Service Provider's review of Brightstar's credit history and Service Provider's evaluation of Brightstar's creditworthiness and ability to timely pay amounts invoiced here under. The line of credit shall be commercially adequate and reasonable based on any forecasted volume and Service requested.

10. **Hazardous Substances**. If in providing the Services, Service Provider believes it must handle, warehouse or broker transportation of hazardous substances in order to fulfill an SOW, those hazardous substances must be listed by Service Provider in the applicable SOW, and Service Provider must provide Brightstar with copies of all relevant Material Safety Data Sheets (MSDS). Immediately upon execution of this Agreement and each SOW, Service Provider will provide a summary to Brightstar of all necessary and legally prescribed handling and disposal instructions for the hazardous substances that Service Provider typically handles in providing similar Services and is required to provide under the Law. The parties agree to update the information required by this Section 10 from time to time as necessary.

11. **Brightstar Service Provider Facility**. Brightstar personnel shall be entitled to observe the performance of Services at Service Provider's facilities, with prior notice provided, however, that Brightstar personnel and agents shall comply with reasonable requests and standard procedures and policies of Service Provider, including (i) Service Provider's safety and security and (ii) Service Provider's policies concerning access to and security of any Service Provider computer system and Service Provider data to which Brightstar may have access.

12. **Service Levels.** Service Provider shall perform the Services in accordance with, and subject to, the service levels set forth in each SOW.

13. **Governance.** This Agreement and any applicable SOW shall be governed by Exhibit A "Governance" attached hereto.

14. **Confidentiality.**

   a. *Obligation*. Service Provider (the "Receiving Party") agrees to maintain the confidentiality of the information received from Brightstar (the "Disclosing Party") in the strictest confidence and agrees not to (i) disclose, copy, or distribute the Disclosing Party's Confidential Information, whether orally or in writing, directly or indirectly, in whole or in part, except to those of the Receiving Party's employees, agents, and subcontractors or professional advisors with a need to know the Confidentail Information, or (ii) use the Disclosing Party's Confidential Information other than in connection with the Services. Receiving Party further agrees they will require all of their employees, agents and subcontractors to abide by the terms of these confidentiality obligations and be liable for any breach hereof by any such employee, agent or subcontractor. The confidentiality obligations set forth in this Section 14 will continue in effect for two years from the termination date of this Agreement.

   b. *Exceptions*. Nothing herein will apply to any information that (i) is or becomes generally available to the public other than as a result of a disclosure by the Receiving Party or its representatives, (ii) was available to the Receiving Party on a non-confidential basis prior to its disclosure by the Disclosing Party, (iii) becomes available to the Receiving Party on a non-confidential basis from a source other than the Disclosing Party, provided such source is not known to be subject to any prohibition against transmitting the information, (iv) is independently developed by the Receiving Party without use of the Disclosing Party's Information, or (v) is disclosed pursuant to Section 14(e).

   c. *Ownership of Information*. The parties hereto agree that all Confidential Information is the exclusive property of the Disclosing Party, and the Receiving Party shall not obtain any right or interest in or to such Confidential Information.

   d. *Confidential Information*. "Confidential Information" includes all information pertaining to past, present or future business or trade secrets, business plans, product plans, research and development, products, developments, specifications, inventions, processes, financial condition and business models, and their data, projections, computer programs, computer hardware and software (including source and object code), algorithms, marketing materials, cost and pricing data, price lists, business methods and policies, operating procedures, know-how, manuals, handbooks, flowcharts, memoranda, quality control and test methods and data, product applications, business strategies, designs, technology, customer and consumer lists, prospect lists, test criteria, proprietary information, loss history, claims history, financial information and all other information, knowledge or data of any kind of character, regardless of form or format, and whether or not reduced to writing. As to the Customers, "Confidential Information" specifically includes, without limitation, preferred roaming list information concerning their customers, customer lists and customers' personal information. Notwithstanding anything else to the contrary herein, and without limiting the term "Confidential

Information", it is agreed that (i) information concerning the identity of any Claimant is Information of Brightstar and the respective carrier from whom the Claimant is acquiring wireless communications services; and (ii) all intellectual property provided by Brightstar or any carrier regarding the Program for product replacement provided by Brightstar on behalf of any such carrier and any related marketing materials, methods, and procedures, financial information regarding the Program(s), including budgets, projections, profitability information, and loss and experience ratios, is the Information of Brightstar.

e.  *Protective Orders*.  Receiving Party acknowledges the competitive value and confidential nature of the Confidential Information of the Disclosing Party and that disclosure thereof to any third party could be competitively harmful to the Disclosing Party.  In the event that the Receiving Party or any person to whom the Receiving Party transmits the Confidential Information in accordance with this Agreement is compelled by court order, subpoena, or other legal process to disclose any of the Confidential Information, it shall notify the Disclosing Party so that the Disclosing Party may seek a protective order or other appropriate remedy.  In the event the Disclosing Party fails to obtain such protective order or other remedy or where the Receiving Party is compelled by law or obligation imposed by law to disclose prior to the Disclosing Party obtaining any protective order, the Receiving Party shall furnish only that portion of the Information that is legally required.

f.  *Limited License to Use Marks*.  During the term of this Agreement, Brightstar grants to Service Provider a non-exclusive, non-transferable, limited license to use the trademarks, trade names, logos that Brightstar uses for the Programs and (if applicable) products as marketed and sold under the Programs (collectively, the "Marks") but only as may be required in order to fulfill its obligations under this agreement or the relevant SOW.  Service Provider's use of such Marks will be in accordance with Brightstar's and the applicable carrier's respective policies in effect from time to time, including but not limited to trademark usage and cooperative advertising policies.  Service Provider agrees not to attach any additional trademarks, trade names, logos, or designations to any Product.  Service Provider's appointment as a non-exclusive, independent provider of Services hereunder and use of the Marks only grants to Service Provider the limited non-exclusive license as described herein and does not transfer any right, title or interest in or to any of the Claimants, Products, Programs or any of the Marks.  Notwithstanding anything in this Agreement to the contrary, Service Provider agrees that it has no right to, and shall not use, any trademarks, trade names, logos, and/or designations of third parties with whom Brightstar is conducting business in the furtherance of its provision of the Programs, without Brightstar's prior written consent, provided that the foregoing shall not restrict any rights that Service Provider has under other arrangements with such third parties unrelated to the Programs.  Brightstar may terminate the Marks license at any time, in whole or in part in its sole discretion.   Upon the expiration or earlier termination of this Agreement, the limited non-exclusive license contemplated hereby shall immediately terminate without provision of notice or any other further act by Brightstar.

g.  *Service Provider Trademarks*. Brightstar agrees that it will not use Service Provider's trademarks, trade names, logos (collectively, the "Service Provider Marks") without the prior written consent from Service Provider. Brightstar acknowledged that neither this Agreement nor the Program grant Brightstar the license to use Service Provider Marks unless the Service Provider agreed otherwise in writing.

h.  *No Other Rights Granted*.  Unless expressly stated to the contrary herein, nothing contained herein will be deemed to grant to either party, either directly or by implication, or otherwise, any right, title of interest in or to, or any license under, any patents, copyrights, trademarks, or trade secrets of the other party.

i.  *Claimant Information*. "Claimant Information" includes, but is not limited to, Claimant name, address, e-mail address, pictures or video, and/or phone number (listed or unlisted); personal information concerning a Claimant, including birth date, social insurance (or equivalent)number, driver's license, credit card information, bank account, account number or personal identification numbers; and personal information or Data as defined under the governing laws/regulations   Unless provided otherwise in writing, no license or rights to any Claimant Information is granted to Service Provider here under.  Service Provider acknowledges that Claimant Information received may be subject to certain privacy laws and regulations and requirements, including requirements of Brightstar.  Service Provider shall consider Claimant Information to be private, sensitive and confidential.  Accordingly,

with respect to Claimant Information, Service Provider shall comply with all applicable data protection and privacy laws and regulations and requirements.   Accordingly, Service Provider warrants, represents and agrees that it shall:

i.      make no disclosure of Claimant Information to any party other than Brightstar, except to the extent necessary for the performance of Services for Brightstar or as required by law;

ii.     segregate Claimant Information in accordance with appropriate IT specifications approved by Brightstar;

iii.    make no use whatsoever of any Claimant Information for any purpose except to comply with the terms of this Agreement;

iv.    restrict access to Claimant Information to only those employees of Service Provider that require access in order to perform Services under this Agreement;

v.     implement and comply with an appropriate data security plan; and

vi.    immediately notify Brightstar upon Service Provider's awareness of any breach of the provisions above.

vii.   Immediately advise Brightstar of any data subject access request it may receive.

## 15.   Technology Systems.

a.    _Brightstar Equipment_.  From time to time Brightstar may provide to Service Provider software, hardware or other equipment that Brightstar owns (or has the right to use as lessee or licensee) (the "Brightstar Equipment") for Service Provider to use in providing the Services and not for providing services to any third party.  Service Provider shall exercise reasonable care in the use and custody of all Brightstar Equipment and shall not encumber, transfer, deliver or sublet any of the Brightstar Equipment to any third party.  The Brightstar Equipment may include software, which Service Provider shall not make available to any third party and has no right to copy or retain a copy of in any form.  Upon the termination of this Agreement, the Brightstar Equipment (including all copies of software included therein) must be returned to Brightstar. Service Provider will be liable for the Brightstar Equipment as provided in Section 16(b).  Brightstar Equipment will remain the property of Brightstar (or its less or licensor) throughout and after the term of this Agreement.

b.    _Support Agreements_.  If Brightstar Equipment or a designated third party is used to communicate, process data, or otherwise provide the Services, or if Brightstar or a designated third party supplies services to obtain, repair, or maintain Brightstar Equipment, and Brightstar Equipment is necessary for Service Provider to perform hereunder, then Service Provider and Brightstar agree to enter into a support agreement ("Support Agreement") regarding such equipment and services that sets forth their respective obligations with respect to support of Brightstar Equipment.

c.    _Annual Updates_.  Service Provider shall update no less than annually all windows security software/protocols and virus detection, protection and elimination systems and shall use reasonable commercial efforts to protect its computer systems and all information relating to Brightstar, the Customers and the Claimants from unauthorized access and viruses.

d.    _Back-up Processes_.  Throughout the term of this Agreement, Service Provider shall maintain back-up procedures for the protection and safekeeping of its operational capabilities and all computer files required to perform its obligations hereunder.  Such procedures shall be designed to ensure that Service Provider is able to perform its obligations hereunder within a reasonable time of a disaster.   If Service Provider cannot restore operations to full capacity within this time period, it will assist completely in transitioning product and operations to an alternate facility or provider of Brightstar's choosing. Further, Brightstar may request and Service Provider agrees to review and conduct a "walk-through" test of Service Provider's disaster recovery procedures (not including the disaster recovery Service Provider's ramp-up capability), once a year.  Brightstar, at its option, shall have the right to observe, review and participate in such walk-through tests.  Brightstar shall provide Service Provider a report of any defects, problems or issues that do not meet Brightstar's timeframe requirements. Service Provider shall have 90 days to remedy these defects. If Service Provider does not remedy

these defects within 90 days, Brightstar may terminate this Agreement upon 30 days' notice to Service Provider.

e.  *Systems Contingency Services Requirements*. Service Provider will maintain contingency plans for all Service Provider systems in which Brightstar information is maintained including data backup, archiving and disaster recovery.

f.  *Retention Requirements*. Service Provider shall be responsible for the following:

  i.   Retaining serialized transaction history (handsets and other devices) through the life of this Agreement.

  ii.  Conducting weekly full and daily incremental back-ups of all application file executables and database files.

  iii. Conducting full monthly back-ups of all environments.

g.  *Security Requirements*.  With respect to Software or Services, Service Provider warrants, covenants and agrees to comply in all material respects with Sections 15(d)-(g).  Service Provider shall also comply in all material respects with all mutually agreed additional security requirements upon which the parties may reasonably agree from time to time.

## 16.  Intellectual Property.

a.  *Service Provider's Technology.* Brightstar will have no right to the Service Provider's proprietary systems (the "Service Provider's Systems") except as provided in this Agreement, the SOWs or any other agreement between Brightstar and Service Provider.  Upon termination of this Agreement or expiration or termination of an SOW, all Service Provider Systems, including but not limited to telecommunications and computer hardware and software, used to provide the Services to Brightstar that Service Provider owns or licenses from a third party will revert to Service Provider's possession and control and Brightstar warrants that it will make no copies of or use any of such systems unless permitted hereunder.  The use of any Service Provider Systems during the term of this Agreement shall not be deemed to have given Brightstar a license to use or ownership rights in any such assets of Service Provider.  If at the termination of this Agreement, Brightstar requests the continued use of hardware or software of Service Provider in Service Provider's facility, Service Provider will license Brightstar to use that hardware or software for a mutually agreeable transition period, provided that Service Provider will not have to grant such license if either (x) it does not then have the right to grant such license or (y) the parties cannot reach agreement on a reasonable licensing fee.

b.  *Brightstar's Technology.* Brightstar from time to time purchases or develops systems to operate its businesses it considers proprietary, including the Brightstar Equipment.  Brightstar may give Service Provider the right to use these systems solely for the providing of Services, possibly through a Support Agreement.  Upon termination of this Agreement, all technical systems, including but not limited to telecommunications and computer hardware and software and other Brightstar Equipment, owned or licensed by Brightstar and used to provide the Services will revert to Brightstar's possession and control, and Service Provider warrants that it will make no unauthorized copies of or use any of such systems.  The use of any such systems during the term of this Agreement shall not be deemed to have given Service Provider a license to use or ownership rights in any such assets of Brightstar.

## 17.  Indemnification.

a.  *Indemnification by Service Provider*.  Service Provider will indemnify, defend and hold harmless Brightstar and its current and former officers, directors, employees, partners, managers, members, affiliates and agents against any loss, liability, cost or expense (including reasonable attorney's fees, costs, and expenses) arising from (i) any breach by Service Provider of any covenant, agreement, obligation, representation or warranty by Service Provider contained herein or in the relevant SOW; (ii) any third party claims for personal injury, death or damage to real or tangible personal property arising out of defects in the attributable to the Services of Service Provider or components used by the Service provider in providing the Services; or (iii) the negligence or willful misconduct of Service Provider or any of its employees or agents (iv) any third party claim pursuant to the governing

consumer protection related laws arising from the provision of the Services; or (v) any breach of the Data Protection act or breach of its obligations of confidentiality under governing laws. This indemnification includes, without limitation claims arising from any allegation, threat, demand or claim (or settlement thereof) that the Services or related aspect thereof, infringe, dilute, tarnish, or misappropriate any copyright, patent, trademark, trade secret, or other proprietary or intellectual property right or license of any person or entity.

b.  *Notice of Third Party Claims*.  If any third party notifies Brightstar with respect to any matter that may give rise to a claim for indemnification (a "Third Party Claim") against Brightstar, then Brightstar (the "Indemnified Party") shall promptly provide written notice thereof to the Service Provider (the "Indemnifying Party"), setting forth reasonable detail concerning such Third Party Claim (a "Notice of Claim").

c.  *Control of Defense of Claims*.  The Indemnifying Party shall control the investigation and defense of Third Party Claims, provided that Indemnifying Party utilizes counsel reasonably acceptable to Indemnified Party.  The Indemnifying Party shall not consent to any settlement that requires the Indemnified Party to make any payment, take any action or withhold from taking any action without first obtaining the prior written consent of the Indemnified Party, which may not be unreasonably withheld.  Subject to the Indemnifying Party's control rights, the Indemnified Party may participate in such investigation and defense, at its own expense, including, but not limited to, the right to attend all proceedings connected with such Third Party Claim and prompt receipt of copies of all correspondence received or sent in connection with such Third Party Claim.

d.  *Product Intellectual Property Indemnification*.  Service Provider shall pass through to Brightstar any and all rights to indemnification, if any, granted by the manufacturers of the Purchased Products in the event any such Product violates any intellectual property right of any third party, subject to all conditions and limitations of such manufacturers.  Service Provider provides no additional indemnification for intellectual property infringement related to the Purchased Products that include the original manufacturer's intellectual property indemnification.

e.  *Limitation of Liability.*  Notwithstanding any other provision of this Agreement but subject to clause 17.f, neither party shall be liable to the other party for any special, indirect, consequential or punitive damages, including, but not limited to, loss of production, loss of income, or loss of profits, even if the breaching party was given prior notice of the possibility of such damages.  There shall be no right of set-off.  Except for a party's obligations to indemnify the other party, in no event shall either party's damages for any failure of the other party to perform hereunder be in excess of Service Provider's fees for the twenty-four (24) months directly prior to the date of such failure; provided, however, such fees shall not include the value of transportation services purchased in the event Service Provider's services include transportation brokerage. THE LIMITATIONS OF LIABILITY PROVIDED IN THIS SECTION 17 ARE A FUNDAMENTAL BASIS OF THE BARGAIN AND ARE INTENDED TO PREVAIL OVER ANY PROVISION HEREIN TO THE CONTRARY.

f.  Nothing in this agreement or any applicable SOW(s) has the effect of limiting or excluding the liability of one party to the other for (i) death or personal injury arising from their negligence, or (ii) a party's fraud, or (iii) a party's obligations to indemnify the other party under this agreement; or (iv) breach of any implied warranties under the Sale of Goods Act 1979 or Supply of Goods and Services Act 1982; or (v) any liability which cannot be limited or excluded by law.

18.  **Insurance and Security Requirements.**  The insurance and security requirements are set forth in Appendix A hereto, which is fully incorporated into this Agreement.

19.  **Termination.**  The parties will have the termination rights set forth below.

a.  *Insolvency*.  In the event that: (i) an administrator or liquidator is appointed (or any petition is presented for the appointment) over a party, (ii) a party is wound up or ceases to trade, (iii) a party makes a general assignment, arrangement or compromise for the benefit of creditors, or (iv) a receiver or administrative receiver is appointed over the assets of a party (v) a party is insolvent (vi) or anything analogous to the matters set out in (i) to (v) in the jurisdiction where the party is located, then the other party, without prejudice to any other right or remedy, may terminate this Agreement immediately upon giving prior written notice of such termination.

b. *Mutual Consent*. This Agreement, or any SOW, may be terminated at any time by the mutual written consent of Brightstar and Service Provider.

c. *Change of Control*. Brightstar may terminate this agreement immediately upon written notice to the Service Provider if there is a change of control of the Service Provider. Control shall mean in relation to a corporate body, the power of a person to secure that the affairs of the corporate body are conducted in accordance with the wishes of that person either (a) by means of the holding of shares, or the possession of voting power, in or in relation to that or any other corporate body; or (b) as a result of any powers conferred by the articles of association or any other document regulating that or any other corporate body, and a Change of Control occurs if a person who controls any corporate body ceases to do so or if another person acquires Control of it.

d. *Termination for Breach*.

   i. If either party commits a material breach of its obligations under this Agreement, the non-breaching party will provide written notice describing the material breach to the breaching party. The breaching party will have 30 days to cure such breach (or, if the parties agree a cure is not feasible within 30 days, such longer period of time for cure as the parties may agree in writing). If the breach is not cured within such period, then the party not in breach may terminate this Agreement immediately upon written notice.

   ii. If Brightstar fails to pay any undisputed amounts due Service Provider and such failure continues for 30 days after written notice, Service Provider may terminate this Agreement immediately upon written notice.

e. *Termination Assistance and Termination Plan*. If this Agreement is terminated for any reason, Service Provider shall be obligated to provide normal daily operations support at contracted terms, conditions and rates and to assist in the transition of business to Brightstar's appointed representative ("Termination Assistance"). Service Provider and Brightstar shall cooperate in good faith to develop a termination plan for tasks and timing to accomplish the transition of business operations that minimizes both parties' costs and maintains service levels to Brightstar. Scope will include inventory management and fulfillment operations. Any new services required for this transition plan will be contracted at the existing cost and pricing of the SOW. Service Provider shall commence providing Termination Assistance upon the delivery of notice of termination. Service Provider shall continue providing Termination Assistance services through the effective date of the expiration or termination of this Agreement and for a period not to exceed six (6) months thereafter unless mutually agreed to in writing.

f. All SOWs will terminate or expire upon the termination or expiration of this Agreement.

g. A SOW may be terminated for the reasons stated in this Clause 19 without affecting this agreement or any other SOW and the termination of one SOW shall not be deemed to terminate any other SOW unless the terminating party gives notice to terminate that other SOW and or this Agreement.

**20.    Survival and Effect of Termination or Expiration.**

a. Termination, cancellation or expiration of this Agreement or an SOW will not relieve a party of liability for any breach thereof nor relieve a party of its obligation to pay any undisputed amount accruing prior to such termination, cancellation or expiration. The provisions of Sections 9, 11, 13, 14, 15, 17, 18, 20, 21 and 23-32 specifically shall survive termination or expiration of this Agreement, as well as any act or omission prior to the termination, cancellation or expiration which by its nature is intended to survive termination, cancellation or expiration.

b. If as a result of the termination of a SOW or this Agreement and or the transition of services from the Service Provider to an alternative supplier as requested by Brightstar it is not the intention of the Parties that any employee or consultant or agency worker of the Service Provider (Employees) employment will be transferred to either Brightstar or the alternate supplier. If any such Employee's employment is deemed to have transferred in accordance with Transfer of Undertakings (Protection of Employment) Regulations 2006 (or any analogous law in the jurisdiction of the Service Provider) (Employment Regulations) then the Service Provider hereby agrees to provide the employee liability

11

information (as defined in the Employment Regulations) to Brightstar and to comply in all respects with its obligations under the Employment Regulations and hereby agrees to indemnify and hold harmless Brightstar and the alternative supplier in full for and against all claims, costs, expenses or liabilities whatsoever and howsoever arising incurred or suffered by the Supplier including without limitation all legal expenses and other professional fees (together with any VAT thereon) in relation to:

    i.    any employment related matter or claim brought by an Employee which arises prior to the effective transfer date including any act or omission by the Service Provider; and

    ii.    the termination of an Employee's employment by Brightstar or the alternative supplier after the effective transfer date; and

    iii.    any claim made at any time by any person engaged by the Service Provider other than the Employees who claim to have become an employee of or have rights against Brightstar or the alternative supplier by virtue of the Employment Regulations.

21. **Audit.**

a. *Brightstar Audit Rights.* Brightstar shall have the right from time to time to physically inspect, review and observe the Services being performed by Service Provider and the facilities in which Services are provided, and to perform audits, including inspection of books, records and computer data relevant to provision of the Services, to ensure inventory, quality, process and business controls are maintained; provided, however, such inspections and audits shall be conducted upon reasonable notice to Service Provider and with a view to avoiding material interference with Service Provider business operations, and Service Provider will not be required to provide any operating cost data except to the extent that Services are priced on a "cost plus" basis. Additionally, Service Provider agrees to perform a complete physical inventory of all Brightstar inventory housed at Service Provider facilities at least annually, and to allow Brightstar's auditors to observe the counting of the physical inventory. Service Provider agrees to coordinate the timing of such physical inventory with Brightstar and its auditors and to provide the auditors a complete, cost detailed physical inventory listing to aid them in their observation of the physical inventory.

b. *Remediation.* In the event Service Provider fails to satisfy any performance standards or contracted service levels in this Agreement or an applicable SOW, Brightstar shall provide Service Provider with the details of such deficiency. Service Provider shall use such information as a basis to remediate its internal processes and procedures in order to correct any such deficiency. The parties agree that all such information shall be treated as confidential Information and shall be afforded the protections herein. Failure to cure non-compliance with mutually agreed performance standards within ninety (90) days following notice shall be cause for termination of this Agreement by Brightstar.

22. **Right of First Refusal.**

a. For so long as either of Omar Elmi or Tyler Miller are shareholders of Harvestar Solutions Limited, the Service Provider will have a right of first refusal to repair or refurbish any Apple Inc. wireless mobile devices acquired and owned by Brightstar or its affiliates that would otherwise be repaired or refurbished by a third party supplier ("Supplier"); provided that (x) the volume of any lot of such devices is greater than 500 devices; and (y) the work to be performed on such devices is of like or better terms including pricing, timing and quality as that ordinarily performed or offered by the Supplier, as further specified in the relevant SOW. Notwithstanding the foregoing, the Service Provider shall (i) not have a right of first refusal to repair or refurbish any devices obtained through Brightstar's "Halo" line of business that will be returned to a "Halo" program, or (ii) forfeit the right of first refusal if it does not provide a ROFR Quote within (A) two (2) business days of its receipt of a ROFR Request from Brightstar pertaining to devices the Service Provider then services or has serviced within the immediately preceding six (6) months, or (B) five (5) business days of its receipt of a ROFR Request from Brightstar pertaining to devices not then being serviced by the Service Provider or not serviced by the Service Provider during the immediately preceding six (6) months.

b. Brightstar shall deliver to Service Provider a written request including either (i) a quote from a Supplier to provide repair or refurbishment services including a description of the services, number of devices and price, or (ii) a request to provide repair or refurbishment services specifying the number of

devices and price (a "ROFR Request") and the Service Provider shall provide a quote for the services, covering the type of repair, line item pricing, turnaround time, and other terms and conditions (the "ROFR Quote"). All quotes provided for the same type of repair or refurbishment are considered valid for the period of 45 days unless the Service Provider notifies Brightstar in writing of changes, and thus Brightstar is not obligated to seek quotes for any repair services for which it has previously received a quote of similar terms for a period of 45 days.

c.   The Service Provider acknowledges and agrees that it shall not, for so long as either Omar Elmi or Tyler Miller are shareholders of Harvestar Solutions Limited, directly, or indirectly through a third party solicit the sale, or sell, or solicit the purchase or purchase mobile devices to or from third parties without the prior written consent of Brightstar; provided that Service Provider will be permitted to purchase and sell devices through its existing profit sharing relationship with T-Mobile solely to the extent that Brightstar or its subsidiaries have the right to purchase such devices at Brightstar or its subsidiaries' current wholesale acquisition costs for the same models and grades.

23.    **Independent Contractor.** In the performance of the Services, Service Provider will be an independent contractor and will not be or act as, or be deemed to be, an agent of Brightstar, and Service Provider will not have the right to bind Brightstar in any manner, even if such Services are performed on Brightstar property. The parties' relationship shall not be that of franchisor and franchisee, partners, principal and agent, employer/employee or any other relationship, and, except as expressly stated herein, neither party shall have the right to bind or obligate the other. Nothing contained in an SOW or this Agreement may be construed to be inconsistent with that relationship or status. Brightstar exercises no direct control or supervision over the employees of Service Provider and, in fact, disavows any right to do so, and Brightstar in no way directs the operations of Service Provider or the manner of its performance. No joint venture or other relationship between Service Provider and Brightstar is created hereby.

24.    **Force Majeure.** This Agreement will be temporarily suspended during any period to the extent that Brightstar or Service Provider during that period is unable to carry out its obligations under this Agreement or the SOWs by reason of an Act of God or the public enemy, fire, flood, labor disorder, strike, sick-out, civil commotion, closing of the public highways, government interference, government regulations, or any similar event or occurrence beyond the reasonable control of the affected party. The non-performing party shall promptly provide written notice to the other party of such force majeure event and neither party will have any liability to the other party for delay in performance or failure to perform to the extent this Agreement or an SOW is so temporarily suspended *provided, however,* that the non-performing party shall use commercially reasonable efforts to avoid or remove such cause(s) for non-performance and both parties shall proceed whenever such cause(s) are removed or cease. If Service Provider invokes this clause, Brightstar will have the right to use other means to fulfill its requirements, and shipments made by Brightstar by such other means during such period of force majeure and until ten days following receipt of Service Provider's notice of resumption will be credited against any minimum volume commitments, if any, made by Brightstar in SOWs. This shall in no way release either party from their respective obligations to comply with all laws, regulations and rules applicable to the performance of their obligations hereunder. In the event that the force majeure event continues for more than thirty (30) days, Brightstar may terminate this Agreement and any outstanding SOWs.

25.    **Notices.** All notices and other communications hereunder shall be in writing, sent to the addresses or fax numbers set forth below (or as set out in the relevant SOW) and shall be deemed duly given (a) when delivered by personal delivery, (b) the next business day after having been sent by a nationally recognized overnight courier service (e.g. UPS or FedEx), or (c) on the business day that it is transmitted by fax and the fax confirmation is received, provided that such notice or other communication is promptly thereafter sent in accordance with the provisions of clause (b) above. Any party may give any notice or other communication using any other means but it will not be deemed to have been duly given unless and until it is actually received by the person for whom it is intended.

| If to Brightstar, then to: | with copy to: |
|---|---|
| Brightstar Corp. | Entity |
| 9725 NW 117th Ave #100 | Address Line 1 |
| Miami, Florida 33178 | Address Line 2 |
| Attention:  LEGAL | Address Line 3 |
| Facsimile: | Attention: ___ |
| | Facsimile: |

| **If to SERVICE PROVIDER, then to:** | **with copy to:** |
|---|---|
| Harvestar Technologies Inc. | Entity |
| Blk 1 Lot 5 Millennium Drive LISP3 | Address Line 1 |
| San Rafael, Santo Tomas, Batangas | Address Line 2 |
| 4234, Philippines | Address Line 3 |
| Attention: ___ | Attention: ___ |
| Facsimile: | Facsimile: |

26.   **Modification and Waiver.** No release, discharge, abandonment, waiver, alteration, or modification of any of the provisions of this Agreement, any SOWs or any exhibits or attachments hereto, will be binding upon either party unless set forth in a writing signed by both parties. No waiver by a party of any default or breach of warranty or covenant will be deemed to extend to any prior or subsequent default or breach or affect in any way any rights arising by virtue of any prior or subsequent occurrence. No failure or delay by a party in exercising any right, power or privilege hereunder will operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

27.   **Governing Law.** This Agreement will be construed and enforced in accordance with, and governed by, the laws of the state of Florida, USA without regard to rules of conflict of laws. The United Nations Convention on Contracts for the International Sale of Goods will not apply to this Agreement. All disputes arising out of or in connection with this Agreement which are not settled amicably by private negotiation between the Parties, whether contractual or otherwise, shall be resolved through a lawsuit filed in a court of competent jurisdiction in the city of Miami, Florida.

28.   **Entire Agreement.** This Agreement, together with all SOWs and attachments and exhibits hereto, constitutes the entire agreement between Brightstar and Service Provider with respect to the subject matter hereof and supersedes all prior oral or written and all contemporaneous oral representations and agreements with regard to the same subject matter.

29.   **Assignment.** Neither party may assign its rights or delegate its obligations under this Agreement without the written consent of the other party, which consent shall not be withheld unreasonably, except no such consent shall be required for assignments by either party to its parent or majority controlled affiliate or to any person acquiring all or substantially all of the assets or securities of either party, whether by merger, consolidation, sale of assets or securities or otherwise unless such enetity is a competitior of the other party. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and permitted assigns.

30.   **Execution in Counterparts.** This Agreement may be executed in two counterparts, both of which shall be considered one and the same agreement, and shall become a binding agreement when counterparts have been signed by each party and delivered to the other party. The parties expressly agree that this Agreement may be executed by facsimile and that such facsimile signatures shall have the same force and effect as original signatures for all purposes.

31.   **Titles and Headings; Interpretation.** Titles and headings to sections herein are inserted for the convenience of reference only and shall not be deemed to be a part of or to affect the meaning or interpretation of this Agreement. No party hereto, nor its respective counsel, shall be deemed the drafter of this Agreement or any SOW, and all provisions hereof or thereof shall be construed in accordance with their fair meaning, and not strictly for or against either party hereto.

32.   **Severability.** If any part of this Agreement or any SOW is ruled by a court or arbitrator of competent jurisdiction to be illegal or unenforceable, or is contrary to, prohibited by or held to be illegal, invalid, or unenforceable by any law, rule, order or regulation of government, governmental agency or authority with appropriate jurisdiction, or by the final determination of any state or federal court, (a) that will not affect the other parts of this Agreement and the SOWs, all of which will remain enforceable in accordance with their terms, and (b) the illegal or unenforceable part will be construed so as to be legal and enforceable to reflect the intentions of the parties.

33.   **Waste Provisions.** Service Provider shall comply with all relevant and applicable waste regulations of the United States of America and the EU, and shall meet all required and applicable environmental and

regulatory requirements relative to performing the operations specified herein and in subsequent SOWs, inclusive of meeting relevant reporting requirements. If Service Provideris ISO-9001 or ISO-14001 certified, it shall make such capabilities commercially available to Brightstar.

34.   **Child Labor; Wages & Benefits.** Service Provider agrees that it will not sell or deliver Products or components to Brightstar refurbished by Service Provider persons who are younger than fifteen (15) years of age (or older where according to the law of such country such age is higher than fifteen (15)). All work environments shall meet the health and safety requirements of local law.  Service Provider shall pay employees at least the minimum wage required by local law regardless of whether they pay by the piece or by the hour and shall provide legally mandated benefits and overtime compensation.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

Harvestar Technologies Inc.

By: _____

Name: _____TYLER MILLER_____

Title: _____DIRECTOR_____

Date: _____

Brightstar Corp.

By: _____

Name: _____

Title: _____

Date: _____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

Harvestar Technologies Inc.

By: _____

Name: _____

Title: _____

Date: _____

Brightstar Corp

By: _____

Name: Noel Marsden

Title: VP - Corporate Treasurer

Date: ___   _____

16

**Appendix A**

**Insurance and Security**

I.     **Insurance.**

a.     Service Provider shall maintain and keep in place throughout the Term and during any other period in which it performs Services for Brightstar, at its sole cost and expense, the following insurance policies and with the following minimum coverage amounts, unless lower amounts are approved in writing by Brightstar (or such other insurance policies which are equivalent to the foregoing and are pre-approved by Brightstar in writing), each of which policies shall apply to Service Provider's performance of Services and its other obligations hereunder:

   i.     statutory worker's compensation insurance with such per person and per accident minimum limits as required by all Laws in all required jurisdictions in connection with this Agreement;

   ii.    employer's liability insurance in a minimum amount of US $1,000,000 per occurrence;

   iii.   commercial general liability insurance, including coverage for contractual liability incurred under this Agreement, in a minimum amount of US $5,000,000 per occurrence and US $10,000,000 in the annual aggregate;

   iv.    umbrella/excess liability insurance in a minimum amount of US $5,000,000 per occurrence;

   v.     primary cargo/all risk property insurance, covering Service Provider's facilities, and any Product while in Service Provider's possession or controlling a minimum amount of US $5,000,000 per occurrence;

b.     Brightstar shall be an additional insured Under Products/Completed Operations Liability coverage on a primary and non-contributory basis under each such insurance policy. Any and all deductibles applicable in the event of a claim (i) will not limit or apply to Service Provider's liability to Brightstar, (ii) shall be the sole responsibility of Service Provider, and (iii) Service Provider shall pay such deductibles in full as and when due. Self-insured retention policies, or any insurance arrangement that may prevent Brightstar's access to insurance coverage as a result of the failure by Service Provider to meet required self-insured retention thresholds, will not be deemed to meet the insurance requirements set forth herein. Except for any environmental or cyber security policies, each insurance policy shall be "occurrence-based" and provide coverage for any acts, omissions, or events that give rise to claims, regardless of when the claim is brought, and occurred at any time while such policy was in effect. All insurance policies required hereby shall be issued by insurance companies that (a) have been rated "A-", or better, by A.M. Best, or the local equivalent and (b) are authorized to do business under the laws of the jurisdictions where the Services under this Agreement will be performed. Service Provider acknowledges and agrees that the procurement and maintenance of such insurance coverage shall not limit or affect any liability that Service Provider may have by virtue of this Agreement or otherwise. Additionally, (a) the commercial general liability insurance policy required hereby must include, without limitation, a cross-liability endorsement; (b) Service Provider shall give Brightstar thirty (30) days' minimum prior notice of cancellation of any policies required hereby; (c) Service Provider shall furnish certificates of insurance and applicable endorsements evidencing the policies and coverages required hereby on the effective date of this Agreement and subsequently at any time and from time to time at Brightstar's request; and (d) Service Provider understands and agrees that (i) Brightstar has no obligation to procure or otherwise maintain any insurance covering Service Provider or the Services, (ii) all insurance requirements set forth herein shall apply, *mutatis mutandis*, to any Third Party Provider, and Service Provider shall cause all Third Party Providers (and shall be responsible for any Third Party Provider's failure) to comply with such insurance requirements, and (iii) any limitations of liability in this Agreement do not apply to any incidents or claims that should be covered by the insurance policies required to be in place per this Appendix A. Third Party Providers means all affiliates, agents and subcontractors of Service Provider who directly or indirectly perform or deliver all or any part of the Services hereunder.  For clarity, Brightstar shall be entitled to recover up to the liability limits, and in accordance with the terms, of any insurance policy required to be in place per this Appendix A, regardless of (x) whether the

policies were actually placed in accordance herewith and (y) any liability limits listed elsewhere in this Agreement. To the extent applicable Laws require the Parties to expressly agree or elect to be governed by the terms of this Appendix A (instead of the otherwise applicable default rules or regulations of such applicable Laws), the Parties hereby expressly so agree and elect.

II.      **Security**.

Service Provider shall cause (a) each facility where Products are held (each, a "<u>Facility</u>") and (b) Service Provider's security practices at said Facilities to comply with the security requirements, features, practices and other specifications set forth in <u>Annex A</u> attached hereto (collectively, the "<u>Security Requirements</u>") at all times during the Term, in each case at Service Provider's sole cost and expense. Service Provider shall be in compliance with this section prior to commencement of Services. All Security Requirements shall apply, *mutatis mutandis*, to any Third Party Provider, and Service Provider shall cause all Third Party Providers (and shall be responsible for any Third Party Provider's failure) to comply with the Security Requirements.

**Annex A to Appendix A**

**Security Requirements**

**[INSERT HERE THE DOCUMENT PRESENTED BY SERVICE PROVIDER]**

Service Provider will comply with the following Security Requirements, which are an integral part of its own internal procedures.

EXHIBIT A

**Governance**

1.  *General*. Pursuant to Section 13 of the Agreement, this Exhibit A to the Agreement sets forth the governance committees, processes and procedures by which the Parties will organize and manage their relationship with respect to the provision and receipt of Services.  Notwithstanding anything to the contrary hereunder, this Exhibit A is subject to the terms and condition of the Agreement and does not:  (i) limit any of the rights or remedies of the Parties under any other provisions of the Agreement; (ii) give rise to any claim by one Party against another, including a claim for breach of any of the provisions hereunder; or (iii) impose any obligation on a Party in addition to those under the Agreement without such Party's written consent.

2.  *Preamble*. From time to time, issues may arise with respect to each of the Parties' rights and obligations set forth in the Agreement that are not resolved at the various levels of management within Brightstar and SERVICE PROVIDER teams. It is the intent of the Parties to attempt to resolve issues in a constructive way that reflects the concerns and commercial interests of each Party.  Both Parties' primary objective and intent is to have issues resolved by the appropriate levels of authority without the need for further escalation.  Following review and resolution, the decision shall be documented and communicated to both Parties for approval by authorized representatives.

3.  *Committees*. The Parties shall establish the committees (each a "Committee" and collectively, the "Committees") described in this Exhibit A to perform the functions described in the Agreement and herein, or as the Parties may otherwise agree.  Each Party shall collectively be treated as one entity in terms of its ability to appoint representatives to these Committees.  Each Committee shall be comprised of an equal number of representatives appointed by Brightstar and Service Provider.  Each Party shall be entitled to convene meetings of a Committee by giving ten (10) days' prior written notice to all members of such Committee, unless the Parties agree otherwise. Any meeting of a Committee may be held in person, by telephone, teleconference or in any other manner as the Parties shall agree. All meetings of each Committee shall be co-chaired by a representative of each Party unless otherwise agreed.

    a.    Executive Committee. The "Executive Committee" oversees the entire relationship between the Parties and is responsible for oversight of the performance of the Services and the performance by Brightstar and SERVICE PROVIDER in accordance with the Agreement.

    b.    Joint Steering Committee. The "Joint Steering Committee" is responsible for providing leadership and direction to the provision and receipt of the Services.  The Joint Steering Committee also serves as an escalation point for issues that cannot be resolved at the Project Manager level.

4.  *Attendees to Committee Meetings*.  Either Party may invite attendees in addition to Committee members, subject to applicable confidentiality provisions of the Agreement.

5.  *Escalation Procedures; Dispute Resolution*.  Questions, issues and disputes with respect to the Services and shall be escalated as follows:

        Project Manager (day to day operations) level, then, if issues, questions or disputes cannot be resolved (in accordance with this Section) at the program level, escalation to →

        Joint Steering Committee level, then, if issues, questions or disputes cannot be resolved (in accordance with this Section) at the Joint Steering Committee, escalation to →

        Executive Committee.

    If an issue is not resolved by the applicable Committee within a reasonable time frame in light of the urgency and impact of the circumstances, then either Party may further escalate such issue to the next Committee.  If the Committee listed above is unable to come to agreement on a course of action or otherwise is presented with an issue that they cannot resolve, then they should document the question or issue and the respective recommendations regarding a solution and present the solutions to the next

Committee.  If such next Committee listed above is not the Executive Committee and is unable to come to agreement on a course of action or otherwise is presented with an issue that they cannot resolve, then they should document the question or issue and the respective recommendations regarding a solution and present the solutions to the Executive Committee. The Executive Committee will be responsible for coming to a constructive agreement or resolution and communicating the proposed solution back to the concerned parties and documenting the resolution. If the Executive Committee cannot come to a constructive resolution within 30 days from the date the matter is referred to the Executive Committee, or such other period of time as the Executive Committee may agree, then such failure to resolve shall not prejudice any rights and remedies either Party may have available to it under applicable law and in equity.

The initiation of the escalation process as described above will not prevent any Party from exercising any of its other rights or remedies under the Agreement including.  Notwithstanding anything to the contrary in the Agreement, either Party may institute judicial proceedings against the other Party or anyone acting by, through or under such other Party, to enforce the instituting Party's rights under this Exhibit B or the Agreement through reformation of contract, specific performance, injunction or similar equitable relief.