**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TYLER MILLER,

                            Plaintiff,

      -against-

BRIGHTSTAR ASIA, LTD.,

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM DECISION**
**AND ORDER**

20 Civ. 4849 (GBD) (JLC)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Tyler Miller brought this diversity action against Brightstar Asia, Ltd.[1] ("Brightstar"), alleging breaches of a shareholder agreement and duties owed to Plaintiff, stemming from Defendant's acquisition of a controlling share of Harvestar Solutions Limited ("Harvestar"), Plaintiff's company. (First Am. Compl. ("FAC"), ECF No. 24, ¶ 4.) Following remand from the Second Circuit, the sole claim remaining in this action is Miller's allegation that Brightstar's conduct constituted a breach of the implied covenant of good faith and fair dealing. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 125–26 (2d Cir. 2022); FAC ¶¶ 46–55. Defendant now moves once again to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Def.'s Second Mot. to Dismiss ("Mot."), ECF No. 61.)

Before this Court is Magistrate Judge James L. Cott's September 11, 2023 Report and Recommendation ("Report") (ECF No. 66), recommending that Defendant's motion be denied. Magistrate Judge Cott advised the parties that failure to file timely objections to the Report would constitute a waiver of objections and preclude further appellate review. (*Id*. at 23.) Neither party

---

[1] Defendant has changed its name to Likewize Hong Kong Limited. For consistency, this Court will continue to refer to Defendant by its former name. (*See* Mot. at 1 n.1.)

filed any objections. Having reviewed the Report for clear error and finding none, this Court ADOPTS the Report in full. Defendant's motion is DENIED.

## I.    BACKGROUND

### A. Factual Background

Plaintiff, along with Omar Elmi, founded Harvestar in 2016. (FAC ¶ 9.) Harvestar's business was to refurbish used cell phones to "like new" condition and wholesale them to distributors and retailers. (*Id.* ¶¶ 10–11.) Defendant acquired a 51% controlling stock interest in Harvestar in April 2018. (*Id.* ¶ 15.) Following the transaction, Plaintiff and Elmi each owned a 24.5% minority stock interest in Harvestar. (*Id.*)

The parties consummated the acquisition via a Shareholders Agreement, Master Services Agreement, and Statement of Work. (*Id.* ¶¶ 15–16.) These agreements delineated the "rights, duties and obligations of the parties" and provided Plaintiff and Elmi with put and call rights— allowing them to sell their remaining Harvestar shares to Brightstar for a defined amount or to repurchase shares sold to Brightstar at a defined price. (*Id.* ¶ 17.)

The parties contemplated that following the merger, Harvestar would engage in transactions with Brightstar, so long as such transactions were on terms "no less favorable . . . than would be obtainable in a comparable arm's-length transaction." (*Id.* ¶ 18; Shareholders Agreement, ECF No. 24-1, at 16.) Per the Master Services Agreement, such terms were to be dictated by the Statement of Work (*see* Master Services Agreement, ECF No. 63-1, at 2), which in turn stated that pricing would be "revised quarterly to meet fair market on material and labor." (Statement of Work, ECF No. 63-2, at 3.)

The parties also agreed that Harvestar's shareholders (Brightstar, Miller, and Elmi) owed a duty to Harvestar and each other "to act in accordance with the implied contractual covenant of

2

good faith and fair dealing," and that acting in accordance with the Shareholders Agreement would constitute compliance with this covenant. (Shareholders Agreement at 19.)

Despite these contractual protections, Plaintiff claims that, shortly after taking a controlling interest in Harvestar, Defendant "mismanaged" the company and engaged in prohibited conflicted transactions with Harvestar. (FAC ¶ 21.) Specifically, Plaintiff alleges that Defendant caused Harvestar to refurbish cell phones at a discounted rate of $50 less per device than could be achieved in an arm's length transaction. (*See* FAC ¶¶ 21, 27.) This, in Plaintiff's telling, caused Defendant to enrich itself at the expense of Plaintiff's minority stake in Harvestar and the value of his put and call rights. (*See id.* ¶¶ 28, 52, 54.) Plaintiff argues that Defendant's conduct breached the implied covenant of good faith and fair dealing. (*Id.* ¶ 29.)

## B. Procedural History

On September 13, 2021, this Court granted Defendant's initial motion to dismiss *in toto*, reasoning that Plaintiff lacked standing to bring this suit, as his "claims sound in breach of a contractual duty owed to Harvestar," and thus his claims were "derivative in nature." (Op., ECF No. 43, at 8.) After Plaintiff appealed the dismissal of two of his four claims, the Second Circuit vacated this Court's dismissal of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, holding that this cause of action "state[d] a direct claim belonging to Miller." *Miller*, 43 F.4th at 121–22. On remand, Defendant now moves to dismiss this sole remaining claim. (Mot.)

## II.    LEGAL STANDARDS

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). When there are no objections to a magistrate judge's report, a district judge reviews the report for clear error.

*See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). Clear error is present when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation and internal quotation marks omitted).

Under Rule 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In considering a motion to dismiss, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (citation and internal quotation marks omitted). However, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Instead, the pleading's "factual allegations must be enough to raise a right to relief above the speculative level, . . . *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and brackets omitted).

## III.   THERE WAS NO ERROR IN RECOMMENDING THAT DEFENDANT'S MOTION TO DISMISS BE DENIED

### A.  The Master Services Agreement and Statement of Work Can Be Considered

Although a court is generally confined to the facts alleged in the complaint, *see Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), a court may consider additional materials that are attached as exhibits to the complaint, incorporated therein by reference, or that are "integral" to the complaint insofar as a plaintiff "relies heavily upon [their] terms and effect," so long as there is no dispute as to the document's authenticity, accuracy, or relevance. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (citations omitted).

Magistrate Judge Cott did not err in considering the Master Services Agreement and the Statement of Work in conjunction with the instant motion when these documents were mentioned in, but not attached to, Plaintiff's First Amended Complaint.  (*See* FAC ¶ 16; Report at 6.) Magistrate Judge Cott correctly found that the single reference to these documents in the First Amended Complaint was insufficient to deem them incorporated therein by reference.  (Report at 6–7); *see Pucilowski v. Spotify USA, Inc.*, No. 21 Civ. 1653 (ER), 2022 WL 836797, at *3 (S.D.N.Y. Mar. 21, 2022) (stating that "limited quotation" of a document does not incorporate it by reference (citation omitted)).

However, because these documents were contemporaneously executed alongside the Shareholders Agreement and "in connection with the transaction at the center of this dispute," Magistrate Judge Cott correctly deemed them integral to the First Amended Complaint, and thus proper for consideration.  (*See* Report at 10 (internal quotation marks omitted); Shareholders Agreement at cover (dated April 9, 2018); Master Services Agreement at 1 (dated April 9, 2018); Statement of Work at 1 (detailing the Statement of Work's incorporation into the Master Services Agreement).)  Further, as will be detailed *infra*, Plaintiff's claim centers on whether there was a

5

contractual gap in which the implied covenant of good faith and fair dealing would govern.  To properly determine the existence and scope of such a gap, it is necessary to consider the entire universe of the parties' agreement, to avoid a limited perspective caused by selective references. Indeed, the prototypical examples of documents courts find to be integral to a complaint are "contract[s] or other legal document[s] containing obligations upon which the plaintiff's complaint stands or falls . . . ." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

Finally, Magistrate Judge Cott appropriately found that there was no material dispute as to the relevance of the Master Services Agreement and Statement of Work (Report at 10–11), as Plaintiff's arguments, while couched in the language of relevance, are properly understood as focused on the impact of the agreements on his claim. (*See* Pl.'s Mem. of Law in Opp'n to Mot. ("Opp'n"), ECF No. 64, at 12); *see also* Fed. R. Evid. 401.

## B. Plaintiff's Claim Survives the Motion to Dismiss

### 1. The Implied Covenant of Good Faith and Fair Dealing

As the Second Circuit noted, the implied covenant of good faith and fair dealing works as a backstop "to infer contract terms or handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Miller*, 43 F.4th at 123–24 (quoting *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017)).  Under the covenant, which is inherent in all contracts, a party must "refrain from arbitrary or unreasonable conduct" that prevents their counterpart from obtaining the benefit of its bargain.  *Id.* (quoting *Dunlap v. State Farm Fire & Cas . Co.*, 878 A.2d 434, 442 (Del. 2005)).  It operates to preclude a party from "frustrat[ing] the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms."  *Id.* (quoting *Dunlap*, 878 A.2d at 442).  In so doing, "[t]he covenant protects an

6

agreement's spirit against underhanded tactics . . . ." *Sheehan v. AssuredPartners, Inc.*, C.A No. 2019-0333-AML, 2020 WL 2838575, at *11 (Del. Ch. May 29, 2020).

Courts caution that the implied covenant of good faith and fair dealing is of limited scope. *See, e.g.*, *Miller*, 43 F.4th at 124 ("The implied covenant is at once pervasive and limited."). It only applies when "the express terms of the agreement can be reasonably read to imply certain other conditions, or leave a gap, that would prescribe certain conduct, because it is necessary to vindicate the apparent intentions and reasonable expectations of the parties." *Id.* (quoting *Dieckman*, 155 A.3d at 367).

To plead a breach of the implied covenant of good faith and fair dealing, a plaintiff must "allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Sheehan*, 2020 WL 2838575, at *11 (quoting *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009)). At the motion to dismiss stage, the inquiry focuses on the presence of a gap in which the covenant can operate. (*See* Report at 14 (citing *Dieckman*, 155 A.3d at 367).) The question of a party's good faith (or lack thereof) is often a fact-intensive one, "which generally cannot be resolved on the pleadings or without first granting an adequate opportunity for discovery." *Baldwin v. New Wood Resources LLC*, 283 A.3d 1099, 1123 (Del. 2022).

## 2. Plaintiff Plausibly Alleged Defendant's Breach of the Implied Covenant of Good Faith and Fair Dealing

Magistrate Judge Cott did not err in finding that Plaintiff plausibly alleged a claim for the breach of the implied covenant of good faith and fair dealing. (Report at 11–22.) He properly found that the agreement between Brightstar and Miller contained an implied covenant not to engage in conflicted transactions to the other party's detriment, analogizing the conduct at issue to cases in which parties took advantage of their position to harm their counterparty—even if they

7

complied with the express terms of the contract. (*See id.* at 13–16.) Similarly, Plaintiff here alleges that Defendant "manipulat[ed] the variables in the sale price calculation to render the put and call rights for which Plaintiff had negotiated worthless." (Opp'n at 14.)

There was likewise no error in Magistrate Judge Cott's determination that Defendant's arguments lack merit. (*See* Report at 16–22.) He properly found that the Shareholders Agreement does not preclude Plaintiff's claim of breach of the implied covenant of good faith and fair dealing, as the covenant is inherent in all contracts and "cannot be eliminated." (*See id.* at 17–18 (quoting *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 580 n.235 (Del. Ch. 2023))); *see also Dunlap*, 878 A.2d at 442 ("[T]he implied covenant attaches to every contract . . . ."). And, as Magistrate Judge Cott held, the express terms of the agreements do not foreclose Plaintiff's claim. (Report at 19–20.) Plaintiff does not argue that the implied covenant sets the price or volume of devices to be refurbished (which are covered by the Master Services Agreement and Statement of Work), but rather that "Brightstar had the obligation to act in good faith to refrain from manipulating price, supply, and volume of devices in a way that would destroy Harvestar's profits and Miller's put and call rights." (*Id.* at 19.)

As the Second Circuit determined, the Shareholders Agreement addresses conflicted transactions between Defendant and Harvestar, whereas "the alleged implied covenant arises between Brightstar Asia and *Miller*." *Miller*, 43 F.4th at 125 (emphasis added). Thus, there is a contractual gap—regarding Defendant's obligation to refrain from arbitrarily or purposefully devaluing Plaintiff's put and call rights—in which the implied covenant can operate. (*See* Report at 20–21.) "An implied covenant between Brightstar Asia and Miller to avoid conduct that would unreasonably undermine the value of Miller's options rights would not 'circumvent' a bargain between Brightstar Asia and Harvestar to avoid conflicted transactions." *Miller*, 43 F.4th at 125

(quoting *Dunlap*, 878 A.2d at 441). And it was not error for Magistrate Judge Cott to find that, viewing the First Amended Complaint as alleged, the parties would have agreed to bar Defendant's actions had they discussed the subject during their negotiations. (Report at 22.)

In sum, Plaintiff has plausibly pleaded a breach of the covenant of good faith and fair dealing. Plaintiff has alleged "a specific implied contractual obligation" (avoiding conduct that would unreasonably undermine the value of his put and call rights),[2] "a breach of that obligation by [D]efendant" (conflicted transactions that detrimentally affected those rights), "and resulting damage" (the effective inability to vindicate those rights). *See Sheehan*, 2020 WL 2838575, at *11 (quotations omitted). Defendant's motion to dismiss is therefore DENIED.

## IV.   CONCLUSION

Magistrate Judge Cott's Report and Recommendation is ADOPTED in full. Defendant's motion to dismiss is DENIED.

The Clerk of Court is directed to close the motion at ECF No. 61 accordingly.

Dated: December 4, 2023
New York, New York

SO ORDERED.

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

---

[2] As the Report notes, Defendant only challenges the existence of an implied contractual obligation. (*See* Report at 13.)

9